**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**
www.flsb.uscourts.gov

In re:

    YURI LYUBARSKY and                Case No: 18-16659-LMI
    OLGA LYUBARSKY                  Chapter 7

       Debtors.

_____/

**DEBTORS' MOTION FOR ENFORCEMENT OF THE AUTOMATIC STAY,**

**SANCTIONS AGAINST VERTONIX LTD AND ITS COUNSEL ARKADY "ERIC"**

**RAYZ FOR FRAUD ON THE COURT AND**

**CONTEMPT FOR WILLFUL VIOLATIONS OF THE AUTOMATIC STAY**


    Debtors, Yuri Lyubarsky and Olga Lyubarsky ("Debtors"), through undersigned counsel,

request that the Court enter an order awarding damages pursuant to Sections 362(k)(1) and 105 of

the Bankruptcy Code and imposing sanctions pursuant to Rules 9011 and 9020 of the Federal

Rules of Bankruptcy Procedure, against Creditor Vertonix Ltd ("Vertonix") and its counsel, Eric

Rayz, Esq. ("Mr. Rayz")

    This motion ("Sanctions Motion") is filed concurrently with Debtors' Reply ("Reply") to

Creditor Vertonix Ltd's Response ("Response", [#54]) in Opposition to Debtors' Objection

("Objection", [#47]) to Vertonix Ltd's Proof of Claim ("POC", [POC-2]).

    The content of this Sanctions Motion is an integral part of the concurrently filed Reply,

wherein this Sanctions Motion is incorporated by reference. This incorporation is done in the

interest of judicial economy because the facts, procedural history and most arguments of this

Sanctions Motion and of the Reply are nearly identical.

**Introduction**

This Motion will assert that Vertonix, by and through their attorney Arkadiy "Eric" Rayz committed a willful and outrageous violation of the automatic stay by trying to extort $250,000 from Debtors, and then perpetrated fraud on the court by submitting (under oath by Mr. Rayz) a grossly inflated POC containing at least one significant bogus component (while knowingly and purposefully withholding a document proving beyond doubt the component is bogus).

**Principal Sanctionable Actions**

The principal two sanctionable actions that are the subject of this Sanctions Motion are:

1. <u>**An egregious willful violation of the automatic stay by Vertonix and its counsel Eric Rays: an attempt to obtain a $250,000 direct payment from Debtors under threat of reporting their purported misdeeds to the US Attorney and the Chapter 7 Trustee.**</u>

   This relates to a now fully admitted and documented extortionate attempt by Vertonix and its counsel Mr. Rayz, to force a $250,000 payment from Debtors in the early stages of these bankruptcy proceedings. These actions are described in detail in the Declaration of undersigned counsel which is attached as Exhibit A hereto, and in further parts of this Sanctions Motion.

   In its effort to force an immediate payment from Debtors, Vertonix and its counsel Eric Rayz blatantly disregarded one of the chief tenets and purposes of the personal bankruptcy process, which is to protect individual debtors from aggressive

collection efforts by creditors (or, for that matter, from any collection efforts at all) while their bankruptcy petition is being considered. Indeed, the principal purpose of the present Debtors' bankruptcy petition was to protect themselves from *this exact type of conduct* by *this exact creditor* and *this exact counsel*.

The effort by Vertonix was particularly egregious in this case because it not only demanded payment (in an amount far exceeding the outstanding judgment in Pennsylvania), but also threatened, by and through Eric Rayz, severe repercussions to Debtors if they did not comply immediately.

Specifically, as evidenced by Exhibit A, on June 21, 2018, Mr. Rayz claimed to have evidence of Debtors' assets not included in their Petition and threatened to report this to the Trustee and US Attorney unless Debtors made an immediate $250,000 payment to Vertonix[1].

For purposes of the automatic stay violation., it is irrelevant whether Mr. Rayz' claims about the Debtors assets were true. Indeed, if Mr. Rayz' allegations *were* true, (which he clearly believed at the time and confirmed afterwards by e-mail, see Exhibit A3) his demand for payment was even more egregious. Specifically, the demand for payment in exchange for non-reporting of Debtors' allegedly criminal conduct to the US Attorney falls squarely under 18 U.S.C. § 873 which states, "*Whoever, under a threat of informing, or as a consideration for not*

---

[1] The claims by Mr. Rayz of inaccuracy of Debtors' Petition are of course disputed by Debtors, and these issues have now been settled between the Trustee and Debtors, together with the Trustee's objection to disability policy exemptions claimed by Debtors and the issue of a purported judicial lien against disability policies. Specifically, as can be seen from Trustee's Motion to Compromise Controversy [#65], the Debtors have agreed to use their disability proceeds to pay an amount equal to the appraised value of Debtors' declared assets, plus a portion of the accrued disability benefits, in exchange for a release of all known claims relating to their assets, a release of the judicial lien on disability policies, and an withdrawal of Trustee's objections to the exempt status of disability and life policies.

*informing, against any violation of any law of the United States, demands or receives any money or other valuable thing, shall be fined under this title or imprisoned not more than one year, or both*". It is hard to see any difference between the actions of Mr. Rayz and conduct describe by 18 U.S.C. § 873.

It is further noted that in exchange for his non-reporting the Debtors' alleged misconduct to the Trustee and the US Attorney, Vertonix was demanding a payment of $250,000.00, far in excess of the amount outstanding under the Pennsylvania judgment, which was $141,102.71 plus 6% interest for about 2 years. In other words, Vertonix was attempting to collect <u>a premium above the actual debt amount</u> in exchange for non-reporting of a purported criminal violation.

The threat against Debtors was made by Vertonix, by and through Mr. Rayz, with the full knowledge (from prior proceedings, including those involving Yuri Lyubarsky's disability benefits policy) that Debtor Yuri Lyubarsky suffered from a debilitating psychiatric condition, known as severe panic disorder, that was so serious that it had caused Mr. Lyubarsky to be declared disabled a decade ago, and has since required multiple hospitalizations and a regular medication regimen.

The threat resulted in an exacerbation of Mr. Lyubarsky's medical condition and made his and his wife's lives miserable since June 21, 2018. A full reading of Mr. Lyubarsky's declaration attached hereto as Exhibit C is needed to understand the full effect of the violations committed by Vertonix against Debtors. Rather than quote excerpts from Exhibit C here, Debtors and this counsel request that the court read Exhibit C in its entirety.

2.  **Fraud on the Court: (a) the filing by Mr. Rayz of a grossly inflated Proof of Claim that purposefully withheld facts and documents demonstrating a much lower claim amount; and, more egregiously, (b) the subsequent submission by Mr. Rayz of a knowingly false calculation of the amount of Proof of Claim while purposefully withholding Pennsylvania court documents demonstrating the falsity of such calculation.**

   a. The Filing of a Purposefully Inflated Proof of Claim.

     The initial Proof of Claim in the amount of $400,000.00 [POC 2] included a copy of the February 2011 (7+ years old) judgment for $184,269.19.

     The POC was verified under oath by Rayz on behalf of Vertonix.

     Withheld from the 88-page POC filing were any records related to (or any other mention of) a $175,000.00 payment made in 2013 (i.e. subsequent to the $184,269.19 judgment), as well as a much more recent court order entered on July 7, 2016 reassessing the damages in the amount of $141,102.71 plus 6% interest from July 7, 2016. The $141,102.71 order is attached as Exhibit B4 to Exhibit B hereto, the Declaration of Marina Kats, Esq.

b.    <u>The filing of a false calculation including a bogus $96,800</u>
<u>component in order to justify the previously inflated $400,000 claim</u>
<u>amount.</u>

When challenged by Debtors through their Objection to the POC, Vertonix, by its Response filing supported by Mr. Rayz' sworn declaration, finally produced the missing document evidencing the lower $141,102.71 amount as part of a 279-pagesubmission. Mr. Rayz also admitted receiving the $175,000 payment any mention of which was withheld from the original POC.

However, in the Response filing, verified by Mr. Rayz under oath on behalf of Vertonix, Mr. Rayz alleged that since July 7, 2016, the $141,102.71 award turned into $432,128.50, a more than 3-fold increase (see Response ¶210):

| | |
|---|---|
| Principal Amount Due: | $141,102.71 |
| Interest (as of 12/27/2018): | $22,452.73 |
| Sanctions (as of 12/27/2018): | $96,800.00 |
| Costs: | $3,905.03 |
| Attorneys' Fees: | $168,075.00 |
| **TOTAL DUE:** | **$432,128.50** |

Crucially for the purposes of this Sanctions Motion, Mr. Rayz claimed that this 3-fold increase happened in part because of $96,800 in sanctions accrued in Pennsylvania under a 2012 sanctions order against the Defendants [Response, ¶¶48-49, ¶¶189-191, ¶210].

**The above calculation, presented by Vertonix's counsel under oath to this Court, was false and a fraud on this Court**

**and Debtors, particularly with respect to the $96,800 purported sanctions. This falsity is at the heart of the second sanctionable action by Mr. Rayz that is alleged by Debtors in the present Sanctions Motion.**

The $100/day sanctions had already been denied by the Pennsylvania court. To wit, Vertonix had already tried to collect $135,300 worth of the same $100/day sanctions in Pennsylvania in 2016 (representing sanctions from 2012 to 2016), and those exact $100/day sanctions were expressly denied by the Pennsylvania court when it issued its 2016 order reassessing damages at $141,102.71. Specifically, on May 3, 2016, Vertonix filed a Motion to Reassess Damages, a copy of which is attached as Exhibit B2, which included a request for $135,300 in sanction sunder the 2012 sanctions order. The amount of $135,300 was rejected by the Pennsylvania court in its $141,102.71 ruling, a copy of which is attached as Exhibit D2.

However, no mention of this was made in the pleadings and documents submitted by Vertonix's counsel in this Court, and the one key document proving this was missing from the voluminous and otherwise very detailed 279-page Response containing dozens of exhibits.

It is particularly curious that Vertonix and Rayz claim that the sanctions are due and owing starting on May 3, 2016, about 2 months *before* July 7, 2016, the day they were denied by the

Pennsylvania court (Response, ¶191). What Vertonix and Rayz withheld from this court was their own Motion to Reassess Damages dated the same day, May 3, 2016, in which it made the request to award sanctions that was denied on July 7, 2016.

Please see a Declaration of Marina Kats, Esq., counsel for Debtors in the Pennsylvania proceedings, attached as Exhibit B hereto, along with Exhibits B1-B4 which contain the requisite rulings.

No new orders for sanctions were issued after July 7, 2016, the date on which sanctions under the previous order were expressly denied (or after May 3, 2016, the date on which Vertonix filed its Motion to Reassess Damages).

The inclusion of the $96,800 in bogus sanctions, and the purposeful withholding of the document showing that the same sanctions were included in a prior calculation and were rejected by the Pennsylvania court, is fraud on this Court.

Adding insult to injury, in footnote 20 to paragraph 190 of the Response, Mr. Rayz feigns surprise that "neither Debtors nor their Counsel even bother to address the monetary sanctions in the Objection." This is written by counsel who knows full well the sanctions had been denied in 2016 but assumes that neither Debtors nor their counsel know about this.

.

.

.

**Relevant Proceedings and Events**

Below is a short list of proceedings in Pennsylvania and before this Court which are relevant to the content and context of the present Sanctions Motion and the related and separately filed Reply. Unless otherwise specified, none of the information below is in dispute between Vertonix and Debtors.

**A.  Relevant Procedural and Factual History – Pennsylvania Proceedings[2]**

1.    On February 24, 2011, Vertonix obtained a $184,264.19 judgment by confession against Debtors ("Original Judgment", see Response ¶33).

2.    On July 20, 2012, Debtors were ordered to respond to Vertonix's discovery requests or pay $100/day in sanctions ("Discovery Order", see Response ¶48).

3.    In April of 2013, Vertonix received a $175,000 payment (see Response ¶41). <u>This payment was not included in the POC and was only acknowledged in the Response.</u>

4.    On May 3, 2016, Vertonix filed a 37-page Motion to Reassess Damages. **<u>Crucially to the present Motion for Sanctions, unlike virtually all other court documents mentioned in the POC and the Response, a copy of this motion was inexplicably (and, Debtors submit, purposefully) withheld from the Response.</u>**

A true copy of Vertonix's Motion to Reassess Damages is attached as Exhibit B2

---

[2] With the exception of one filing in the Pennsylvania proceedings, which was recently discovered by Debtors' counsel, the existence of all records described below are undisputed and are now included in both Vertonix's and Debtors' filings in these bankruptcy proceedings. The penultimate factual event is undisputed. The last factual event is disputed by Debtors and their Pennsylvania counsel. A declaration of Marina Kats, Esq., is attached to this Motion as Exhibit B and includes further Exhibits B1-B4 which are cited in this procedural history and more fully described in Exhibit B.

hereto. As can be seen, to justify an award of $276,402.71, Vertonix requested $135,300.00 in sanctions purportedly owed under the Discovery Order (see Exhibit B1, ¶25 and ¶28, with relevant parts highlighted). In the Response and the Rayz Declaration attached thereto, Vertonix's counsel omits any mention that the $100/day sanctions were part of this Motion to Reassess Damages.

5.   On July 1, 2016, a recently hired counsel for Debtors (who had been acting pro se until April 2016) filed a short Response to Plaintiff's Motion to Reassess [Damages], a true copy of which is attached as Exhibit B3 hereto. As can be seen, this response principally challenged the propriety of the $100/day sanctions for non-compliance with the Discovery Order. In the Response and the Rayz Declaration attached thereto, Mr. Rayz omits any mention that Debtors were contesting the $100/day sanctions back in 2016.

6.   On July 7, 2016, the Pennsylvania Court issued an order reassessing damages ("Updated Judgment", Exhibit B4). **The court crossed out the amount of $276,402.71 requested by Vertonix and entered $141,102.71 instead. The difference of $135,300.00, expressly denied by the court, was the entire amount of sanctions Vertonix had requested.** Accordingly, on July 7, 2016 the Pennsylvania Court expressly denied to award Vertonix any sanctions under the Discovery Order. The Updated Judgment was not included in the POC. It was only disclosed in the Response after Debtors filed their Objection. Conspicuously, no explanation was ever provided in the Response for the $135,300.00 difference between $276,402.71 and $141,102.71.

7.      In May 2017, Debtors made an offer to Vertonix's counsel settle the matter for $80,000. This is undisputed. (see Response ¶79)

8.      Vertonix's counsel claims that shortly after April 11, 2018, "*the Debtors' Pennsylvania counsel called my office to again communicate the Debtors' offer of $80,000.00.*" (see Affidavit of Eric Rayz, Exhibit 3 to the Response, ¶132). Debtors' Pennsylvania counsel denies ever making such a call (see Declaration of Marina Kats, Esq. attached hereto as Exhibit B, ¶¶13-19). Debtors also deny ever making or authorizing any offers in 2018 (see Exhibit C, ¶43). In general, however, it is irrelevant for purposes of post-bankruptcy violations of the automatic stay whether any offers were made pre-bankruptcy[3].

**B.  Relevant Procedural and Factual History – Present Bankruptcy Proceedings[4]**

1.      On May 31, 2018, Debtors filed their petition under Chapter 7 ("Petition").

2.      In June 2018, Mr. Rayz made a demand on Debtors for an immediate payment of $250,000 to Vertonix, accompanied with a threat of release of information that could result in criminal prosecution and other grave ramifications for Debtors if they did not comply:

        a.   Around mid-June 2018, Vertonix's counsel requested a meeting with Debtors' counsel in Florida. This is undisputed.

---

[3] Even if hypothetically Mr. Rayz received a pre-bankruptcy call from Debtors' counsel as he purports, it would have been a pre-bankruptcy offer that predated the May 31, 2018 Petition. There are no exceptions to bankruptcy law, no "preferences through the automatic stay", allowing post-bankruptcy demands to be made by creditors demanding direct payment from debtors on the basis of alleged pre-bankruptcy settlement discussions. The suggestion by Mr. Rayz that his demand was permissible because it was a "counter-offer" is preposterous. If this was indeed permissible, the automatic stay would be rendered meaningless, as a large number of creditors would be able to continue to try to collect directly against debtors under the guise of making "counter-offers".

[4] In addition to procedural history which is a matter of record, item 2 below a description of an out-of-court event the which is undisputed, except that Vertonix's counsel's version of these facts is less detailed than Debtors' counsel. In particular, Mr. Rayz fails to mention the threats he made if his demands were not met.

b.  On June 21, 2018, Vertonix's Pennsylvania counsel visited the Florida offices of Debtors' counsel and demanded a payment of $250,000 to satisfy Debtors' liability to Vertonix and avoid the prosecution of Vertonix's claim by Vertonix in these bankruptcy proceedings ("Payment Demand Meeting"). Attached as Exhibit A is this counsel's declaration about the Payment Demand Meeting, which describes the threats made by Mr. Rayz and the 4-day "next Monday" deadline imposed by Mr. Rayz on the $250,000 payment he tried to obtain from Debtors. The Payment Demand Meeting, the $250,000 amount of the demand and the 4-day deadline are confirmed by Vertonix's counsel in the Response (see Response, ¶¶106-113), his declaration (see Rayz Declaration, ¶¶135-142) and communications with Debtors' counsel attached as Exhibit A3.

c.  Debtors refused to consider the $250,000 demand which they deemed extortionate and in violation of the automatic stay.

3.  On July 10, 2018, Vertonix filed its Proof of Claim [POC 2] ("POC") alleging to be owed $400,000.00. The POC included a copy of a 2011 judgment for $184,296.19 ("Original Judgment"). The 88-page POC included no record of a $175,000.00 payment received by Vertonix since the entry of the Original Judgment, nor included a subsequent court order reassessing these damages as of a much later date, July 7, 2016, at $141,102.71 plus 6% interest therefrom ("Revised Judgment"). The POC was verified under penalty of perjury by Mr. Rayz. The verification included the following language:

> I understand that an authorized signature on this Proof of Claim serves as an acknowledgment that when calculating the amount of the claim, **the creditor gave the debtor credit for any payments received toward the debt**. I have examined the information in this

> *Proof of Claim and have a reasonable belief that the information is true and correct. I declare under penalty of perjury that the foregoing is true and correct.* (Emphasis added)

4.    On December 2, 2018, Debtors filed their Objection to Vertonix's Proof of Claim [#47] ("Objection"). As part of the Objection, the Debtors pointed to the misleading way in which the POC was filed, described the $175,000.00 payment, and attached a copy the Revised Judgment (see Exhibit A5 to the Objection, also included as Exhibit B4 hereto).

5.    On January 2, 2019, Vertonix filed their Response in Opposition to Debtor's Objection [#54] ("Response"), again verified by Mr. Rayz on behalf of Vertonix. The Response included 279 pages of pleadings and exhibits, including an affidavit by Vertonix's counsel. This time the $175,000 payment and the Revised Judgment were acknowledged, but Vertonix claimed that notwithstanding the language of the Revised Judgment, it was entitled to over $170,000 in legal fees and costs.

6.    In the Rayz Declaration, Mr. Rayz glosses over his improper post-bankruptcy $250,000 demand, made during the automatic stay imposed on May 31, 2018, as a "counter-offer" to the Debtors' $80,000 offer (which he fails to mention was made before the bankruptcy filing). Mr. Rayz also does not delve in the Rayz Declaration into the nature of threats he made against Debtors during the meeting and the 4-day deadline he imposed on the Debtors before the threats would be implemented. Those can be gleaned, albeit not fully, from Mr. Rayz' e-mail response to Debtors' counsel included as part of Exhibit A3.


**Violation of the Automatic Stay - Argument**

Automatic stay was imposed under §362 of the Code at the time of Debtors' filing of their Petition on May 31, 2018. On June 15, 2018 and thereafter, Mr. Rayz clearly knew about the bankruptcy filing and therefore was aware of the imposition of the automatic stay. See Exhibit A and Exhibit A1.

On June 15-21, 2018, Mr Rayz made arrangements for a face-to-face meeting with counsel for Debtors, Mr. Nerdinsky. See Exhibit A at ¶7 and Exhibit A1 thereto.

At the meeting on June 21, 2018, Mr. Rayz made a demand on Debtors in the amount of $250,000 and set a deadline for the payment of this amount as the following Monday, June 25, 2018. Mr. Rayz further threatened that if Debtors did not comply, he would release damaging information about them to the US Attorney and the Chapter 7 Trustee. See Exhibit A at ¶¶9-10 and Exhibits A2 and A3.

When confronted by counsel for Debtors about the impropriety of his actions, Mr. Rayz further responded that neither he nor his client cared about it. See Exhibit A3 and Exhibit A at ¶16. However, in the same communications (Exhibit A3), Mr. Rayz explicitly confirms the $250,000 demand he had made on June 21, 2018, the "next Monday" deadline of June 25, 2018, and the discussion about Debtors' purported criminal violations during the Payment Demand Meeting.

What Mr. Rayz claims had happened, using his own words from Exhibit A3, was a meeting where Mr. Rayz asserted that Debtors purportedly "engaged in criminal misconduct" but that Vertonix was "willing […] to accept $250,000, provided the matter would be finalized" by next Monday. This is apparently asserted by Mr. Rayz in Exhibit A3 to have been a benign communication, when in fact the payment demand and the threat for non-compliance are clear even from his version of events. It is clear that Mr. Rayz knew exactly what he was doing – he was trying to make an offer to Debtors that they "could not refuse".

Mr. Rayz' claims in Exhibit A3 and the Rayz Declaration that his $250,000 demand was merely a "counteroffer" to an earlier (pre-bankruptcy) proposal by Debtors are irrelevant. Debtors' Pennsylvania counsel states that she did not call Mr. Rayz. Yet again, even taking Mr. Rayz at his [false] word, even if such an offer had been made pre-bankruptcy, it is irrelevant. Any pre-bankruptcy offers and demands are of course made in the context of collection efforts by creditors, who are free to utilize normal litigation and collection tools to achieve their objectives. This includes demands, offers, counter-offers, counter-counter-offers etc., all of which are normal part of collection and litigation – all of which is supposed to stop at the time of bankruptcy. The purpose of a bankruptcy filing is to draw a bright line between all these happenings and the bankruptcy proceedings during which the automatic stay is imposed, and no further collection efforts can be made. This includes "counteroffers". If this was not so, every creditor could continue collection under the guise of making "counteroffers" in the context of some prior negotiations or communications with the debtor, and automatic stay would be meaningless.

It is also unclear why, if the "counteroffer" and the accompanying mention of Debtors' purported misdeeds were so benign, they could not simply have been communicated in writing to Debtors' counsel, but instead required a personal visit by a Pennsylvania attorney to the office of Debtors' counsel in Florida.

Further exacerbating the gravity of the automatic stay violation are:

    a. Mr. Rayz' threats to release information that would result in a criminal prosecution of Debtors if they failed to pay the $250,000 by next Monday; and

    b. The fact that the $250,000 being demanded was greater than the amount owed by the Debtors to Vertonix under the latest judgment amount from July 7, 2016; and

      c.   The fact that when confronted about it, Mr. Rayz defiantly stated that he and

his client "didn't care" about the impropriety of their actions.

Blackmail is a crime under 18 U.S.C. § 873 ("*Whoever, under a threat of informing, or as a consideration for not informing, against any violation of any law of the United States, demands or receives any money or other valuable thing, shall be fined under this title or imprisoned not more than one year, or both*"). While it is not this court's prerogative to determine if a crime has been committed by Mr. Rayz, the indicia of such conduct are clearly present, and this Court has the power to take this into account in fashioning appropriate sanctions.

Section 362(k)(1) of the Bankruptcy Code provides redress for violations of the automatic stay. It mandates that, subject to exceptions not applicable in this case, "an individual injured by any willful violation of a stay provided by this section shall recover actual damages, including costs and attorneys' fees, and, **in appropriate circumstances, may recover punitive damages**."4 11 U.S.C. § 362(k)(1). "A debtor alleging a violation of the automatic stay has the burden to demonstrate, by a preponderance of the evidence, that a violation was willfully committed by the respondent, and that the debtor suffered damage as a result of the violation." In re Panek, 402 B.R. 71, 76 (D. Mass. 2009). Proving that a creditor violated the automatic stay means proving that a creditor had knowledge of either the bankruptcy or the automatic stay when it committed the violation. In that case, a form of strict liability is created by section 362(h), which only additionally requires damages to be proved in order to take effect.

"A violation is willful if a creditor's conduct was intentional (as distinguished from inadvertent) and committed with knowledge of the pendency of the bankruptcy case." Laboy v. Doral Mortg. Corp. (In re Laboy), 647 F.3d 367, 374 (1st Cir. 2011) (quoting In re McMullen, 386 F.3d 320, 330 (1st Cir. 2004) (internal quotations omitted)). "A willful violation does not require

a specific intent to violate the automatic stay[,]" rather, the creditor need only intend the act which violates the stay. Fleet Mortg. Grp. v. Kaneb, 196 F.3d 265, 269 (1st Cir. 1999). A "technical" violation occurs when the creditor does not have notice of the pendency of the bankruptcy case and no damages should be awarded for such a violation. See McMullen, 386 F.3d at 330 (finding "[a]bsent [notice of the bankruptcy] on the part of a creditor, however, the violation is merely 'technical,' and no damages are to be awarded").

"[A]ctual damages should be awarded only if there is concrete evidence supporting the award of a definite amount." Heghmann v. Hafiani (In re Heghmann), 316 B.R. 395, 405 (B.A.P. 1st Cir. 2004). Whether to award punitive damages "is a fact-specific determination subject to bankruptcy court discretion." Panek, 402 B.R. at 77

The unrefutable facts in the present case make clear that Mr. Rayz and Vertonix "willfully" violated the automatic stay under applicable authority. See McMullen, 386 F.3d at 330; Fleet, 196 F.3d at 268. In McMullen, the First Circuit Court of Appeals limited "technical" violations of the automatic stay to violations where the creditor acted without notice of the pendency of a bankruptcy case. 386 F.3d at 330. That is clearly not the case here.

Having established that Mr. Rayz and Vertonix willfully violated the automatic stay, the Court must determine an appropriate award of damages under § 362(k), which mandates the award of actual damages, including attorneys' fees. See 11 U.S.C. § 362(k). "The burden is on the debtor to prove by a preponderance of the evidence that [he] suffered damages as a result of the stay violation." Heghmann, 316 B.R. at 404–05.

Debtors are in bankruptcy, with their principal source of income – disability benefits – temporarily cut off. Their actual damages are minimal, but not zero. Further, they obtained valuable legal services from Debtors' counsel, and while *they* are unable to pay them, it should not

absolve Mr. Rayz and Vertonix of their liability for the full fair value of legal services provided to Debtors. In this case, Debtors has suffered the following actual damages and attorneys' fees:

(1) Debtor Yuri Lyubarsky suffered from a psychiatric condition, known as severe panic disorder, that was so serious that it had caused Mr. Lyubarsky to be declared disabled and required multiple hospitalizations over the years, and a regular medication regimen. The violation of the automatic exacerbated Mr. Lyubarsky's condition and increased the frequency of the most severe panic attacks. See Exhibit C, ¶¶35-39, ¶46. While Medicare covered Mr. Lyubarsky's medical help, he incurred actual expenditures amount to $20 resulting from the increased incidence of severe panic attacks. See Exhibit C, ¶¶36-37, ¶46.

(2) Debtors incurred a liability for legal costs of in preparing this motion. While Debtors' counsel was retained on minimal fixed-fee terms and is presently unable to bill Debtors for preparing this Motion from Debtors, it is requested that the court allows such billing, and that Mr. Rayz be ordered to pay Debtors' counsel fees and costs in preparing and prosecuting this Motion. It is further requested that the court allows the billing for the cost of preparing the Objection, which should have been unnecessary had Vertonix acted honestly when filing their POC and disclosed the $175,000 payment and the Revised Judgment (the amount of which Debtors would have accepted, and do hereby accept as the appropriate amount of Vertonix's claim).

**Punitive Damages**

In addition, and principally, Debtors seek an award of punitive damages. The Court must award such damages recognizing that "[p]unitive damages should be awarded in an amount sufficient to serve their purpose of deterrence . . . and must be tailored not only based upon the egregiousness of the violation, but also based upon the particular creditor in violation." Panek, 402

B.R. at 77 (quoting In re Curtis, 322 B.R. 470, 486 (Bankr. D. Mass. 2005)). Courts have found circumstances where parties arrogantly defy the Bankruptcy Code to be most appropriate for the award of punitive damages. See id.

In this case, the actions of Mr. Rayz and Vertonix were egregious and defiant of the Bankruptcy Code. The extreme conduct and allegations caused the Debtor severe emotional distress and, compounding the injury after being informed of their abuse, the culprit (Mr. Rayz) stated that he and his client did not care rather than apologize for the violations and take steps to remedy their abuses.

The conduct here was far more egregious than that in the case where a $250,000 punitive damage award was entered against a mortgage lender, Nationstar Mortgage ("Nationstar") for, among other failings, filing an erroneous transfer of claim in a debtors' bankruptcy proceeding. See In re Mocella, 2016 Bankr. LEXIS 2472 (Bankr. N.D. Ohio June 15, 2016).

The amount Mr. Rayz and Vertonix attempted to collect, at $250,000, is also very significant. The threat being made against Debtors if they do not pay up, was very significant. And the person making these demands and threats – a prominent, very experienced and extremely talented attorney acting on behalf of a wealthy client (who can afford to pay legal fees for many years while collecting nothing).

There are no mistakes here, no mitigating factors or excuses. This was a willful, deliberate, outrageous and borderline criminal (or actually criminal) violation of the automatic stay and Debtors' rights.

It is suggested that a punitive damages award against Mr. Rayz and Vertonix should be calculated in reference to the $250,000 they were trying to extort from Debtors in willful violation of the automatic stay, that it be awarded as a reasonable multiple thereof, to provide a sturdy

deterrence to others who may ever consider harassing debtors in such an egregious manner. An award of this magnitude is just and fair in the circumstances of this case.

**Filing a Fraudulent Proof of Claim, Fraud on the Court**

Mr. Rayz filed a $400,000 proof of claim on behalf of Vertonix and personally verified it under oath. In the 88-page POC package Mr. Rayz included only a 2011 judgment for $184,264.19, but withheld a much later 2016 ruling setting the amount at the lower $141,102.71 amount. He also failed to include any mention of an intervening $175,000 payment by Debtors.

When confronted through the Debtors' objection, Mr. Rayz, acting both as an attorney and an agent of Vertonix (who verified the Response on behalf of Vertonix), committed fraud on this Court by producing a bogus calculation containing $96,800 in sanctions which Mr. Rayz knew had already been denied by the Pennsylvania court. While including the $96,800, Mr. Rayz purposefully withheld a document, his own motion dated May 3, 2016, containing proof that his prior attempt to obtain such sanctions, in the amount of $135,300, was denied by the Pennsylvania court on July 7, 2016.

As such, the claim by Vertonix, in a significant part, was submitted fraudulently. Mr. Rayz substituted greed and blatant disregard to the truth for the duties of an officer of the court. The doctrine of *falsus in uno, falsus in omnibus*, should apply.

The filing of a false proof of claim in a bankruptcy case is a crime under 18 U.S.C. § 152(4). Although the federal criminal statute prohibiting the falsifying of a proof of claim does not provide a party with a civil right of action, a bankruptcy court is empowered by 11 U.S.C. § 105(a) to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." The statute specifically allows a bankruptcy court to take "any action . . . necessary or appropriate . . . to prevent an abuse of process." Id.; see also Marrama v. Citizens Bank of Mass

549 U.S. 365, 375 (2007) (noting that bankruptcy courts have "broad authority" under § 105(a)). When a creditor files a false or fraudulent proof of claim, that filing contravenes the purpose of a specific bankruptcy statute and rule. Namely, under 11 U.S.C. § 501, a creditor is allowed to file a proof of claim, and under § 502(a), the mere filing of a proof of claim means that it is deemed allowed. Under Fed. R. Bankr. P. 3001(f), a proof of claim filed in accordance with the Bankruptcy Rules constitutes prima facie evidence of the validity and amount of the claim. When a creditor files a false or fraudulent proof of claim, which is deemed allowed by § 502(a), and entitled to prima facie presumption of validity and amount by Rule 3001(f), the creditor is abusing the bankruptcy process. E.g., Campbell v. Countrywide Home Loans, Inc., 545 F.3d 348, 356 n.1 (5 Cir. 2008) (noting that the bankruptcy court may use § 105 to impose sanctions on parties that abuse the procedural mechanism related to the filing of a proof of claim); B-Real, LLC v. Chaussee (In re Chaussee), 399 B.R. 225, 241 (B.A.P. 9 Cir. 2008) ("[I]f a purported creditor abuses the claims process, we are confident that § 105(a) provides an effective mechanism for addressing that misconduct."); Rojas v. Citi Corp Trust Bank FSB (In re Rojas), No. 09-7003, 2009 Bankr. LEXIS 2220 at *27 (Bankr. S.D. Tex. Aug 12, 2009) (holding that § 105(a) may be used in support of § 502 and Rule 3001 to hold a creditor in contempt for filing a false proof of claim); In re Varona, 388 B.R. 705, 717 (Bankr. E.D. Va. 2008) "[Section] 105 may be used to sanction the filing of a proof of claim violative of the Bankruptcy Code . . . The filing of a false or fraudulent claim would unquestionably constitute an abuse of the claims process as well as an attempted fraud upon the court.").

Mr. Rayz' misrepresentations to this Court did not stop with the amount and proof of the claim itself. In the Response to Debtors' Objection, Mr. Rayz plays fast and loose with evidence, such as grossly misquoting Debtors' affidavit (and calling Debtor Yuri Lyubarsky a liar on the

basis of the false quote) or including a 14-year old picture to demonstrate Debtors' purported *current* wealth – while purposefully cropping out a part of the picture containing a clock with large numbers showing that the picture was taken at a 2005 New Year's party. See Exhibit C, which must be read in its entirety to recognize the gravity of Mr. Rayz' violations and the devastating effect they have had on Debtors. Exhibit C is a desperate cry for help which speaks for itself, and this counsel suggests a full reading of it before a ruling on this Motion for Sanctions.

### Request for Sanctions – Fraud on the Court

Bankruptcy Court is a court of equity. Dismissing a creditor's claim is an equitable remedy, and this Court has the power to award it. In circumstances when the creditor has purposefully withheld information and committed fraud on the court by providing partially fraudulent information as part of a larger claim, the court has the power to invoke the *falsus in uno, falsus in omnibus* maxim and dismiss the entire claim. Had Mr. Rayz and Vertonix succeeded in their effort to inflate their claim, it would be to the detriment of other creditors, who would have received a smaller share of the available and distributable proceeds from the estate. Accordingly, an appropriate remedy could be a dismissal of the entire Vertonix claim (which would punish Vertonix and benefit Vertonix's potential victims), and/or an award of sanctions against Vertonix in favor of the estate.

Additional sanctions for in favor of Debtors are also requested.

### Request for Sanctions – Violation of the Automatic Stay

Under Rule 9011 the Court can also impose sanctions against anyone violating the automatic stay, particularly a creditor's attorney. Attorneys are held to a higher standard since they are doubtless fully aware of the rules of automatic stay. Mr. Rayz' actions described above are outrageous, and require proper action to punish him, provide Debtors with relief for their undue

suffering, and to deter others from future violations of the automatic stay, particularly such egregious violations as those committed by Mr. Rayz. <u>The present request for sanctions against Mr. Rayz and his client Vertonix Ltd for their willful and egregious violation of the automatic stay is the principal request of this Motion.</u>

Finally, sanctions for the violation of the automatic stay can also be imposed in favor of the estate. The improper demand made by Mr. Rayz and Vertonix on Debtors, had succeeded (i.e. if hypothetically Debtors had funds available to them, and had they succumbed to the threat and paid these funds Vertonix), would have siphoned money away from the estate, since all of Debtors non-exempt assets belonged to the estate after Debtors filed their Petition.

Accordingly, Debtors request that this Court impose sanctions it deems appropriate against Vertonix and Mr. Rayz for the above-described violation of the automatic stay and fraud on this Court. Debtors suggest the following sanctions:

1. The dismissal of the entire Vertonix claim (*falsus in uno, falsus in omnibus*);

2. Post-bankruptcy monetary sanction against Mr. Rayz and Vertonix in favor of Debtors;

3. Monetary sanctions against Mr. Rayz and Vertonix in favor of the bankruptcy estate;

4. Revocation of Mr. Rayz' pro hac vice admission to practice in this case and referral to the Professional Ethics Committee of The Pennsylvania Bar for further proceedings.

The Court may also, in its own discretion, refer this case to the US Attorney's Office for further proceedings to determine if Mr. Rayz violated 18 U.S.C. § 873.

Dated <u>March 4, 2019</u>

/s/ Leonid Nerdinsky
Leonid Nerdinsky, Esq.
Nerdinsky Law Group
3800 S Ocean Drive, Suite 242

Hollywood, FL 33019
Tel: 954-237-6307
lnerdinsky@nerdinskylaw.com


I CERTIFY that a true and correct copy of the foregoing was served via Notice of Electronic
Filing (CM/ECF) on this 4th day of March 2019, upon all registered users in this case.