## DECLARATION OF LEONID NERDINSKY, ESQ.
## IN SUPPORT OF DEBTORS' MOTION FOR SANCTIONS

I, Leonid Nerdinsky, declare as follows:

1.      I make this Declaration in support of Debtors' Motion for Enforcement of the Automatic Stay, Sanctions against Creditor Vertonix Ltd and Its Counsel Arkady "Eric" Rayz for Fraud on the Court and contempt for Willful Violations of the Automatic Stay.

2.      The information set forth in this Declaration is based upon my personal knowledge.

3.      I represent the Debtors, Yuri and Olga Lyubarsky, in the present Chapter 7 bankruptcy proceedings, Bankruptcy Case No. 18-16659-LMI.

4.      The Debtors approached me in May 2018 because they were being relentlessly pursued by creditor Vertonix, Ltd. ("Vertonix") and by its attorney Eric Rayz ("Mr. Rayz"), that their disability benefits were suspended, and they had no money to pay their creditors or their living expenses.

5.      The Debtors were aware that once they file for bankruptcy, Vertonix and Rayz would not be able to harass them anymore due to the imposition of the automatic stay, and that it was against bankruptcy rules for a creditor to make demands on debtors who sought bankruptcy protection.

6.      The Debtors filed their Chapter 7 Bankruptcy Petition on May 31, 2018 ("Petition").

7.      On June 15, 2018, I was contacted by Mr. Rayz who wanted to schedule a face-to-face meeting at my office. When I wrote that I needed to confirm with the Debtors, he immediately suggested that the Debtors could attend the meeting as well. However, prior to the meeting he did not elaborate on the purpose of the meeting. Attached as Exhibit A1 is a copy of the e-mail trail (06/15/18 – 06/19/18) between Mr. Rayz and me setting up the meeting. As can be seen, Mr. Rayz did not elaborate in advance about what he wanted to discuss other than generally stating that he wanted to discuss the case.

8.      The Debtors chose not to attend the meeting.

9.      On June 21, 2018, Mr. Rayz met with me at my office in Hollywood Beach, FL. The following description is based almost on notes I recorded immediately after the meeting:

> *The meeting was quick. And as predicted it contained a threat. In short, Rayz said*
> *he knows the Debtors have substantial assets, and showed me some chart with a*
> *bunch of companies connected to each other. Said he has copies of business checks*
> *signed by Yuri. Said he can get affidavits from jewelers who communicated with*
> *Yuri about buying jewelry. Said he knows who the Debtors sold their house to when*
> *they made $40,000. Said if he does not get paid $250,000 by Monday, will release*
> *all information to US attorney and the bankruptcy Trustee.*

10.     As described in the notes above, Mr. Rayz made a clear and unequivocal demand that my clients pay $250,000 by the following Monday (the meeting took place on a Thursday), and if this payment was not made, he threatened to turn over what he believed was proof of Debtors' misconduct to the US Attorney's Office and the Chapter 7 Trustee. He said he expected me to relay this demand and repercussions (if the demand was not met) to my clients.

11.     I was quite stunned after the meeting, feeling that my clients were being blackmailed. The meeting and the demand made on my clients seemed grossly inappropriate to me, a kind that I have never had in my history of practicing bankruptcy law.

12.     As was my duty, I immediately relayed the above to the Debtors, including the $250,000 demand for payment, the threat being made against them, and the June 25, 2018 deadline.

13.     At the time, it took a few days to determine the proper course of action. I considered it of paramount importance at that time to properly document the demand, and ideally to obtain a written confirmation from Mr. Rayz that he had made the $250,000 demand on my clients.

14.     On June 26, 2018, I relayed information about the meeting to the Trustee. Attached as Exhibit A2 is a copy of my e-mail dated June 26, 2018 to the Trustee.

15.     On June 26, 2018, I also wrote to Mr. Rayz that his behavior, threats and the $250,000 demand were highly inappropriate, and that the Debtors rejected his demand. Since Mr. Rayz had been moot in his prior e-mails about the purpose of his visit, and never followed up in writing after his meeting with me, my principal goal at that time was to get a written confirmation from Mr. Rayz of his inappropriate demand, the deadline, and the threats.

2

16.     I received an almost instant reply in which Mr. Rayz expressly confirmed the $250,000 demand he had made on June 19, 2018, although he tried to gloss over what had happened at the meeting. In particular, he claimed that the $250,000 demand was a "counter-offer" to the Debtors' prior offer of $80,000. Mr. Rayz also stated at the end of his e-mail that he and his clients did not care about my belief that the meeting was highly inappropriate. Attached as Exhibit A3 is a true copy of the e-mail exchange with Mr. Rayz on June 26, 2018.

17.     The descriptions of the July 19, 2018 meeting in the June 26, 2018 e-mail from Mr. Rayz, and the in declaration filed by Mr. Rayz in support of his Response in Opposition to Debtors' Objection to Proof of Claim, are inaccurate. The description I provided above is what actually happened.

18.     Minor differences aside, however, both Mr. Rayz and I agree (i) that he had made the $250,000 demand, (ii) that he had alleged criminal actions by the Debtors in filing their Petition, and (iii) that he set the June 25, 2018 deadline for the payment (Mr. Rayz called it "*provided the matter would be finalized by June 25, 2018*" in his e-mail, see Exhibit A3).

19.     In particular, although in my view it does not change the nature of what Mr. Rayz had done, I recall no discussion meeting with Mr. Rayz of any prior $80,000 offer during the brief meeting on June 19, 2018, nor was the $250,000 presented as a "counter-offer" by Mr. Rayz. The only monetary figure other than $250,000 that was mentioned by Mr. Rayz during the meeting was the $40,000 that Debtors had purportedly "made" from the sale of a house. I noted the $40,000 figure in my notes cited above.

20.     I later found out that the $40,000 being "made" by my clients was a reference to a May 2013 "short sale" of their former New Jersey property, from which Vertonix received $175,000. I have seen records showing that the property had been in foreclosure for several years prior to the "short" sale. The sale took place over four years prior to the Debtors' filing of the bankruptcy petition.

21.     I have seen evidence of my clients' great distress after the $250,000 demand. They were extremely dismayed that this could happen despite their bankruptcy declaration.

22.     Of particular note, I have seen manifestations of Mr. Lyubarsky's anxiety/panic disorder through many of my interactions with him. I can attest that his anxiety substantially increased following Mr. Rayz' demand and threat made on June 21, 2018 and was substantially heightened for many months

afterwards.

I hereby affirm and declare that the foregoing is true to the best of my knowledge and belief.

*Leonid Nerdinsky*

Leonid Nerdinsky, Esq.

March 4, 2019

**From:** Eric Rayz <erayz@kalraylaw.com>
**Sent:** Tuesday, June 19, 2018 9:27 AM
**To:** Leonid Nerdinsky <lnerdinsky@nerdinskylaw.com>
**Subject:** RE: Vertonix/Lyubarsky

Good morning,

As a precursor to our meeting, I am forwarding to you a copy of an opinion from the Court of Common Pleas of Philadelphia County (that was affirmed on appeal earlier this year). I am not sure if Mr. and Mrs. Lyubarsky were appraised of Judge Ander's decision.

See you on Friday.

Sincerely,

Eric Rayz, Esquire
Kalikhman & Rayz, LLC
1051 County Line Road, Suite "A"
Huntingdon Valley, PA 19006
Telephone: (215) 364-5030
Facsimile: (215) 364-5029
E-mail: erayz@kalraylaw.com

www.kalraylaw.com
_____

Disclaimer: This message (which may contain information that is privileged, confidential and exempt from disclosure under applicable law) is intended only for the use of the individual or entity to which it is addressed. If the receiver of this message is not the intended recipient, or as the employee or agent responsible for opening this message, you are hereby notified that any dissemination, distribution or copying of this message or its attachment(s) is strictly prohibited. To ensure compliance with certain regulations promulgated by the U.S. Internal Revenue Service, we inform you that any federal tax advice contained in this communication (including any attachments) is not intended or written to be used, and cannot be used, by any taxpayer for the purpose of (1) avoiding tax-related penalties under the U.S. Internal Revenue Code, or (2) promoting, marketing or recommending to another party any tax-related matters addressed herein, unless expressly stated otherwise. If you have received this message in error, please delete this message from your system and notify us immediately by telephone at (215) 364-5030.

**From:** Leonid Nerdinsky <lnerdinsky@nerdinskylaw.com>
**Sent:** Monday, June 18, 2018 4:03 PM
**To:** Eric Rayz <erayz@kalraylaw.com>
**Subject:** RE: Vertonix/Lyubarsky

My office. See below.

Leonid Nerdinsky, Esq.
Nerdinsky Law Group, P.A.
Hallmark of Hollywood Offices
3800 South Ocean Drive, Suite 242
Hollywood Beach, FL 33019
Tel.: 954-237-6307
Fax: 954-416-6188
E-mail: lnerdinsky@nerdinskylaw.com
Website: www.nerdinskylaw.com

The information contained in this transmission may contain privileged and confidential information. It is intended only for the use of the person(s) named above. If you are not the intended recipient, you are hereby notified that any review, dissemination, distribution or duplication of this communication is strictly prohibited. If you are not the intended recipient, please contact the sender by reply email and destroy all copies of the original message. To reply to our email administrator directly, please send an email to lnerdinsky@nerdinskylaw.com.

Tax Advice Disclosure: To ensure compliance with requirements imposed by the IRS under Circular 230, we inform you that any U.S. federal tax advice contained in this communication (including any attachments), unless otherwise specifically stated, was not intended or written to be used, and cannot be used, for the purpose of (1) avoiding penalties under the Internal Revenue Code or (2) promoting, marketing or recommending to another party any matters addressed herein.

**From:** Eric Rayz <erayz@kalraylaw.com>
**Sent:** Monday, June 18, 2018 3:37 PM
**To:** Leonid Nerdinsky <lnerdinsky@nerdinskylaw.com>
**Subject:** RE: Vertonix/Lyubarsky

That works.  Location?

**From:** Leonid Nerdinsky <lnerdinsky@nerdinskylaw.com>
**Sent:** Monday, June 18, 2018 3:36 PM
**To:** Eric Rayz <erayz@kalraylaw.com>
**Subject:** RE: Vertonix/Lyubarsky

Thursday afternoon is best.  4pm?

**From:** Eric Rayz <erayz@kalraylaw.com>
**Sent:** Monday, June 18, 2018 2:10 PM
**To:** Leonid Nerdinsky <lnerdinsky@nerdinskylaw.com>
**Subject:** RE: Vertonix/Lyubarsky

Thursday or Friday afternoon works.  I am staying at Acqualina, which is not far your office and your clients' residence.

Let me know what time/place works for you.

Eric

**From:** Leonid Nerdinsky <lnerdinsky@nerdinskylaw.com>
**Sent:** Monday, June 18, 2018 1:58 PM
**To:** Eric Rayz <erayz@kalraylaw.com>
**Subject:** RE: Vertonix/Lyubarsky

Eric:

Let me what days and times you are available this week.

Thank you.


Leonid Nerdinsky, Esq.
Nerdinsky Law Group, P.A.
Hallmark of Hollywood Offices
3800 South Ocean Drive, Suite 242
Hollywood Beach, FL 33019
Tel.: 954-237-6307
Fax: 954-416-6188
E-mail: lnerdinsky@nerdinskylaw.com
Website: www.nerdinskylaw.com

The information contained in this transmission may contain privileged and confidential information. It is intended only for the use of the person(s) named above. If you are not the intended recipient, you are hereby notified that any review, dissemination, distribution or duplication of this communication is strictly prohibited. If you are not the intended recipient, please contact the sender by reply email and destroy all copies of the original message. To reply to our email administrator directly, please send an email to lnerdinsky@nerdinskylaw.com.

Tax Advice Disclosure: To ensure compliance with requirements imposed by the IRS under Circular 230, we inform you that any U.S. federal tax advice contained in this communication (including any attachments), unless otherwise specifically stated, was not intended or written to be used, and cannot be used, for the purpose of (1) avoiding penalties under the Internal Revenue Code or (2) promoting, marketing or recommending to another party any matters addressed herein.


**From:** Eric Rayz <erayz@kalraylaw.com>
**Sent:** Friday, June 15, 2018 11:15 AM
**To:** Leonid Nerdinsky <lnerdinsky@nerdinskylaw.com>
**Subject:** RE: Vertonix/Lyubarsky

No prob.  You can bring to the meeting as well.

**From:** Leonid Nerdinsky <lnerdinsky@nerdinskylaw.com>
**Sent:** Friday, June 15, 2018 11:13 AM
**To:** Eric Rayz <erayz@kalraylaw.com>
**Subject:** RE: Vertonix/Lyubarsky

Let me confirm with my clients and I will get back to you.


Leonid Nerdinsky, Esq.
Nerdinsky Law Group, P.A.
Hallmark of Hollywood Offices
3800 South Ocean Drive, Suite 242
Hollywood Beach, FL 33019
Tel.: 954-237-6307
Fax: 954-416-6188
E-mail: lnerdinsky@nerdinskylaw.com
Website: www.nerdinskylaw.com

The information contained in this transmission may contain privileged and confidential information. It is intended only for the use of the person(s) named above. If you are not the intended recipient, you are hereby notified that any review, dissemination, distribution or duplication of this communication is strictly prohibited. If you are not the intended recipient, please contact the sender by reply email and destroy all copies of the original message. To reply to our email administrator directly, please send an email to lnerdinsky@nerdinskylaw.com.

Tax Advice Disclosure: To ensure compliance with requirements imposed by the IRS under Circular 230, we inform you that any U.S. federal tax advice contained in this communication (including any attachments), unless otherwise specifically stated, was not intended or written to be used, and cannot be used, for the purpose of (1) avoiding penalties under the Internal Revenue Code or (2) promoting, marketing or recommending to another party any matters addressed herein.

**From:** Eric Rayz <erayz@kalraylaw.com>
**Sent:** Friday, June 15, 2018 9:31 AM
**To:** Leonid Nerdinsky <lnerdinsky@nerdinskylaw.com>
**Subject:** Vertonix/Lyubarsky

Dear Mr. Nerdinsky,

As you may be aware, my office represents Vertonix, Ltd.

I will be in Sunny Isles next week and suggest that we meet to discuss your clients' bankruptcy filing.

Sincerely,

Eric Rayz, Esquire
Kalikhman & Rayz, LLC
1051 County Line Road, Suite "A"
Huntingdon Valley, PA 19006
Telephone: (215) 364-5030
Facsimile: (215) 364-5029
E-mail: erayz@kalraylaw.com

www.kalraylaw.com

_____

Disclaimer: This message (which may contain information that is privileged, confidential and exempt from disclosure under applicable law) is intended only for the use of the individual or entity to which it is addressed. If the receiver of this message is not the intended recipient, or as the employee or agent responsible for opening this message, you are hereby notified that any dissemination, distribution or copying of this message or its attachment(s) is strictly prohibited. To ensure compliance with certain regulations promulgated by the U.S. Internal Revenue Service, we inform you that any federal tax advice contained in this communication (including any attachments) is not intended or written to be used, and cannot be used, by any taxpayer for the purpose of (1) avoiding tax-related penalties under the U.S. Internal Revenue Code, or (2) promoting, marketing or recommending to another party any tax-related matters addressed herein, unless expressly stated otherwise.  If you have received this message in error, please delete this message from your system and notify us immediately by telephone at (215) 364-5030.

**From:** Leonid Nerdinsky
**Sent:** Tuesday, June 26, 2018 6:35 PM
**To:** marcia.dunn@dunnlawpa.com
**Subject:** 8-16659-LMI Yuri Lyubarsky Olga Lyubarsky

Trustee Dunn:

I represent Yuri and Olga Lyubarsky, debtors in bankruptcy case no. 18-16659.

I am writing to inform you that last week I was contacted by Eric Rayz, a Pennsylvania-based attorney for creditor Vertonix, Ltd. Mr. Rayz proposed to meet in person to discuss the case.

The meeting took place last Thursday (06/21/18) at my office. Mr. Rayz stated that he had purported evidence of my clients' past wealth and businesses. He offered that my clients pay $250,000 to Vertonix, Ltd., or he would forward this evidence to you and the US Attorney's office. He gave my clients until today (Monday, 06/25/18) to accept this "settlement offer" and agree to pay the money.

I am not concerned with the purported evidence of my clients' past wealth and businesses. The purpose of my e-mail to you is just to be transparent and inform you about the actual contact with the creditor's attorney. I am not sure in what vein this "offer" was meant but it felt inappropriate.

I rejected his "offer".

Please contact me should you need any further information.

Respectfully,

Leonid Nerdinsky, Esq.
Nerdinsky Law Group, P.A.
Hallmark of Hollywood Offices
3800 South Ocean Drive, Suite 242
Hollywood Beach, FL 33019
Tel.: 954-237-6307
Fax: 954-416-6188
E-mail: lnerdinsky@nerdinskylaw.com
Website: www.nerdinskylaw.com

The information contained in this transmission may contain privileged and confidential information. It is intended only for the use of the person(s) named above. If you are not the intended recipient, you are hereby notified that any review, dissemination, distribution or duplication of this communication is strictly prohibited. If you are not the intended recipient, please contact the sender by reply email and destroy all copies of the original message. To reply to our email administrator directly, please send an email to lnerdinsky@nerdinskylaw.com.

Tax Advice Disclosure: To ensure compliance with requirements imposed by the IRS under Circular 230, we inform you that any U.S. federal tax advice contained in this communication (including any attachments), unless otherwise specifically stated, was not intended or written to be used, and cannot be

**From:** Eric Rayz <erayz@kalraylaw.com>
**Date:** June 26, 2018 at 7:19:17 PM EDT
**To:** Leonid Nerdinsky <lnerdinsky@nerdinskylaw.com>
**Subject: Re: Lyubarsky** _____

Dear Mr. Nerdinsky, _____

I appreciate your e-mail, but it woefully misconstrues what took place on Thursday, June 21, 2018, in your office.

First, in our meeting, in response to your clients' earlier proposal (communicated by their Pennsylvania counsel without your apparent knowledge) to settle the underlying judgment for $80,000, I communicated my client's willingness to accept $250,000, provided the matter would be finalized by Monday, June 25, 2018.  Given that your clients failed indicate their acceptance by the provided deadline, the offer was unilaterally withdrawn. Therefore, your e-mail was unnecessary.

Second, in our meeting, I expressed my client's sincere belief that Mr. and Mrs. Lyubarsky have engaged in criminal misconduct by deliberately filing a bankruptcy petition containing false information.  In this regard, I specifically provided you with examples of assets that have been intentionally omitted from your clients' bankruptcy schedules.

1

Finally, I have been involved in this case for almost a decade. During this time, your clients had the benefit of at least 5 different legal counsel (in various states). These attorneys (at various times) accused my client of criminal extortion (e.g., threatening Mr. Lyubarsky's son with physical violence) in a formal pleading filed with the court and me – personally – of being a member of "a Russian mob" (in open court). Yet, both my client and I have persevered. For this reason, neither myself nor my client really care as to what your "personal reaction" was or may have been.

Sincerely,

Eric Rayz, Esquire
Kalikhman & Rayz, LLC
1051 County Line Road, Suite "A"
Huntingdon Valley, PA 19006
Telephone: (215) 364-5030
Facsimile: (215) 364-5029
E-mail: erayz@kalraylaw.com

www.kalraylaw.com
_____

Disclaimer: This message (which may contain information that is privileged, confidential and exempt from disclosure under applicable law) is intended only for the use of the individual or entity to which it is addressed. If the receiver of this message is not the intended recipient, or as the employee or agent responsible for opening this message, you are hereby notified that any dissemination, distribution or copying of this message or its attachment(s) is strictly prohibited. To ensure compliance with certain regulations promulgated by the U.S. Internal Revenue Service, we inform you that any federal tax advice contained in this communication (including any attachments) is not intended or written to be used, and cannot be used, by any taxpayer for the purpose of (1) avoiding tax-related penalties under the U.S. Internal Revenue Code, or (2) promoting, marketing or recommending to another party any tax-related matters addressed herein, unless expressly stated otherwise. If you have received this message in error, please delete this message from your system and notify us immediately by telephone at (215) 364-5030.

**From:** Leonid Nerdinsky <lnerdinsky@nerdinskylaw.com>
**Date:** Tuesday, June 26, 2018 at 6:34 PM
**To:** Work <erayz@kalraylaw.com>
**Subject:** Lyubarsky


Dear Mr. Rayz:

I am writing in response to your in-person offer last Thursday, made during your visit to my office in Florida, to settle my clients' purported debt to Vertonix, Ltd. for $250,000 in exchange for you not providing purported evidence of my clients' wealth and businesses to the Trustee and the US Attorney.

My initial personal reaction to your offer was that it seemed highly inappropriate, i.e., your clients' agreement not to release information about my clients to a third party (that your clients believe would damage my clients) if my clients paid $250,000.00 to your client.

I am authorized to inform you that my clients refuse to consider your offer.

Respectfully,

Leonid Nerdinsky, Esq.
Nerdinsky Law Group, P.A.
Hallmark of Hollywood Offices
3800 South Ocean Drive, Suite 242
Hollywood Beach, FL 33019
Tel.: 954-237-6307

Fax: 954-416-6188
E-mail: lnerdinsky@nerdinskylaw.com
Website: www.nerdinskylaw.com

The information contained in this transmission may contain privileged and confidential information. It is intended only for the use of the person(s) named above. If you are not the intended recipient, you are hereby notified that any review, dissemination, distribution or duplication of this communication is strictly prohibited. If you are not the intended recipient, please contact the sender by reply email and destroy all copies of the original message. To reply to our email administrator directly, please send an email to lnerdinsky@nerdinskylaw.com.

Tax Advice Disclosure: To ensure compliance with requirements imposed by the IRS under Circular 230, we inform you that any U.S. federal tax advice contained in this communication (including any attachments), unless otherwise specifically stated, was not intended or written to be used, and cannot be used, for the purpose of (1) avoiding penalties under the Internal Revenue Code or (2) promoting, marketing or recommending to another party any matters addressed herein.

## DECLARATION OF MARINA KATS, ESQ.
## IN SUPPORT OF DEBTORS' MOTION FOR SANCTIONS

I, Marina Kats, declare as follows:

1.      I make this Declaration in support of Debtors' Motion for Enforcement of the Automatic Stay, Sanctions against Creditor Vertonix Ltd and Its Counsel Arkady "Eric" Rayz for Fraud on the Court and contempt for Willful Violations of the Automatic Stay.

2.      The information set forth in this Declaration is based upon my personal knowledge.

3.      I am an attorney licensed to practice law in Pennsylvania. I am the owner of the Kats Jamison and Associates, a law firm in Philadelphia, Pennsylvania.

4.      Starting in early 2016, I represented Yuri and Olga Lyubarsky in Pennsylvania proceedings against Vertonix, Ltd. ("Vertonix"). Vertonix was represented by Arkady "Eric" Rayz, Esq. ("Mr. Rayz") in the Pennsylvania proceedings. All records cited below are from the Pennsylvania proceedings.

**Sanctions under the Pennsylvania Court's July 20, 2012 Order**

5.      On July 20, 2012, the Pennsylvania court entered an order imposing sanctions against Yuri and Olga Lyubarsky unless they comply with discovery requests from Vertonix. A true copy of the order is attached as Exhibit B1.

6.      On May 6, 2015, Mr. Lyubarsky attended a deposition taken by counsel for Vertonix. I know this because I have seen a copy of the deposition transcript.

7.      On May 3, 2016, Vertonix filed a Motion to Reassess Damages, a true copy of which is attached as Exhibit B2. Vertonix's calculation of total damages it asked to reassess included $135,300 in sanctions under the July 20, 2012 order. This constituted $100 per day for 1,353 days.

8.      Also included in the Motion to Reassess Damages was $100,100.82 in new legal fees and costs, $16,751.29 in previously awarded legal fees, $17,500.15 remaining principal

balance of the original debt (the last two figures being combined in the $34,251.44 figure titled "principal balance and accrued interest"), and $6,750.45 in additional interest.

9.    On July 1, 2016, having been just recently retained by Mr. and Mrs. Lyubarsky (who had previously acted pro se for about five years), I filed a short response to Vertonix's Motion to Reassess Damages, a true copy of which is attached as Exhibit B3. As can be seen, response principally challenged the imposition of $135,300 in sanctions.

10.    Regrettably, expecting the entire Motion to Reassess Damages to be denied in these circumstances, I did not contest the award of legal fees and costs claimed by Vertonix.

11.    On July 7, 2016, the Pennsylvania court ruled on the Motion to Reassess Damages, granting my request to strike the entirety of the $135,300 in sanctions from the amount Vertonix requested. A true copy of the court's ruling is attached hereto as Exhibit B4. As can be seen, the court crossed out the $276,402.71 amount requested by Vertonix, and replaced it with $141,102.71, which is exactly $135,300 less.

12.    No subsequent orders for sanctions were made by the Pennsylvania court, nor requested by Vertonix. While on July 1, 2016 the Pennsylvania court issued an order granting a motion by Vertonix to compel a deposition of my clients, no sanctions were ordered under that order.

**My purported phone call to Mr. Rayz in April 2018**

13.    I have reviewed the *Declaration of Arkady "Eric" Rayz in Support of the Response in Opposition to Debtors Objection to Proof of Claim*, which bears the signature of Mr. Rayz.

14.    In Paragraph 132 of his declaration, Mr. Rayz states that shortly after April 11, 2018, "*the Debtors' Pennsylvania counsel called my office to again communicate the Debtors' offer of $80,000.00.*"

15.    Mr. Rayz' statement in Paragraph 132 is false. I made no phone calls to Mr. Rayz in April-May 2018. In fact, I have not spoken to Mr. Rayz about the Debtors since long prior to April 2018 and until the present time.

16.    I am also not aware of any other attorney at my office speaking to Mr. Rayz between April 2018 and today. It is virtually impossible that any of them could have done it without speaking to me first.

17.    I did discuss possible settlement of the case with Mr. Rayz on two or three occasions in 2016 and 2017, but not after that.

18.    I also did discuss a possible settlement of the case on several occasions in 2016-2018 with Steven Maniloff, the attorney for Guardian Life Insurance Company. This included a discussion in April 2018. His client held a large amount of "suspended" disability benefits, some of which could be used to fund a settlement with Vertonix during that period.

19.    I know from Mr. Maniloff that he spoke to Mr. Rayz briefly in April 2018 about the possibility of settlement by way of "dividing" the suspended benefits between my clients and Vertonix, and Mr. Rayz said he was not interested. This was only an exploration of common ground, and not an offer settlement to Vertonix on behalf of my clients.

I hereby affirm and declare that the foregoing is true to the best of my knowledge and belief.

Marina Kats, Esq.
March 2, 2019

**IN THE COURT OF COMMON PLEAS PHILADELPHIA COUNTY**
**FIRST JUDICIAL DISTRICT OF PENNSYLVANIA**
**CIVIL TRIAL DIVISION**

| | | |
|---|---|---|
| **VERTONIX LIMITED** | : | |
| | : | **FEBRUARY TERM, 2011** |
| | : | |
| **v.** | : | **NO.   3388** |
| | : | |
| | : | **CONTROL NO.      12052539** |
| **YURI and OLGA LYUBARSKY, et al** | : | |

## ORDER

**AND NOW,** this _20_ day of July, 2012, upon consideration of Plaintiff's Second

Motion for Sanctions and no response thereto, it is hereby **ORDERED** and **DECREED** as follows:

1.  The Court finds that Defendants, Yuri Lyubarsky and Olga Lyubarsky, have willfully

    disregarded this Court's Orders of December 15, 2011 and April 12, 2012.

2.  Within thirty (30) days of the entry of this Order, Defendants shall pay Kalikhman & Rayz,

    LLC the sum of $557.68 representing filing costs of $57.68 and attorney fees of $500.00.

3.  Within thirty (30) days of this Order Defendant shall provide full and complete answers to

    the Interrogatories and full and complete responses to Plaintiff's Request for Production of

    Documents without objection or Motion for Protective Order.

4.  Should Defendants not comply with this Order, commencing August 19, 2012, Defendants

    are sanctioned $100.00 per day until they comply fully with this Court's Orders.

5.  Defendants are cautioned that their continued and unexplained failure to comply with

    Orders of the Court may result in further sanctions.

**DOCKETED**

JUL 2 0 2012

**T. DUGAN**

**BY THE COURT:**

**IDEE C. FOX, J.**

Vertonix Limited Vs Lyu-ORDER



11020338800027
Control No.: 16050538

**FILED**
03 MAY 2016 01:59 pm
Civil Administration
**P. MARTIN**

| | |
|---|---|
| VERTONIX LIMITED<br><br>Plaintiff(s)<br><br>v.<br><br>LYUBARSKY, et al.<br><br>Defendant(s) | COURT OF COMMON PLEAS<br>PHILADELPHIA COUNTY<br><br>February Term 2011<br><br>Docket No. 3388 |

## <u>ORDER</u>

AND NOW, this _____ day of _____, 20____, upon consideration of Plaintiff's Motion to Reassess Damages, it is hereby ORDERED and DECREED that:

1.   The Prothonotary is to amend the judgment entered in this matter on February 24, 2011, for the Plaintiff and against Defendants, YURI LYUBARSKY and OLGA LYUBARSKY, to reflect that, as of May 3, 2016, the amount of the judgment is $276,402.71; and

2.   Defendants are to pay interest at the legal rate of six (6) percent per annum, upon the amount of the judgment entered in this matter, from the date of this Order, and until it is paid in full.

BY THE COURT:

_____
, J.

Case ID: 110203388
Control No.: 16050538

| | |
|---|---|
| VERTONIX LIMITED<br><br>Plaintiff(s)<br><br>v.<br><br>LYUBARSKY, et al.<br><br>Defendant(s) | COURT OF COMMON PLEAS<br>PHILADELPHIA COUNTY<br><br>February Term 2011<br><br>Docket No. 3388 |

### **ORDER FOR A HEARING**

AND NOW, this _____ day of _____, 20_____, upon consideration of Plaintiff's Motion to Reassess Damages and any response thereto, it is hereby ORDERED that a rule is issued to show cause why the relief requested by Plaintiff should not be granted.

RULE RETURNABLE the _____ day of _____, at _____, in Court Room _____, City Hall, Philadelphia.

BY THE COURT:

_____
J.

2

Case ID: 110203388
Control No.: 16050538

**KALIKHMAN & RAYZ, LLC**                    ATTORNEY(S) FOR PLAINTIFF(S)
Eric Rayz, Esquire
Attorney ID No. 87976
1051 County Line Road, Suite "A"
Huntingdon Valley, PA 19006
Telephone: (215) 364-5030
Facsimile: (215) 364-5029
E-mail: erayz@kalraylaw.com

| | |
|---|---|
| VERTONIX LIMITED<br><br>Plaintiff(s)<br><br>v.<br><br>LYUBARSKY, et al.<br><br>Defendant(s) | COURT OF COMMON PLEAS<br>PHILADELPHIA COUNTY<br><br>February Term 2011<br><br>Docket No. 3388 |

### PLAINTIFF'S MOTION TO REASSESS DAMAGES

Plaintiff Vertonix Limited (hereinafter "Plaintiff"), by and through counsel, Kalikhman & Rayz, LLC,

files the following Motion and, in support thereof, avers as follows:

1.      On or about January 14, 2009, Defendants YURI LYUBARSKY and OLGA LYUBARSKY

executed a certain Settlement Agreement and Release (hereinafter "Settlement Agreement and

Release") with regard to an ongoing litigation between Plaintiff and Defendants, in the Superior Court of

New Jersey, Law Division, Monmouth County, captioned and docketed Vertonix Limited v. Lyubarsky, et

al., Docket No. MON-L-1951-08, concerning a certain commercial loan obligation owed by Defendants.

2.      Per the terms of the Settlement Agreement and Release, Defendants were required to

pay Plaintiff the sum of $119,000.00, by way of an initial payment, a series of monthly payments, and a

final ballon payment of $90,000.00.

3.      To facilitate enforcement of the Settlement Agreement and Release, on January 14,

2009, Defendants executed a Surety Agreement, which is marked and attached hereto as Exhibit "A," the

terms of which provide Plaintiff with the right to confess judgment against Defendants in the event that,

*inter alia*, they fail to make any timely payment pursuant to the Settlement Agreement and Release.

4.      On January 14, 2009, Defendants also executed a Disclosure and Waiver of Rights

Regarding Confession of Judgment, which is marked and attached hereto as Exhibit "B," the terms of

which provide Plaintiff with the right to confess judgment against the the Defendants.

3

Case ID: 110203388
Control No.: 16050538

5.      Defendants then defaulted on their obligations, as set forth in Exhibit "A," in that they failed to issue the balloon payment as agreed.

6.      Per the terms of the Settlement Agreement and Surety Agreement, on February 24, 2011, a judgment was confessed for the Plaintiff and against Defendants in the sum of $184,264.19.

7.      The damages with respect to the judgment were assessed based on the following calculation:

| | |
|---|---|
| PRINCIPAL AMOUNT DUE | $167,512.90 |
| INTEREST | $ |
| LATE CHARGES | $ |
| SATISFACTION CHARGES | $ |
| ATTORNEYS' FEE (10% OF THE TOTAL AMOUNT DUE) | $16,751.29 |
| COURT COSTS | $ |
| **TOTAL BALANCE DUE:** | $184,264.19 |

8.      Defendants did not challenge the entry of the judgment.

9.      Instead, Defendants engaged in a protracted, blatantly-obstructionist course of conduct, seeking to avoid payment of the judgment.

10.     In this regard, Plaintiff was required to initiate post-judgment discovery in aide of execution, as well as voluminous motion practice.

11.     Plaintiff's efforts included multiple court appearances for Plaintiff's counsel, issuance of multiple subpoena (to various financial institutions), review of hundreds of pages of bank records, as well as investigation of dozens of corporate entities owned by, affiliated with, and/or related to Defendants, *inter alia*, in New York, New Jersey, and Florida.

12.     Moreover, Plaintiff transferred the judgment to the Superior Court of New Jersey, captioned and docketed as Vertonix Limited v. Lyubarsky, et al., Docket No. DJ-146520-11, because Defendants owned luxury real estate in the State of New Jersey.

13.     In addition, Plaintiff transferred the judgment to the Seventeenth Judicial Circuit for Broward County, Florida, captioned and docketed as Vertonix Limited v. Lyubarsky, et al., Case No. 12-3775-CA (2), because Defendants owned luxury real estate, valuable, and automobiles, in the State of Florida.

4

Case ID: 110203388
Control No.: 16050538

14.     Defendants engaged in further obstructionist behavior in that they attempted strike the judgment in Florida.

15.     Although Defendants did not succeed, their behavior required Plaintiff to retain local counsel, who – together with the undersigned – participated in multiple court appearances (telephonically and in person) and engaged in voluminous motion practice.

16.     This required the undersigned counsel to make multiple, extended trips to Florida to appear for the proceedings in that jurisdiction.

17.     Thus, due to Defendants' conduct, Plaintiff and Plaintiff's counsel had to engage in various post-judgment execution matters, including:

      a.     Promulgating post-judgment discovery;

      b.     Issuance of subpoenas;

      c.     Review of Defendants' financial records that were turned over by third parties in discovery;

      d.     Review of corporate records from various jurisdictions, regarding corporate entities owned, controlled, and/or affiliated with Defendants;

      e.     Drafting and filing motions to compel Defendants' response to post-judgment discovery;

      f.     Court appearances in various jurisdictions;

      g.     Transfer and recording of the judgment in different states;

      h.     Travelling to New Jersey and Miami, Florida, to interview, secure, and retain local counsel;

      i.     Maintaining follow-up contacts with Plaintiff and Defendants' various counsel; and

      j.     Drafting and filing this motion for reassessment of damages.

18.     Accordingly, after the entry of the judgment in April of 2013, due to Defendants' failure to comply with the terms of the Settlement Agreement, Plaintiff incurred additional (and significant) fees and costs.

19.     Indeed, since the entry of the judgment in this matter more than five (5) years ago,

Case ID: 110203388
Control No.: 16050538

Plaintiff has incurred over $30,000.00 in related costs and expenses (e.g., airfare, hotel stays, recording and/or filing costs), while its counsel spent well over 200 hours litigating this case across multiple jurisdictions.

20.    Because of Defendants' failure to comply with their discovery obligations, the Hon. Idee C. Fox entered a number of Orders against them.

21.    For instance, on December 15, 2011, the Hon. Idee C. Fox entered an Order, which is marked and attached hereto as Exhibit "C."  The Order states as follows:

> AND NOW, this 15 day of December, 2011, upon consideration of Plaintiff's Motion to Compel Defendants' responses to Post-judgment Discovery and any response thereto, it is hereby ORDERED and DECREED that:
>
> 1.    The Motion is GRANTED;
>
> 2.    Defendants, YURI LYUBARSKY and OLGA LYUBARSKY, must provide full and complete answers to the interrogatories and full and complete responses to the requests for production of documents without objection or motion for a protective order within thirty (30) days of this ORDER or sanctions shall be imposed.

Exhibit "C."

22.    Furthermore, following a Rule to Show Cause hearing, on April 12, 2012, the Hon. Idee C. Fox entered another Order, marked and attached hereto as Exhibit "D," which states as follows:

> AND NOW, this 12 day of April, 20[12] upon consideration of Plaintiff's Motion for Sanctions and any responses thereto, it is hereby ORDERED and DECREED that:
>
> 1.    The Motion is GRANTED;
>
> 2.    The Court finds that Defendants . . . are in willful disregard of this Court's Order of December 15, 2011, and that Defendants' willful disregard of this Court's Order caused irreparable harm and prejudice to Plaintiff;
>
> 3.    Within thirty (30) days of this Order, Defendants shall pay Kalikhman & Rayz, LLC: (a) $57.68 for the cost of filing the original Motion for Sanctions; and (b) $750.00 in counsel fees for the preparation of this motion and attendance of any related hearing(s);
>
> 4.    Within thirty (30) days of this Order, Defendants must provide full and complete answers to interrogatories and full and complete responses to the requests for production of documents, without objection or motion for a protective order; and

Case ID: 110203388
Control No.: 16050538

     5.      Defendants are cautioned that their continued and unexplained failure to comply with the Orders of this Court may occasion even harsher sanctions.

Exhibit "D."

    23.    Furthermore, on July 20, 2012, the Hon. Idee C. Fox entered another Order, marked and attached hereto as Exhibit "E," which states as follows:

     AND NOW, this 20 day of July, 2012, upon consideration of Plaintiff's Second Motion for Sanctions and no responses thereto, it is hereby **ORDERED** and **DECREED** as follows:

     6.      The Court finds that Defendants, Yuri Lyubarsky and Olga Lyubarsky, have willfully disregarded this Court's Orders of December 15, 2011 and April 12, 2012.

     7.      Within thirty (30) days of this Order, Defendants shall pay Kalikhman & Rayz, LLC the sum of $557.68 representing filing costs of $57.68 and attorney fees of $500.00.

     8.      Within thirty (30) days of this Order Defendants shall provide full and complete answers to the Interrogatories an full and complete responses to Plaintiff's Request for Production of Documents without objection or Motion for Protective Order.

     9.      Should Defendants not comply with this Order, commencing August 19, 2012, Defendants are sanctioned $100.00 per day until they fully comply with this Court's Orders.

     10.     Defendants are cautioned that their continued and unexplained failure to comply with the Orders of this Court may result in further sanctions.

Exhibit "E."

    24.    Defendants have never fully complied with any of the Orders of the Court.

    25.    Therefore, per the Order of July 20, 2012, through May 3, 2016, Defendants have incurred sanctions in the total amount of $135,300.00.

    26.    As a result of the efforts of Plaintiff's counsel, however, in April of 2013, Plaintiff recovered $175,000.00 from the proceeds of the sale of Defendants' New Jersey property.

    27.    This sum, however, was not sufficient to satisfy the entire outstanding balance of the judgment and, in accepting this partial payment, Plaintiff explicitly reserved the right to continue its collection efforts until the full amount was paid.

    28.    Ultimately, solely due to Defendants' failure to issue timely payment, Plaintiff incurred or expended additional sums since the entry of the judgment and, given credit for any payments made by

Case ID: 110203388
Control No.: 16050538

Defendants, as of the day of this filing, the amount of the judgment should read as follows:

| | |
|---|---:|
| Principal balance and accrued interest (as of April 30, 2013) | $34,251.44 |
| Additional Interest (as of May 3, 2016) | $6,750.45 |
| Sanctions per the Court's Order of July 20, 2012 | $135,300.00 |
| Legal fees (less $16,751.29 originally confessed) | $68,528.71 |
| Costs | $31,572.11 |
| **Total:** | **$276,402.71** |

29.      The judgment formerly entered against Defendants does not reflect any credit for payment received on account of the judgment, the accrued interest, the sanctions imposed by the Court, the above-referenced attorneys' fees, and/or additional costs.

30.      Accordingly, it is insufficient to satisfy the amount currently due.

31.      It is well-settled law in Pennsylvania that the Court may exercise its equitable powers to control the enforcement of a judgment and to grant any relief until that judgment is satisfied.  See Chase Home Mortgage Corporation of the Southwest v. Good, 537 A.2d 22, 24 (Pa. Super. 1988); Stephenson v. Butts, 142 A.2d 319, 321 (Pa. Super. 1958); 20 P.L.E. Judgments § 191.

32.      Indeed, the Superior Court has repeatedly cited the right of a judgment creditor to amend the amount of judgment.  See Nationsbanc Mortgage Corp. v. Grillo, 827 A.2d 489 (Pa. Super. 2003); Morgan Guarantee Trust Company of New York v. Mowl, 704 A.2d 923 (Pa. Super. 1998); Union National Bank of Pittsburgh v. Ciongoli, 595 A.2d 179 (Pa. Super. 1991).

33.      In B.C.Y. v. Bukovich, 390 A.2d 276 (Pa. 1978), the Pennsylvania Supreme Court reiterated its long-standing rule that a court has the inherent power to correct a judgment to conform to the facts of the case.

34.      Under the terms of the parties' Settlement Agreement and prevailing Pennsylvania law, Plaintiff is entitled to inclusion of the figures set forth above in the amount of the judgment against Defendants.  See Exhibit "A."

35.      For instance, Plaintiff is unequivocally entitled in post-judgment interest at the statutory, yearly rate of six (6) percent.  See 42 Pa.C.S. § 8101 (declaring that "[e]xcept as otherwise provided by another statute, a judgment for a specific sum of money shall bear interest at the lawful rate from the date of the verdict or award, or from the date of the judgment, if the judgment is not entered upon a verdict or award. . . ."); 41 P.S. § 202 (setting the statutory rate of interest in the Commonwealth of Pennsylvania at six percent (6%) per annum); see also Osial v. Cook, 803 A.2d 209, 215 (Pa. Super. 1994)(explaining

Case ID: 110203388
Control No.: 16050538

that "the general rule is that a plaintiff is entitled to interest on a judgment from the date of the verdict, and for purposes of computing interest, judgment and verdict are synonymous. . . ."); Pittsburgh Constr. Co. v. Griffith, 834 A.2d 572, 582 (Pa. Super. 2003)(observing that a plaintiff receives statutory post-judgment interest as a matter of right where the damages are ascertainable by computation).

36.    In similar fashion, pursuant to the governing Pennsylvania case law, attorneys' fees and costs of collection are recoverable where the agreement of the parties provides for such recovery.  See, e.g., McMullen v. Kutz, 985 A.2d 769 (Pa. 2009)(observing that the parties may contract to provide for the breaching party to pay the attorney fees of the prevailing party in a breach of contract case); Corace v. Balint, 210 A.2d 882, 887 (Pa. 1965); see also J.C. Snavely and Sons, Inc. v. Web M&E, Inc., 594 A.2d 333, 336-7 (Pa. Super.), appeal denied, 602 A.2d 860 (Pa. 1991).

37.    Our courts have found that the fee-shifting provisions contained within written agreements are enforceable and failure to award counsel fee to the prevailing party constitutes an error of law.  See Bayne v. Smith, 965 A.2d 265 (Pa. Super. 2009)(finding that the fee-shifting provision of a lease agreement for the prevailing party is enforceable as it is neutral in its application and is intended as an indemnification for reasonable attorney's fees incurred); see also De Lage Landen Financial Services, Inc. v. Rozentsvit, 939 A.2d 915 (Pa. Super. 2007)(holding that a party that prevails in the underlying breach of contract case is entitled to counsel fees it expended, where the written agreement between the litigants provides for such fees and such fees are to be sought after the judgment is entered).

38.    Here, the Surety Agreement provided as follows:

> Surety hereby irrevocably authorizes and empowers the prothonotary or clerk or any attorney of any court of record to waive the issuance and service of process and to appear for and confess judgment therein against Surety and in favor of Bank or any subsequent holder hereof at any time, whether or not the indebtedness evidenced hereby has matured (by acceleration or otherwise), for the full amount of all Obligations due or that may become due, including but not limited to late charges and interest accrued at the rate provided herein. Such confession shall be with all costs of suit and an attorneys' commission in an amount equal to all attorneys' fees incurred but in no event less than the greater of ten percent (10%) of the full amount confessed hereunder or $1,000. Although Surety agrees that the confession may include the amounts of the attorneys' commission specified in the preceding sentence, Surety reserves the right only to contest the collection by Bank of any unreasonable attorneys' fees. The authority and power to appear for and confess judgment against Surety shall not be exhausted by the initial exercise thereof and the same may be exercised from time to time, as often as Bank shall deem necessary and desirable, and a copy of this Agreement shall be sufficient warrant. Bank may, in its sole discretion, exercise the authority contained herein against one or more Sureties at one and the same time or at different times. Such confession shall be with or without declaration or complaint filed, with release of errors, without stay of execution, and Surety waives the right of inquisition on any real estate levied upon pursuant to the provisions hereof, and does hereby voluntarily condemn same and authorizes the prothonotary to enter upon the writ of execution a voluntary condemnation, and further agrees that the real estate may be sold on a writ of execution with a waiver and release of all relief from all appraisement, stay or exemption laws or rules of court, now in force or hereafter enacted or adopted.

Case ID: 110203388
Control No.: 16050538

Exhibit "A" (emphasis supplied).

39.     Plaintiff's counsel spent well over 200 hours litigating this case, over the course of the past five years, across multiple jurisdictions.

40.     The rate $400.00 per hour is well within the relevant standard for attorneys with comparable years of experience, as determined by the Community Legal Services of Philadelphia Fee Schedule.  See https://clsphila.org/about-cls/attorney-fees, last visited on May 2, 2016.

41.     When calculated at the rate of $400.00, less $16,751.29 that was credited on account of counsel fees part of the original amount of the judgment, Plaintiff is entitled to reasonable counsel fees of $68,528.71.

42.     This amount is eminently reasonable.

43.     Given that Defendants agreed to the terms of the Surety Agreement, Plaintiff is entitled to the recovery of reasonable counsel fees and costs, even if Defendants will attempt to claim that they were unaware of this language.

44.     To date, Defendant(s) have failed and/or refused to comply with the terms of the parties' Settlement Agreement; in that, they have not made the requisite payments and, thereby, caused Plaintiff to incur and expend additional sums, while seeking payments from Defendants.

WHEREFORE, Plaintiff respectfully requests that this Honorable Court enter an order attached hereto.

Date: May 3, 2016                                          Respectfully submitted,
                                                           **KALIKHMAN & RAYZ, LLC**


_____
                                                           Eric Rayz, Esquire
                                                           Attorney(s) for Plaintiff(s)
                                                           1051 County Line Road, Suite "A"
                                                           Huntingdon Valley, PA 19006
                                                           Telephone: (215) 364-5030
                                                           Facsimile: (215) 364-5029
                                                           E-mail: erayz@kalraylaw.com

Case ID: 110203388
Control No.: 16050538

**KALIKHMAN & RAYZ, LLC**                    ATTORNEY(S) FOR PLAINTIFF(S)
Eric Rayz, Esquire
Attorney ID No. 87976
1051 County Line Road, Suite "A"
Huntingdon Valley, PA 19006
Telephone: (215) 364-5030
Facsimile: (215) 364-5029
E-mail: erayz@kalraylaw.com

| | |
|---|---|
| VERTONIX LIMITED<br><br>        Plaintiff(s)<br><br>    v.<br><br>LYUBARSKY, et al.<br><br>        Defendant(s) | COURT OF COMMON PLEAS<br>PHILADELPHIA COUNTY<br><br><br>February Term 2011<br><br>Docket No. 3388 |

<u>**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION**</u>

**1.      Matter Before the Court**

This Memorandum of Law is being filed in support of the Motion to Reassess Damages, filed by

Plaintiff Vertonix Limited.

**2.      Statement of Questions Involved**

Whether the Honorable Court should reassess damages with respect to a judgment
entered in Plaintiff's favor more than five (5) years ago, in light of additional expenses
and fees incurred while seeking payments from the debtors?

Suggested Answer: <u>Yes</u>

**3.      Facts**

On or about January 14, 2009, Defendants YURI LYUBARSKY and OLGA LYUBARSKY

executed a certain Settlement Agreement and Release (hereinafter "Settlement Agreement and

Release") with regard to an ongoing litigation between Plaintiff Vertonix Limited and Defendants, in the

Superior Court of New Jersey, Law Division, Monmouth County, captioned and docketed <u>Vertonix Limited</u>

<u>v. Lyubarsky, et al.</u>, Docket No. MON-L-1951-08, concerning a certain commercial loan obligation owed

by Defendants.  Per the terms of the Settlement Agreement and Release, Defendants were required to

pay Plaintiff the sum of $119,000.00, by way of an initial payment, a series of monthly payments, and a

final ballon payment of $90,000.00.  To facilitate enforcement of the Settlement Agreement and Release,

on January 14, 2009, Defendants executed a Surety Agreement, which is marked and attached hereto as

Case ID: 110203388
Control No.: 16050538

Exhibit "A," the terms of which provide Plaintiff with the right to confess judgment against Defendants in the event that, *inter alia*, they fail to make any timely payment pursuant to the Settlement Agreement and Release.  On January 14, 2009, Defendants also executed a Disclosure and Waiver of Rights Regarding Confession of Judgment, which is marked and attached hereto as Exhibit "B," the terms of which provide Plaintiff with the right to confess judgment against the the Defendants.

Defendants then defaulted on their obligations, as set forth in Exhibit "A," in that they failed to issue the balloon payment as agreed.  Per the terms of the Settlement Agreement and Surety Agreement, on February 24, 2011, a judgment was confessed for the Plaintiff and against Defendants in the sum of $184,264.19.   The damages with respect to the judgment were assessed based on the following calculation:

| | |
|---|---|
| PRINCIPAL AMOUNT DUE | $167,512.90 |
| INTEREST | $ |
| LATE CHARGES | $ |
| SATISFACTION CHARGES | $ |
| ATTORNEYS' FEE (10% OF THE TOTAL AMOUNT DUE) | $16,751.29 |
| COURT COSTS | $ |
| **TOTAL BALANCE DUE:** | $184,264.19 |

Defendants did not challenge the entry of the judgment.  Instead, Defendants engaged in a protracted, blatantly-obstructionist course of conduct, seeking to avoid payment of the judgment.

In this regard, Plaintiff was required to initiate post-judgment discovery in aide of execution, as well as voluminous motion practice.  Plaintiff's efforts included multiple court appearances for Plaintiff's counsel, issuance of multiple subpoena (to various financial institutions), review of hundreds of pages of bank records, as well as investigation of dozens of corporate entities owned by, affiliated with, and/or related to Defendants, *inter alia*, in New York, New Jersey, and Florida.[1]  Moreover, Plaintiff transferred the judgment to the Superior Court of New Jersey, captioned and docketed as Vertonix Limited v. Lyubarsky, et al., Docket No. DJ-146520-11, because Defendants owned luxury real estate in the State of New Jersey.  In addition, Plaintiff transferred the judgment to the Seventeenth Judicial Circuit for Broward

---

[1] During the pendency of this matter, Plaintiff discovered more than twenty (20) corporate entities – in various jurisdictions – that Defendants are affiliated with, as well as approximately a dozen bank accounts that Defendants control and/or use.

Case ID: 110203388
Control No.: 16050538

County, Florida, captioned and docketed as <u>Vertonix Limited v. Lyubarsky, et al.</u>, Case No. 12-3775-CA (2), because Defendants owned luxury real estate, valuable, and automobiles, in the State of Florida.

Defendants engaged in further obstructionist behavior in that they attempted strike the judgment in Florida. Although Defendants did not succeed, their behavior required Plaintiff to retain local counsel, who – together with the undersigned – participated in multiple court appearances (telephonically and in person) and engaged in voluminous motion practice. This required the undersigned counsel to make multiple, extended trips to Florida to appear for the proceedings in that jurisdiction. Thus, due to Defendants' conduct, Plaintiff and Plaintiff's counsel had to engage in various post-judgment execution matters, including:

  a.    Promulgating post-judgment discovery;

  b.    Issuance of subpoenas;

  c.    Review of Defendants' financial records that were turned over by third parties in discovery;

  d.    Review of corporate records from various jurisdictions, regarding corporate entities owned, controlled, and/or affiliated with Defendants;

  e.    Drafting and filing motions to compel Defendants' response to post-judgment discovery;

  f.    Court appearances in various jurisdictions;

  g.    Transfer and recording of the judgment in different states;

  h.    Travelling to New Jersey and Miami, Florida, to interview, secure, and retain local counsel;

  i.    Maintaining follow-up contacts with Plaintiff and Defendants' various counsel; and

  j.    Drafting and filing this motion for reassessment of damages.

Accordingly, after the entry of the judgment in April of 2013, due to Defendants' failure to comply with the terms of the Settlement Agreement, Plaintiff incurred additional (and significant) fees and costs. Indeed, since the entry of the judgment in this matter more than five (5) years ago, Plaintiff has incurred over $30,000.00 in related costs and expenses (e.g., airfare, hotel stays, recording and/or filing costs), while its

Case ID: 110203388
Control No.: 16050538

counsel spent well over 200 hours litigating this case across multiple jurisdictions.

Because of Defendants' failure to comply with their discovery obligations, the Hon. Idee C. Fox entered a number of Orders against them.  For instance, on December 15, 2011, the Hon. Idee C. Fox entered an Order, which is marked and attached hereto as Exhibit "C."  The Order states as follows:

> AND NOW, this 15 day of December, 2011, upon consideration of Plaintiff's Motion to Compel Defendants' responses to Post-judgment Discovery and any response thereto, it is hereby ORDERED and DECREED that:
>
> 1.    The Motion is GRANTED;
>
> 2.    Defendants, YURI LYUBARSKY and OLGA LYUBARSKY, must provide full and complete answers to the interrogatories and full and complete responses to the requests for production of documents without objection or motion for a protective order within thirty (30) days of this ORDER or sanctions shall be imposed.

Exhibit "C."  Furthermore, following a Rule to Show Cause hearing, on April 12, 2012, the Hon. Idee C. Fox entered another Order, marked and attached hereto as Exhibit "D," which states as follows:

> AND NOW, this 12 day of April, 20[12] upon consideration of Plaintiff's Motion for Sanctions and any responses thereto, it is hereby ORDERED and DECREED that:
>
> 1.    The Motion is GRANTED;
>
> 2.    The Court finds that Defendants . . . are in willful disregard of this Court's Order of December 15, 2011, and that Defendants' willful disregard of this Court's Order caused irreparable harm and prejudice to Plaintiff;
>
> 3.    Within thirty (30) days of this Order, Defendants shall pay Kalikhman & Rayz, LLC: (a) $57.68 for the cost of filing the original Motion for Sanctions; and (b) $750.00 in counsel fees for the preparation of this motion and attendance of any related hearing(s);
>
> 4.    Within thirty (30) days of this Order, Defendants must provide full and complete answers to interrogatories and full and complete responses to the requests for production of documents, without objection or motion for a protective order; and
>
> 5.    Defendants are cautioned that their continued and unexplained failure to comply with the Orders of this Court may occasion even harsher sanctions.

Exhibit "D."  Furthermore, on July 20, 2012, the Hon. Idee C. Fox entered another Order, marked and attached hereto as Exhibit "E," which states as follows:

14

Case ID: 110203388
Control No.: 16050538

AND NOW, this 20 day of July, 2012, upon consideration of Plaintiff's Second Motion for Sanctions and no responses thereto, it is hereby **ORDERED** and **DECREED** as follows:

1.    The Court finds that Defendants, Yuri Lyubarsky and Olga Lyubarsky, have willfully disregarded this Court's Orders of December 15, 2011 and April 12, 2012.

2.    Within thirty (30) days of this Order, Defendants shall pay Kalikhman & Rayz, LLC the sum of $557.68 representing filing costs of $57.68 and attorney fees of $500.00.

3.    Within thirty (30) days of this Order Defendants shall provide full and complete answers to the Interrogatories an full and complete responses to Plaintiff's Request for Production of Documents without objection or Motion for Protective Order.

4.    Should Defendants not comply with this Order, commencing August 19, 2012, Defendants are sanctioned $100.00 per day until they fully comply with this Court's Orders.

5.    Defendants are cautioned that their continued and unexplained failure to comply with the Orders of this Court may result in further sanctions.

Exhibit "E."  Defendants have never fully complied with any of the Orders of the Court.  Therefore, per the Order of July 20, 2012, through May 3, 2016, Defendants have incurred sanctions in the total amount of $135,300.00.

As a result of the efforts of Plaintiff's counsel, however, in April of 2013, Plaintiff recovered $175,000.00 from the proceeds of the sale of Defendants' New Jersey property.  This sum was not sufficient to satisfy the entire outstanding balance of the judgment.  In accepting this partial payment, Plaintiff explicitly reserved the right to continue its collection efforts until the full amount was paid.  Ultimately, solely due to Defendants' failure to issue timely payment, Plaintiff incurred or expended additional sums since the entry of the judgment and, given credit for any payments made by Defendants, as of the day of this filing, the amount of the judgment should read as follows:

| | |
|---|---:|
| Principal balance and accrued interest (as of April 30, 2013) | $34,251.44 |
| Additional Interest (as of May 3, 2016) | $6,750.45 |
| Sanctions per the Court's Order of July 20, 2012 | $135,300.00 |
| Legal fees (less $16,751.29 originally confessed) | $68,528.71 |
| Costs | $31,572.11 |
| **Total:** | **$276,402.71** |

**4.    Argument**

The judgment formerly entered against Defendants does not reflect any credit for payment

15

Case ID: 110203388
Control No.: 16050538

received on account of the judgment, the accrued interest, the sanctions imposed by the Court, the above-referenced attorneys' fees, and/or additional costs. Indeed, solely due to Defendants' failure to issue timely payment, Plaintiff incurred or expended additional sums since the entry of the judgment and, given credit for any payments made by Defendants, as of the day of this filing, the amount of the judgment should read as follows:

| | |
|---|---|
| Principal balance and accrued interest (as of April 30, 2013) | $34,251.44 |
| Additional Interest (as of May 3, 2016) | $6,750.45 |
| Sanctions per the Court's Order of July 20, 2012 | $135,300.00 |
| Legal fees (less $16,751.29 originally confessed) | $68,528.71 |
| Costs | $31,572.11 |
| **Total:** | **$276,402.71** |

Accordingly, it is insufficient to satisfy the amount currently due.

It is well-settled law in Pennsylvania that the Court may exercise its equitable powers to control the enforcement of a judgment and to grant any relief until that judgment is satisfied. See Chase Home Mortgage Corporation of the Southwest v. Good, 537 A.2d 22, 24 (Pa. Super. 1988); Stephenson v. Butts, 142 A.2d 319, 321 (Pa. Super. 1958); 20 P.L.E. Judgments § 191. Indeed, the Superior Court has repeatedly cited the right of a judgment creditor to amend the amount of judgment. See Nationsbanc Mortgage Corp. v. Grillo, 827 A.2d 489 (Pa. Super. 2003); Morgan Guarantee Trust Company of New York v. Mowl, 704 A.2d 923 (Pa. Super. 1998); Union National Bank of Pittsburgh v. Ciongoli, 595 A.2d 179 (Pa. Super. 1991). In B.C.Y. v. Bukovich, 390 A.2d 276 (Pa. 1978), the Pennsylvania Supreme Court reiterated its long-standing rule that a court has the inherent power to correct a judgment to conform to the facts of the case.

Under the terms of the parties' Settlement Agreement and prevailing Pennsylvania law, Plaintiff is entitled to inclusion of the figures set forth above in the amount of the judgment against Defendants. See Exhibit "A." For instance, Plaintiff is unequivocally entitled in post-judgment interest at the statutory, yearly rate of six (6) percent.[2] In similar fashion, pursuant to the governing Pennsylvania case law,

---

[2] See 42 Pa.C.S. § 8101 (declaring that "[e]xcept as otherwise provided by another statute, a judgment for a specific sum of money shall bear interest at the lawful rate from the date of the verdict or award, or from the date of the judgment, if the judgment is not entered upon a verdict or award. . . ."); 41 P.S. § 202 (setting the statutory rate of interest in the Commonwealth of Pennsylvania at six percent (6%) per annum); see also Osial v. Cook, 803 A.2d 209, 215 (Pa. Super. 1994)(explaining that "the general rule is that a plaintiff is entitled to interest on a judgment from the date of the verdict, and for purposes of computing interest, judgment and verdict are synonymous. . . ."); Pittsburgh Constr. Co. v. Griffith, 834

Case ID: 110203388
Control No.: 16050538

attorneys' fees and costs of collection are recoverable where the agreement of the parties provides for such recovery.[3]  Here, the Surety Agreement provided as follows:

> Surety hereby irrevocably authorizes and empowers the prothonotary or clerk or any attorney of any court of record to waive the issuance and service of process and to appear for and confess judgment therein against Surety and in favor of Bank or any subsequent holder hereof at any time, whether or not the indebtedness evidenced hereby has matured (by acceleration or otherwise), for the full amount of all Obligations due or that may become due, including but not limited to late charges and interest accrued at the rate provided herein. **Such confession shall be with all costs of suit and an attorneys' commission in an amount equal to all attorneys' fees incurred but in no event less than the greater of ten percent (10%) of the full amount confessed hereunder or $1,000.** Although Surety agrees that the confession may include the amounts of the attorneys' commission specified in the preceding sentence, Surety reserves the right only to contest the collection by Bank of any unreasonable attorneys' fees. The authority and power to appear for and confess judgment against Surety shall not be exhausted by the initial exercise thereof and the same may be exercised from time to time, as often as Bank shall deem necessary and desirable, and a copy of this Agreement shall be sufficient warrant. Bank may, in its sole discretion, exercise the authority contained herein against one or more Sureties at one and the same time or at different times. Such confession shall be with or without declaration or complaint filed, with release of errors, without stay of execution, and Surety waives the right of inquisition on any real estate levied upon pursuant to the provisions hereof, and does hereby voluntarily condemn same and authorizes the prothonotary to enter upon the writ of execution a voluntary condemnation, and further agrees that the real estate may be sold on a writ of execution with a waiver and release of all relief from all appraisement, stay or exemption laws or rules of court, now in force or hereafter enacted or adopted.

Exhibit "A" (emphasis supplied).   Alternatively, the Pennsylvania Rules of Civil Procedure and the Philadelphia Local Rules create an enforcement mechanism for situations involving non-delivery of settlement funds and the courts of our Commonwealth have sanctioned parties for failing to deliver settlement proceeds in a timely fashion.  See Pa.R.Civ.P. 229.1; Phila. R.Civ. P. 229.1; Sanders v. Allegheny Hospital, 833 A.2d 179 (Pa. Super. 2003)(affirming sanctions against hospital, after hospital failed to timely pay settlement funds in a malpractice action); Kramer v. Schaeffer, 751 A.2d 241 (Pa. Super. 2000)(finding that plaintiff is entitled to sanctions for defendant's failure to timely tender settlement funds).

---

A.2d 572, 582 (Pa. Super. 2003)(observing that a plaintiff receives statutory post-judgment interest as a matter of right where the damages are ascertainable by computation).

[3] See, e.g., McMullen v. Kutz, 985 A.2d 769 (Pa. 2009)(observing that the parties may contract to provide for the breaching party to pay the attorney fees of the prevailing party in a breach of contract case); Corace v. Balint, 210 A.2d 882, 887 (Pa. 1965); see also J.C. Snavely and Sons, Inc. v. Web M&E, Inc., 594 A.2d 333, 336-7 (Pa. Super.), appeal denied, 602 A.2d 860 (Pa. 1991).  Our courts have found that the fee-shifting provisions contained within written agreements are enforceable and failure to award counsel fee to the prevailing party constitutes an error of law.  See Bayne v. Smith, 965 A.2d 265 (Pa. Super. 2009)(finding that the fee-shifting provision of a lease agreement for the prevailing party is enforceable as it is neutral in its application and is intended as an indemnification for reasonable attorney's fees incurred); see also De Lage Landen Financial Services, Inc. v. Rozentsvit, 939 A.2d 915 (Pa. Super. 2007)(holding that a party that prevails in the underlying breach of contract case is entitled to counsel fees it expended, where the written agreement between the litigants provides for such fees and such fees are to be sought after the judgment is entered).

Case ID: 110203388
Control No.: 16050538

Plaintiff's counsel spent well over 200 hours litigating this case, over the course of the past five years, across multiple jurisdictions. The rate $400.00 per hour is well within the relevant standard for attorneys with comparable years of experience, as determined by the Community Legal Services of Philadelphia Fee Schedule. See https://clsphila.org/about-cls/attorney-fees, last visited on May 2, 2016. When calculated at $400.00 per hour, Plaintiff is entitled to reasonable counsel fees of $68,528.71 (on account of $16,751.29 that was credited for counsel fees in the original amount of the judgment). This amount is eminently reasonable and Plaintiff is entitled to its recovery, even if Defendants will attempt to claim that they were unaware of this language in the Surety Agreement.[4]

To date, Defendant(s) have failed and/or refused to comply with the terms of the parties' Settlement Agreement; in that, they have not made the requisite payments and, thereby, caused Plaintiff to incur and expend additional sums, while seeking payments from Defendants. In ruling on this Motion, the Court is asked to consider that Plaintiff is being significantly harmed by Defendants' vexatious and dilatory conduct. Indeed, Plaintiff's right to funds at issue is indisputable. Although Plaintiff and Plaintiff's counsel have made diligent attempts to resolve this matter without burdening the Court, such efforts have been fruitless and the Court's intervention is the only available remedy remaining.

**5.    Relief Requested**

In light of the foregoing, Plaintiff respectfully petitions that the Honorable Court grant relief as requested in the attached order.


**(SIGNATURE ON THE NEXT PAGE)**

---

[4] See In re Olson Estate, 291 A.2d 95, 98 (Pa. 1972)(observing that "in the absence of proof of fraud, failure to read the contract is an unavailing excuse or defense and cannot justify an avoidance, modification or nullification of the contract or any provision thereof. . . ."); Simeone v. Simeone, 581 A.2d 162, 165 (Pa. 1990)(observing that a party is normally bound by an agreement regardless of whether the contractual terms were read and understood); Mormello v. Mormello, 682 A.2d 824, 828 (Pa. Super. 1996)(observing that "[c]ontracting parties are normally bound by their agreements, without regard to whether the terms thereof were read and fully understood"); Germantown Sav. Bank v. Talacki, 657 A.2d 1285, 1289 (Pa. Super. 1995)(noting that "the failure to read a contract before signing . . . is considered supine negligence").

18

Case ID: 110203388
Control No.: 16050538

Date: <u>May 3, 2016</u>

Respectfully submitted,
**KALIKHMAN & RAYZ, LLC**

_____

Eric Rayz, Esquire
Attorney(s) for Plaintiff(s)
1051 County Line Road, Suite "A"
Huntingdon Valley, PA 19006
Telephone: (215) 364-5030
Facsimile: (215) 364-5029
E-mail: erayz@kalraylaw.com

19

Case ID: 110203388
Control No.: 16050538

**KALIKHMAN & RAYZ, LLC**                    ATTORNEY(S) FOR PLAINTIFF(S)
Eric Rayz, Esquire
Attorney ID No. 87976
1051 County Line Road, Suite "A"
Huntingdon Valley, PA 19006
Telephone: (215) 364-5030
Facsimile: (215) 364-5029
E-mail: erayz@kalraylaw.com

| | |
|---|---|
| VERTONIX LIMITED | COURT OF COMMON PLEAS PHILADELPHIA COUNTY |
| Plaintiff(s) | |
| v. | February Term 2011 |
| LYUBARSKY, et al. | Docket No. 3388 |
| Defendant(s) | |

### CERTIFICATE OF SERVICE

    I, Eric Rayz, Esquire, hereby certify that a true and correct copy of the foregoing Plaintiff's Motion

to Reassess Damages were served on the following on or about the date indicated below:

Yuri Lyubarsky                           Steven Maniloff, Esquire
Olga Lyubarsky                           Montgomery, McCracken, Walker & Rhoads, LLP
3140 NE 40th Ct.                         123 South Broad Street, 28th Floor
Ft. Lauderdale, FL 33308                 Philadelphia, PA 19109

Date: <u>May 3, 2016</u>                 Respectfully submitted,
                                         **KALIKHMAN & RAYZ, LLC**


                                         _____
                                         Eric Rayz, Esquire
                                         Attorney(s) for Plaintiff(s)
                                         1051 County Line Road, Suite "A"
                                         Huntingdon Valley, PA 19006
                                         Telephone: (215) 364-5030
                                         Facsimile: (215) 364-5029
                                         E-mail: erayz@kalraylaw.com

Case ID: 110203388
Control No.: 16050538

**FILED**
03 MAY 2016 01:59 pm
Civil Administration
P. MARTIN

# EXHIBIT "A"

Case ID: 110203388
Control No.: 16050538

Initials $YL$ and $O\alpha$

## SURETY AGREEMENT

INTENDING TO BE LEGALLY BOUND, the undersigned, YURI LYUBARSKY and OLGA LYUBARSKY (jointly and severally "Surety") agree as follows:

1.    Unconditional Surety.

For full value received, Surety hereby unconditionally guarantees to VERTONIX LIMITED (hereinafter "Bank"), and becomes surety to Bank for, the due and punctual payment and performance of all Obligations (as defined below) of Surety to Bank, now existing or hereafter at any time or times incurred, and all expenses incurred by Bank in collecting same as set forth below. The term "Obligations" means any and all indebtedness, obligations, and liabilities of Surety to Bank, now existing or hereafter arising, direct or indirect, acquired outright, conditionally, or as collateral security from another, absolute or contingent, joint or several, secured or unsecured, matured or not matured, monetary or non-monetary, arising out of contract or tort, liquidated or unliquidated, arising by operation of law or otherwise, and all extensions, renewals, refundings, replacements, advances, and modifications of any of the foregoing, including without limitation all interest, expenses, costs (including collection costs) and fees (including attorney's fees and prepayment fees) incurred, arising or accruing (whether prior or subsequent to the filing of any bankruptcy petition by or against Surety) under or in connection with any of the foregoing. If any Obligation is not paid or performed by Surety punctually when due, including, without limitation, any Obligation due by acceleration of the maturity thereof, or if Surety fails to abide by all terms of this Agreement and all terms of any other documents executed by Surety in connection with any Obligation, Surety will, without demand or notice by Bank, immediately pay or perform all Obligations or cause the same to be paid or performed; and, in such event Surety shall immediately pay to Bank upon demand all costs and expenses, including without limitation all title search, title insurance, and appraisal costs, if any, and all attorney's fees and other costs incurred by Bank as a result of any proceeding, whether in bankruptcy or otherwise, involving any Obligor (defined herein to include Surety and any other person or entity liable for the payment of all or part of the Obligations as well as any other person or entity granting Bank a security interest in any collateral securing any of the Obligations), incurred by Bank to collect all or any portion of the Obligations from any Obligor. All such costs and expenses incurred by the Bank will accrue interest at the highest default rate in any instrument evidencing the Obligations until payment is actually received by the Bank. Interest shall continue to accrue on the Obligations after the entry of any judgment hereunder at the highest rate set forth in any document or instrument evidencing any Obligation.

2.    General Terms and Conditions.

a.    Surety hereby waives (i) notice of acceptance of this Agreement and of any action by Bank in reliance thereon; (ii) presentment, demand of payment, notice of dishonor or nonpayment, protest and notice of protest with respect to the Obligations, and the giving of any notice of default or other notice to, or making any demand on, any Obligor; (iii) notice of any creation, extension, or accrual of any of the Obligations or any election by Bank to sell any of the collateral mortgaged, assigned or pledged as security for any of the Obligations (hereinafter, collectively, the "Collateral") at a public or private sale (Surety agrees that, to the extent notice of such sale shall be required by law, five (5) days notice to Surety of the time and place any public sale or private sale is to be made shall constitute reasonable notification); (iv) any claim, right or remedy which Surety may now have or hereafter acquire against Surety or any other Obligor that arises hereunder and/or from the performance by Surety hereunder including, without limitation, (1) any claim, remedy, or right to seek subrogation, contribution, indemnification or any other form of reimbursement from any other Obligor or (2) any claim, remedy, or right of subrogation, reimbursement, exoneration, indemnification, or participation in any claim, right or remedy of Bank against Surety or any security which Bank now has or hereafter acquires,

Case ID: 110203388
Control No.: 16050538

Initials _YL_ and _OoL_

whether or not such claim, right or remedy arises in equity, under contract, by statute, under common law or otherwise; (v) notice of any other nature whatsoever; (vi) any requirement that Bank take any action whatsoever against any Obligor or Collateral or file any claim in the event of the bankruptcy of any Obligor; (vii) the failure by Bank to protect, preserve, or resort to any Collateral or to perfect any security interest in or any lien upon the Collateral; (viii) any act or omission of the Bank which materially increases the scope of the Surety's risk, including negligent administration of any loan to Surety; and (ix) all defenses based on suretyship or impairment of collateral and any defenses any Obligor may assert on the Obligations, including but not limited to failure of consideration, breach of warranty, fraud, payment, statute of frauds, bankruptcy, lack of legal capacity, lender liability, accord and satisfaction, and usury, except the defense of payment of the Obligations in full.  Surety further agrees that the guaranty and surety contained herein will not be discharged except by complete performance of all Obligations of the Surety and the liabilities of Surety hereunder.

b.      Surety hereby consents that from time to time, and without further notice to or consent of Surety, Bank may take any or all of the following actions without affecting or impairing the liability of Surety hereunder: (i) extend, renew, increase, modify, compromise, settle, or release the Obligations or any part thereof (including without limitation any increase or decrease in the interest rate); (ii) release or compromise any liability of any Obligor with respect to the Obligations; (iii) release, waive, or subordinate any security interest or lien in any Collateral or exchange, surrender or otherwise deal with the Collateral as Bank may determine; or (iv) exercise or refrain from exercising any right or remedy of Bank. The guaranty and surety contained herein is absolute and unconditional, primary, direct and immediate and shall be valid and binding upon Surety regardless of any invalidity, irregularity, defect or unenforceability of the Obligations or any note, instrument, or agreement evidencing same or relating thereto, or any other circumstance that might otherwise constitute a defense available to, or discharge of, any other Obligor, including but not limited to failure of consideration, breach of warranty, fraud, payment, statute of frauds, bankruptcy, infancy, statute of limitations, lender liability, accord and satisfaction, and usury. Surety hereby waives any right to require Bank to proceed initially against any other Obligor or any of the Collateral upon any default in the payment or performance of the Obligations.  The obligations of Surety hereunder shall not be subject to any counterclaim, set-off, deduction or defense based upon any claim Surety may have against any Obligor or Bank, except payment or performance of the Obligations.  No failure or delay on the part of Bank in exercising any right, power, or privilege hereunder shall operate as a waiver thereof, nor shall any single or partial exercise of any right, power, or privilege hereunder preclude any other or further exercise thereof or the exercise of any other right, power, or privilege.   The rights and remedies of Bank hereunder are cumulative and concurrent and not exclusive of any other rights or remedies Bank may have.

c.      If any claim is ever made upon Bank for repayment of any amounts, or the recovery of any secured property, received by Bank from any Obligor in payment of any of the Obligations, and Bank repays all or part of said amounts or returns all or part of said secured property by reason of (i) any judgment, decree or order of any court or administrative body having jurisdiction over Bank or any of its property or (ii) any settlement or compromise of any such claim accomplished by Bank with such claimant then and in such event Surety agrees that any such judgment, decree, settlement or compromise shall be binding upon Surety, notwithstanding any revocation hereof or the cancellation of any note or other instrument evidencing any Obligation, and Surety shall be and shall remain liable to Bank hereunder for the amounts so repaid or the secured property recovered

Case ID: 110203388
Control No.: 16050538

Initials __YL__ and __OL__

to the same extent as if such amounts or property had never originally been received by Bank. Surety agrees that Bank shall have no duty or affirmative obligation to defend against such claim and may object to or pay such claim in its sole discretion without impairing or releasing the obligations of Surety hereunder. This provision shall survive the termination of this Agreement.

d.    If less than all persons who are intended to sign this Agreement, or any other document evidencing any Obligation, do so, the same shall nevertheless be binding upon those who do sign, and if only one person shall sign any plural references shall be read as a singular.  Any notice to an Obligor by Bank shall not imply that such notice or any further or similar notice was or is required.

3.    Set-off.

As additional collateral security for the Obligations, and not in lieu of any other rights of Bank hereunder or under any other document, Surety hereby grants to Bank a security interest in, a lien upon, and a right of set-off against all funds, balances or other property of any kind of Surety, or in which Surety has an interest, now or hereafter in the possession, custody or control of Bank.  Bank may upon maturity (whether by demand, acceleration, stated maturity, or otherwise) of the Obligations appropriate and apply toward the payment of the Obligations in such order as Bank determines the balance of any account of Surety with, or each claim of Surety against, Bank.

4.    Venue and Exclusive Jurisdiction.

**Surety hereby consents to the exclusive jurisdiction of the Court of Common Pleas of Philadelphia, Pennsylvania or the United States District Court for the Eastern District of Pennsylvania in any legal proceeding involving, directly or indirectly, any matter arising out of or related to this Agreement, or any relationship evidenced hereby, including the collection and enforcement hereof.  Surety expressly submits and consents in advance to such jurisdiction in any action or suit commenced in any such Court and waives any objection which Surety may have based upon lack of personal jurisdiction or improper venue and consents to the granting of such legal or equitable relief as is deemed appropriate by such court.  Surety waives personal service of the summons, complaint and any other process issued in any such action or suit and agrees that service of such summons, complaint, and any other process may be made by registered or certified mail, postage prepaid, addressed to the Surety at the address set forth below and that service so made shall be deemed completed upon the providing of such notice.  Nothing in this Agreement shall be deemed or operate to affect the rights of the Bank to serve legal process or to bring any action permitted by law against any Obligor or involving any Collateral in the appropriate court of any other appropriate jurisdiction or forum.**

5.    Waiver of Jury Trial and Certain Damages.

**Surety hereby waives trial by jury in any legal proceeding involving, directly or indirectly, any matter (whether sounding in tort, contract or otherwise) in any way arising out of or related to this Agreement.  The Surety represents and warrants that no representative or agent of the Bank has represented, expressly or otherwise, that the Bank will not, in the event of litigation, seek to enforce this jury trial waiver.  Surety further waives any right it may have to claim or recover, in any such suit, action or proceeding, any special, exemplary, punitive, or consequential damages or any damages other than, or in addition to, actual damages.  This provision is a material inducement for Bank to enter into, rely upon, or accept this Agreement.**

6.    Miscellaneous.

No consent or waiver under this Agreement shall be effective unless in writing. This Agreement and all documents executed hereunder shall be binding upon Surety and its executors, personal representatives, successors and assigns and shall inure to the benefit of Bank and its successors and

Case ID: 110203388
Control No.: 16050538

Initials __Y L__ and __O L__

assigns. This Agreement has been delivered to and accepted by Bank in, and shall be governed by the internal laws, and not the law of conflicts of, the Commonwealth of Pennsylvania. If any provision hereof is found by a court of competent jurisdiction to be prohibited or unenforceable, it shall be ineffective only to the extent of such prohibition or unenforceability, and such prohibition or unenforceability shall not invalidate the balance of such provision to the extent it is not prohibited or unenforceable, nor invalidate the other provisions hereof, all of which shall be liberally construed in favor of Bank in order to effect the provisions hereof. The execution and delivery of this Agreement is in addition to, and not in derogation of, any other Surety Agreement of any Obligor heretofore executed and delivered to Bank unless such prior Surety Agreement has been terminated in writing pursuant to the terms thereof. This Agreement and any prior Surety Agreement of Surety to Bank shall be construed as one agreement, and in the event of any inconsistency, the terms of this Agreement shall control the terms of any prior Surety Agreement. This Agreement may be amended or discharged only by a writing executed by Bank and Surety. The undersigned, if more than one, are jointly and severally liable. For purposes of this Agreement, the singular shall be deemed to include the plural and the neuter shall be deemed to include the masculine and feminine, as the context may require.

       7.      Confession of Judgment.

**Surety hereby irrevocably authorizes and empowers the prothonotary or clerk or any attorney of any court of record to waive the issuance and service of process and to appear for and confess judgment therein against Surety and in favor of Bank or any subsequent holder hereof at any time, whether or not the indebtedness evidenced hereby has matured (by acceleration or otherwise), for the full amount of all Obligations due or that may become due, including but not limited to late charges and interest accrued at the rate provided herein. Such confession shall be with all costs of suit and an attorneys' commission in an amount equal to all attorneys' fees incurred but in no event less than the greater of ten percent (10%) of the full amount confessed hereunder or $1,000. Although Surety agrees that the confession may include the amounts of the attorneys' commission specified in the preceding sentence, Surety reserves the right only to contest the collection by Bank of any unreasonable attorneys' fees. The authority and power to appear for and confess judgment against Surety shall not be exhausted by the initial exercise thereof and the same may be exercised from time to time, as often as Bank shall deem necessary and desirable, and a copy of this Agreement shall be sufficient warrant. Bank may, in its sole discretion, exercise the authority contained herein against one or more Sureties at one and the same time or at different times. Such confession shall be with or without declaration or complaint filed, with release of errors, without stay of execution, and Surety waives the right of inquisition on any real estate levied upon pursuant to the provisions hereof, and does hereby voluntarily condemn same and authorizes the prothonotary to enter upon the writ of execution a voluntary condemnation, and further agrees that the real estate may be sold on a writ of execution with a waiver and release of all relief from all appraisement, stay or exemption laws or rules of court, now in force or hereafter enacted or adopted.**

**In granting the above warrant of attorney to confess judgment, the Surety hereby knowingly, intentionally, and voluntarily waives any and all constitutional rights the Surety has or may have either upon the confession of judgment against the Surety or (after the maturity of the indebtedness evidenced hereby) upon execution process thereon, by garnishment or otherwise, against property of the Surety to: (i) prior notice; (ii) a prior judicial proceeding; (iii) prior review by an authorized public official; and (iv) the prior opportunity to raise a defense, setoff, or counterclaim. The Surety expressly waives such rights as an explicit and material part of the consideration hereof.**

      **IN WITNESS WHEREOF**, the parties hereunto set their hand and seal:

      **(SIGNATURE ON THE NEXT PAGE)**

Case ID: 110203388

Control No.: 16050538

Initials _YL_ and _OL_

---
**On behalf of Olga Lyubarsky**

_Olga Lyubarsky_
Olga Lyubarsky

---
_01. 14. 09_
Date

---
**On behalf of Yuri Lyubarsky**

_Yuri Lyubarsky_
Yuri Lyubarsky

---
_01. 14. 09_
Date

- SUBSCRIBED,   SWORN   TO   AND   ACKNOWLEDGED   before   me   by
Yuri Lyubarsky   and   Olga Lyubarsky   on   the
14 day of January , 2009 .

Notary Public
State of ___Florida___

My commission expires: _____

(Notary Seal)
STEPHANIE L SMITH
NOTARY
My Comm. Expires
February 11, 2012
DD757591
PUBLIC
STATE OF FLORIDA

Case ID: 110203388
Control No.: 16050538

# EXHIBIT "B"

Case ID: 110203388
Control No.: 16050538

Initials _YL_ and _Od_

## DISCLOSURE AND WAIVER OF RIGHTS REGARDING CONFESSION OF JUDGMENT

**Intending to be legally bound hereby**, and for value received, and to induce VERTONIX LIMITED (hereinafter "Bank"), as assignee for Reǵionālā Investīciju Banka (Regional Investment Bank), to enter a certain Settlement Agreement, the undersigned, whether one or more persons, partnerships, corporations, or other entities (jointly and severally, the "Obligor"), agrees as follows:

1.      On the date hereof, or previously dated, the Obligor is signing and delivering to the Bank a Settlement Agreement and a Surety Agreement (hereinafter "Settlement Documents")(as the same may be renewed, modified, amended, extended, restated or replaced) whether one or more, whereby the Obligor is obligated to repay monies (hereinafter "Obligations") to the Bank or by which the undersigned has granted security to the Bank to repay the Obligations.  The Obligor has been advised by the Bank (and by the Obligor's legal counsel, if applicable) that these Settlement Documents contain a clause that provides that the Bank may confess judgment against the Obligor.  The Obligor has read Settlement Documents and clearly and specifically understands that by signing these Settlement Documents which contain such confession of judgment clause:

      a.      The Obligor is authorizing the Bank to enter a judgment against the Obligor and in favor of the Bank, which will give the Bank a lien upon any real estate which the Obligor may own wherever the judgment is entered.

      b.      If the Settlement Documents include a Security Agreement, the Obligor is also authorizing the Bank, upon the occurrence of an event of default under the Settlement Documents, to enter a judgment against the Obligor and in favor of the Bank, which will give the Bank in an action for replevin possession of secured personal property.

      c.      The Obligor is waiving all constitutional rights that the Obligor may have to any prior notice, to prior review by an authorized official, or to an opportunity for a hearing before the entry of such judgment by or for the benefit of the Bank on the records of the Court.

      d.      The Obligor understands and agrees that the Bank may enter such judgment and understands that the Obligor will be unable to contest the validity of the judgment, should the Bank enter it, unless the Obligor successfully challenges entry of the judgment on procedural grounds through a petition to open or strike the judgment, which will require the Obligor to retain counsel at the Obligor's expense.

      e.      The Obligor is waiving all constitutional rights that the Obligor may have to prior notice, to prior review by an authorized official, or to an opportunity for a prior hearing before the Bank may request and use the power of the state government to deprive the Obligor of his, her, or their property pursuant to the judgment by seizing or having the Sheriff or other official seize or garnish the Obligor's bank accounts, inventory, equipment, furnishings, or any other personal property that the Obligor may own, to satisfy, in whole or in part, the Obligations, or by seizing or having the Sheriff or other official eject the Obligor from possession of his, her, or their real property.

      f.      The Obligor understands and agrees that the Obligor may be immediately deprived of the use of any property that is thus seized or affected pursuant to such judgment without prior notice, a prior hearing, or prior review by an authorized official, and the procedural rules of the court system do not necessarily guarantee that the Obligor will receive a prompt hearing after the Obligor's property is seized or otherwise affected.

Page 1 of 2

Case ID: 110203388

Control No.: 16050538

Initials _YL_ and _OL_

2.      The Obligor knows and understands that it is the confession of judgment clause in the Settlement Documents, which gives the Bank the rights described in Subparagraphs (a) through (f) of Paragraph 1 above.

3.      Fully and completely understanding the rights which are being given up if the Obligor signs the Settlement Documents containing the confession of judgment, the Obligor nevertheless freely, knowingly and voluntarily waives said rights and chooses to sign the Settlement Documents.

4.      The Obligor acknowledges that he/she is a natural person and the Obligations at issue do not arise in connection with a consumer credit transaction.

5.      The Obligor acknowledges that the Obligations at issue relate to commercial transactions.

6.      The Obligor acknowledges that the proceeds of the Obligations are to be or were used for business purposes.

7.      If the Obligor is an individual, the Obligor certifies that his/her annual income exceeds $10,000.00.

The Obligor has read this Disclosure and Waiver prior to signing the Settlement Documents and fully understands the contents hereof and thereof.

**On behalf of the Obligor**
**Olga Lyubarsky**


_____
Olga Lyubarsky


_01. 14. 09_____
Date


SUBSCRIBED, SWORN  TO  AND  ACKNOWLEDGED  before  me  by
_Olga Lyubarsky_____ on the __14__ day of _January_____, 200_9_.

STEPHANIE L SMITH
NOTARY
My Comm. Expires
February 11, 2012
DD757591
PUBLIC
STATE OF FLORIDA

_____
Notary Public,
State of ___Florida_____

My commission expires: _____

Page 2 of 2

Case ID: 110203388

Control No.: 16050538

Initials _Y L_ and _O L_

## DISCLOSURE AND WAIVER OF RIGHTS REGARDING CONFESSION OF JUDGMENT

**Intending to be legally bound hereby**, and for value received, and to induce VERTONIX LIMITED (hereinafter "Bank"), as assignee for Reģionālā Investīciju Banka (Regional Investment Bank), to enter a certain Settlement Agreement, the undersigned, whether one or more persons, partnerships, corporations, or other entities (jointly and severally, the "Obligor"), agrees as follows:

1.       On the date hereof, or previously dated, the Obligor is signing and delivering to the Bank a Settlement Agreement and a Surety Agreement (hereinafter "Settlement Documents")(as the same may be renewed, modified, amended, extended, restated or replaced) whether one or more, whereby the Obligor is obligated to repay monies (hereinafter "Obligations") to the Bank or by which the undersigned has granted security to the Bank to repay the Obligations.  The Obligor has been advised by the Bank (and by the Obligor's legal counsel, if applicable) that these Settlement Documents contain a clause that provides that the Bank may confess judgment against the Obligor.  The Obligor has read Settlement Documents and clearly and specifically understands that by signing these Settlement Documents which contain such confession of judgment clause:

   a.       The Obligor is authorizing the Bank to enter a judgment against the Obligor and in favor of the Bank, which will give the Bank a lien upon any real estate which the Obligor may own wherever the judgment is entered.

   b.       If the Settlement Documents include a Security Agreement, the Obligor is also authorizing the Bank, upon the occurrence of an event of default under the Settlement Documents, to enter a judgment against the Obligor and in favor of the Bank, which will give the Bank in an action for replevin possession of secured personal property.

   c.       The Obligor is waiving all constitutional rights that the Obligor may have to any prior notice, to prior review by an authorized official, or to an opportunity for a hearing before the entry of such judgment by or for the benefit of the Bank on the records of the Court.

   d.       The Obligor understands and agrees that the Bank may enter such judgment and understands that the Obligor will be unable to contest the validity of the judgment, should the Bank enter it, unless the Obligor successfully challenges entry of the judgment on procedural grounds through a petition to open or strike the judgment, which will require the Obligor to retain counsel at the Obligor's expense.

   e.       The Obligor is waiving all constitutional rights that the Obligor may have to prior notice, to prior review by an authorized official, or to an opportunity for a prior hearing before the Bank may request and use the power of the state government to deprive the Obligor of his, her, or their property pursuant to the judgment by seizing or having the Sheriff or other official seize or garnish the Obligor's bank accounts, inventory, equipment, furnishings, or any other personal property that the Obligor may own, to satisfy, in whole or in part, the Obligations, or by seizing or having the Sheriff or other official eject the Obligor from possession of his, her, or their real property.

   f.       The Obligor understands and agrees that the Obligor may be immediately deprived of the use of any property that is thus seized or affected pursuant to such judgment without prior notice, a prior hearing, or prior review by an authorized official, and the procedural rules of the court system do not necessarily guarantee that the Obligor will receive a prompt hearing after the Obligor's property is seized or otherwise affected.

Page 1 of 2

Case ID: 110203388
Control No.: 16050538

Initials _YL_ and _OL_

2.    The Obligor knows and understands that it is the confession of judgment clause in the Settlement Documents, which gives the Bank the rights described in Subparagraphs (a) through (f) of Paragraph 1 above.

3.    Fully and completely understanding the rights which are being given up if the Obligor signs the Settlement Documents containing the confession of judgment, the Obligor nevertheless freely, knowingly and voluntarily waives said rights and chooses to sign the Settlement Documents.

4.    The Obligor acknowledges that he/she is a natural person and the Obligations at issue do not arise in connection with a consumer credit transaction.

5.    The Obligor acknowledges that the Obligations at issue relate to commercial transactions.

6.    The Obligor acknowledges that the proceeds of the Obligations are to be or were used for business purposes.

7.    If the Obligor is an individual, the Obligor certifies that his/her annual income exceeds $10,000.00.

The Obligor has read this Disclosure and Waiver prior to signing the Settlement Documents and fully understands the contents hereof and thereof.

**On behalf of the Obligor**
**Yuri Lyubarsky**

_____
Yuri Lyubarsky

_01. 14. 09_
_____
Date

SUBSCRIBED, SWORN TO AND ACKNOWLEDGED before me by
_Yuri Lyubarsky_ on the _14_ day of _January_ , 200_9_ .

_____
Notary Public
State of _Florida_

My commission expires: _____

STEPHANIE L SMITH
NOTARY
My Comm. Expires
February 11, 2012
DD757591
PUBLIC
STATE OF FLORIDA

Page 2 of 2

Case ID: 110203388
Control No.: 16050538

# EXHIBIT "C"

Case ID: 110203388
Control No.: 16050538

**FILED**

22 NOV 2011 03:12 pm

**Civil Administration**

L. OWENS

RECEIVED

DEC 1 6 2011

CIVIL ADMINISTRATION

| | |
|---|---|
| VERTONIX LIMITED<br><br>            Plaintiff(s)<br><br>         v.<br><br>LYUBARSKY, et al.<br><br>            Defendant(s) | COURT OF COMMON PLEAS<br>PHILADELPHIA COUNTY<br><br>February Term 2011<br><br>Docket No. 3388 |

**ORDER**

AND NOW, this _15_ day of _December_, 20_11_ upon

consideration of Plaintiff's Motion to Compel Defendants' Responses to Post-judgment Discovery and any

response thereto, it is hereby **ORDERED** and **DECREED** that:

1.    The Motion is GRANTED;

2.    Defendants, YURI LYUBARSKY and OLGA LYUBARSKY, must provide full and

complete answers to the interrogatories and full and complete responses to the requests for production of

documents, without objection or motion for a protective order, within thirty (30) days of

this Order or sanctions shall be imposed.

DOCKETED
CIVIL ADMINISTRATION

DEC 1 9 2011

M. GRAHAM

Vertonix Limited Vs Lyu-ORDER



11020338800009

BY THE COURT:

_____ J.

DOCKETED
CIVIL ADMINISTRATION

DEC 1 9 2011

M. GRAHAM

Case ID: 110203388

Case ID: 110203388

Control No.: 11113229

Control No: 16050538

COPIES SENT PURSUANT TO Pa.R.C.P. 236(b)  G. BAXTER  12/19/2011

# EXHIBIT "D"

Case ID: 110203388
Control No.: 16050538

FILED
10 FEB 2012 12:24 pm
Civil Administration
K. PERMSAP

| | | |
|---|---|---|
| VERTONIX LIMITED | COURT OF COMMON PLEAS PHILADELPHIA COUNTY | **DOCKETED** |
| Plaintiff(s) | | |
| v. | February Term 2011 | APR 1 3 2012 |
| LYUBARSKY, et al. | Docket No. 3388 | S. MacGREGOR CIVIL ADMINISTRATION |
| Defendant(s) | | |

ORDER

AND NOW, this _12_ day of _April_____, 20__, upon consideration of Plaintiff's Motion for Sanctions and any response thereto, it is hereby **ORDERED** and **DECREED** that:

1.    The Motion is GRANTED;

2.    The Court finds that Defendants, YURI LYUBARSKY and OLGA LYUBARSKY, are in willful disregard of this Court's Order of December 15, 2011, and that Defendants' willful disregard of this Court's Order caused irreparable harm and prejudice to Plaintiff;

3.    Within ten (30) days of this Order, Defendants shall pay Kalikhman & Rayz, LLC: (a) $57.68 for the cost of filing the original Motion for Sanctions; and (b) $750.00 in counsel fees for the preparation of this motion and attendance of any related hearing(s);

4.    Within ten (30) days of this Order, Defendants must provide full and complete answers to the interrogatories and full and complete responses to the requests for production of documents, without objection or motion for a protective order; and

5.    Defendants are cautioned that their continued and unexplained failure to comply with the Orders of this Court, may occasion even harsher sanctions.

BY THE COURT:

Vertonix Limited Vs Lyu-ORDER

_____ J.



11020338800018

# EXHIBIT "E"

Case ID: 110203388
Control No.: 16050538

**IN THE COURT OF COMMON PLEAS PHILADELPHIA COUNTY**
**FIRST JUDICIAL DISTRICT OF PENNSYLVANIA**
**CIVIL TRIAL DIVISION**

---

VERTONIX LIMITED

    v.

YURI and OLGA LYUBARSKY, et al

:
:    **FEBRUARY TERM, 2011**
:
:    **NO.   3388**
:
:    **CONTROL NO.    12052539**
:

## ORDER

**AND NOW,** this  *20*  day of July, 2012, upon consideration of Plaintiff's Second

Motion for Sanctions and no response thereto, it is hereby **ORDERED** and **DECREED** as follows:

1. The Court finds that Defendants, Yuri Lyubarsky and Olga Lyubarsky, have willfully

   disregarded this Court's Orders of December 15, 2011 and April 12, 2012.

2. Within thirty (30) days of the entry of this Order, Defendants shall pay Kalikhman & Rayz,

   LLC the sum of $557.68 representing filing costs of $57.68 and attorney fees of $500.00.

3. Within thirty (30) days of this Order Defendant shall provide full and complete answers to

   the Interrogatories and full and complete responses to Plaintiff's Request for Production of

   Documents without objection or Motion for Protective Order.

4. Should Defendants not comply with this Order, commencing August 19, 2012, Defendants

   are sanctioned $100.00 per day until they comply fully with this Court's Orders.

5. Defendants are cautioned that their continued and unexplained failure to comply with

   Orders of the Court may result in further sanctions.

**BY THE COURT:**

**IDEE C. FOX, J.**

DOCKETED

JUN 29 2012

T. DUGAN

Vertonix Limited Vs Lyu-ORDER



Case ID: 110203388
Control No.: 16050538
11020338800027

**FILED**
01 JUL 2016 05:36 pm
Civil Administration
K. EDWARDS

## COURT OF COMMON PLEAS OF PHILADELPHIA COUNTY
## FIRST JUDICIAL DISTRICT OF PENNSYLVANIA
## CIVIL TRIAL DIVISION

| | | |
|---|---|---|
| **VERTONIX LTD** | : | |
| **Plaintiff** | : | |
| v. | : | **FEBRUARY TERM, 2011** |
| | : | |
| **YURI and OLGA LYUBARSKY, h/w** | : | No.  03388 |
| | : | |
| **Defendants** | : | |
| | : | |
| v. | : | |
| | : | |
| **THE GUARDIAN LIFE INSURANCE** | : | |
| **COMPANY OF AMERICA** | : | |
| | : | |
| **Garnishee** | : | |
| | : | |

## ORDER

AND NOW, this            day of                          , 2016,  upon

consideration of Plaintiff's Motion to Reassess Damages and Defendants' response thereto, it is

hereby **ORDERED** and **DECREED** that the motion is denied.


BY THE COURT:


_____

                                                        J.

Case ID: 110203388
Control No.: 16050538

**KATS, JAMISON & ASSOCIATES**
**By:    Marina Kats, Esquire**
       **I.D. No. 53020**
       **1 Bustleton Pike**
       **Feasterville, PA 19053**
       **215-396-9001**
       **marina@mkats.com**                    **Attorney for Defendants**

| | |
|---|---|
| **VERTONIX LTD** | :  **COURT OF COMMON PLEAS** |
|        **Plaintiff** | :  **PHILADELPHIA COUNTY** |
| **v.** | : |
| | :  **CIVIL ACTION** |
| **YURI and OLGA LYUBARSKY, h/w** | : |
| | :  **FEBRUARY TERM 2011** |
|        **Defendants** | |
| | No.  03388 |
| **v.** | |
| **THE GUARDIAN LIFE INSURANCE** | |
| **COMPANY OF AMERICA** | |
|        **Garnishee** | |

<u>**DEFENDANTS' RESPONSE TO PLAINTIFF'S MOTION TO REASSES**</u>

Defendants, Yuri and Olga Lyubarsky, husband and wife, by and through their undersigned

counsel, Marina Kats, Esq. of the firm Kats, Jamison & Associates file with this Honorable Court

their response to Plaintiff's Motion to Reassess Damages and in support aver as follows:

1-44. Inclusive: Plaintiff specifically says without any support whatsoever that defendants

have never *fully* complied in paragraph 24 of its motion (emphasis supplied). The burden

is on the movant to demonstrate justification for the imposition of sanctions of over

$144,000. It is not enough to say that defendants have not fully complied without, at the

very least, showing the extent of compliance and non-compliance. The defendants,

unfortunately, have lived under the specter of this litigation, *pro se* for approximately five

years. It is clear from conversations that they have not understood, appreciated, or

conceptualized the implications of the failure to act in response to very sophisticated

Case ID: 110203388
Control No.: 16050538

opposing counsel and their filings. Having now understood the significance of having counsel to advise them, counsel have attempted, on many occasions to convey the respect required to this Court and the attention it must be paid to these unresolved issues. Unfortunately, plaintiff seeks to nearly double defendants' indebtedness by way of sanctions for failing to *fully* comply where counsel cannot reasonably figure out what has and what has not been complied with. Plaintiff's counsel makes bald, unsupported and unspecific allegations of alleged partial compliance. It would be one thing if plaintiff's counsel alleged that there was no compliance. Instead, counsel vaguely alleges that the defendants have never *fully* complied. Consequently, even now, counsel of record for the previously *pro se* defendants cannot figure out what has and has not been complied with. If a layperson were to look at allegations such as what is contained in paragraph 24, defendants' counsel cannot understand, despite many years before the bar, what the phrase "never fully complied" means. To impose sanctions, on *pro se* defendants that almost doubles alleged indebtedness is simply an attempt to take advantage of *pro se* parties who have not had the benefit of advice of counsel. A further example is our Petition to Strike the Confessed Judgment (Control Number 16063238) which demonstrates that the more sophisticated parties, and drafters of the instrument in the underlying dispute, "hid the ball" by never providing an address for service that was supposed to be supplied in the alleged agreement. Consequently, even an attempt at compliance would be unsuccessful given the failure to provide adequate information. The reason counsel is compelled to group all of the allegation paragraphs together for its response is because there is no indication of what was and was not complied with. What more can be responded to than to explain to the Court that given the impossibility of adequate and specific responses to each paragraph

that our formerly *pro se*, lay defendants could not be expected to do any better than their "hog-tied" counsel.

**WHEREFORE,** Defendants respectfully request this Honorable Court to deny the Plaintiff's Motion to Reassess in the above captioned matter, as stated in the proposed Order.

Respectfully submitted,

**KATS, JAMISON & ASSOCIATES**

Date: 7/1/16

By: _____

**Marina Kats, Esquire**
**Atty ID 53020**
Attorney for Defendants

**KATS, JAMISON & ASSOCIATES**
**By:**    **Marina Kats, Esquire**
           **I.D. No. 53020**
           **1 Bustleton Pike**
           **Feasterville, PA 19053**
           **215-396-9001**
           marina@mkats.com                      **Attorney for Defendants**

| | |
|---|---|
| **VERTONIX LTD** | : **COURT OF COMMON PLEAS** |
| **Plaintiff** | : **PHILADELPHIA COUNTY** |
| **v.** | : |
| | : **CIVIL ACTION** |
| **YURI and OLGA LYUBARSKY, h/w** | : |
| | : **FEBRUARY TERM 2011** |
| **Defendants** | |
| | No.   03388 |
| **v.** | |

**THE  GUARDIAN  LIFE  INSURANCE**
**COMPANY  OF  AMERICA**

                              **Garnishee**

---

**DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR RESPONSE TO**
**PLAINTIFF'S MOTION TO REASSESS DAMAGES**

I.      <u>Matter before the Court:</u>

        This is the Defendants' Response to Plaintiff's Motion to Reassess Damages.

II.     <u>Statement of question involved:</u>

        Did the Plaintiff as Movant carry its burden to demonstrate with any specificity the

failure to comply with the Court's Orders?

        SUGGESTED ANSWER: No.

III.    <u>Facts:</u>

        Plaintiff, Vertonix Ltd., commenced this action on February 24, 2011, by complaint to

confess judgment against defendant upon a commercial loan obligation secured by a "Surety

Agreement" containing a warrant of attorney.

Case ID: 110203388
Control No.: 16050538

IV.    Argument:

Plaintiff specifically says without any support whatsoever that defendants have never *fully* complied in paragraph 24 of its motion (emphasis supplied). The burden is on the movant to demonstrate justification for the imposition of sanctions of over $144,000. It is not enough to say that defendants have not fully complied without, at the very least, showing the extent of compliance and non-compliance. The defendants, unfortunately, have lived under the specter of this litigation, *pro se* for approximately five years. It is clear from conversations that they have not understood, appreciated, or conceptualized the implications of the failure to act in response to very sophisticated opposing counsel and their filings. Having now understood the significance of having counsel to advise them, counsel have attempted, on many occasions to convey the respect required to this Court and the attention it must be paid to these unresolved issues. Unfortunately, plaintiff seeks to nearly double defendants' indebtedness by way of sanctions for failing to *fully* comply where counsel cannot reasonably figure out what has and what has not been complied with. Plaintiff's counsel makes bald, unsupported and unspecific allegations of alleged partial compliance. It would be one thing if plaintiff's counsel alleged that there was no compliance. Instead, counsel vaguely alleges that the defendants have never *fully* complied. Consequently, even now, counsel of record for the previously *pro se* defendants cannot figure out what has and has not been complied with. If a layperson were to look at allegations such as what is contained in paragraph 24, defendants' counsel cannot understand, despite many years before the bar, what the phrase "never fully complied" means. To impose sanctions, on *pro se* defendants that almost doubles alleged indebtedness is simply an attempt to take advantage of *pro se* parties who have not had the benefit of advice of counsel. A further example is our Petition to Strike the Confessed Judgment (Control Number 16063238) which demonstrates that the more

sophisticated parties, and drafters of the instrument in the underlying dispute, "hid the ball" by never providing an address for service that was supposed to be supplied in the alleged agreement. Consequently, even an attempt at compliance would be unsuccessful given the failure to provide adequate information. The reason counsel is compelled to group all of the allegation paragraphs together for its response is because there is no indication of what was and was not complied with. What more can be responded to than to explain to the Court that given the impossibility of adequate and specific responses to each paragraph that our formerly *pro se*, lay defendants could not be expected to do any better than their "hog-tied" counsel.

<u>Relief:</u>

      Defendants therefore respectfully request this Honorable Court to deny Plaintiff's Motion to Reassess Damages, as stated in the proposed order.

Respectfully submitted,
Kats, Jamison & Associates

By: _____
Marina Kats
Attorney for the Defendants
Yuri and Olga Lyubarsky

Date: 7/1/16

Case ID: 110203388
Control No.: 16050538

## **VERIFICATION**

I, Marina Kats, Esquire, hereby state that I am the attorney for the Defendants herein, that I am acquainted with the facts set forth in the foregoing and that the same are true and correct to the best of my knowledge, information and belief and that this statement is made subject to the penalties of 18 Pa. C.S. 4904 relating to unsworn falsification to authorities.

Marina Kats, Esquire
Attorney for Defendants

## CERTIFICATION OF SERVICE

I, Marina Kats, do hereby certify that service of a true and correct copy of Defendants'

Response to Plaintiff's Motion to Reassess Damages has been forwarded to Plaintiffs's counsel

and Garnishee's Counsel via e-filing and/or First Class United States mail, postage pre-paid, dated

July 1, 2016 to:


Eric Rayz, Esquire
Kalikhman & Rayz, LLC
1051 County Line Road, Suite "A"
Huntingdon Valley, PA 19006
Counsel for Plaintff, Vertonix Ltd.


Steven Maniloff, Esquire
Montgomery, McCracken, Walker & Rhoads, LLP
123 South Broad Street, 28th Floor
Philadelphia, PA  19109
Counsel for Garnishee, The Guardian Life Insurance Company of America


Marina Kats, Esquire
Attorney for Defendants

FILED
03 MAY 2016 01:59 pm
Civil Administration
P. MARTIN

| | |
|---|---|
| VERTONIX LIMITED<br><br>         Plaintiff(s)<br><br>    v.<br><br>LYUBARSKY, et al.<br><br>         Defendant(s) | COURT OF COMMON PLEAS<br>PHILADELPHIA COUNTY<br><br>February Term 2011<br><br>Docket No. 3388 |

## ORDER

AND NOW, this **6th** day of **July**, 20**16**, upon consideration of Plaintiff's Motion to Reassess Damages, it is hereby ORDERED and DECREED that:

1. The Prothonotary is to amend the judgment entered in this matter on February 24, 2011, for the Plaintiff and against Defendants, YURI LYUBARSKY and OLGA LYUBARSKY, to reflect that, as of May 3, 2016, the amount of the judgment is ~~$270,402.71~~ *$141,102.71*; and

2. Defendants are to pay interest at the legal rate of six (6) percent per annum, upon the amount of the judgment entered in this matter, from the date of this Order, and until it is paid in full.

BY THE COURT:

_____

Vertonix Limited Vs Lyu-ORDER

11020338800082

DOCKETED
JUL 07 2016

MICHAEL TIERNEY
JUDICIAL RECORDS

RECEIVED
JUL 07 2016
OFFICE OF JUDICIAL
RECORDS

Case ID: 110203388
Control No.: 16050538

Case ID: 110203388
Control No.: 16122014

## DECLARATION OF YURI LYUBARSKY

I, Yuri Lyubarsky, hereby solemnly affirm and declare as follows:

1. I am writing this declaration after spending many days looking at the 279 pages in new documents filed by Vertonix's lawyer Eric Rayz on January 3, 2019.

2. I am diagnosed with "severe panic disorder", a debilitating mental health condition that causes me to have panic attacks which are somewhat mitigated by medication, but sometimes I end up in a hospital.

3. I write this as a cry for help because I feel Rayz is playing shell games with time, facts and words, purposefully misquotes me in his filings, uses grossly outdated photos and intentionally withholds facts, in order to paint a false picture of me as a supposedly wealthy individual today.

4. While I understand that the issue of my assets is no longer relevant since I have already settled this issue with the Trustee (who sees all the same information Rayz does, and certainly has much better search tools at her disposal). Still, I want anyway to explain the many falsities that Rayz is stating, because I think it is important for the court to see the correct picture.

5. More important, I also want to describe the terrible effect that threats by Rayz and his violations of the "automatic stay" and illegal blackmail against me during the bankruptcy process have had on me and my wife.

6. Here's an example of how Rayz plays games with pictures trying to show that I am a rich man. He includes a bashful picture of me in his filing, with a cigar and an expensive watch, as proof of my current "wealth". It is an impressive picture, appearing to show someone who is clearly doing well. He pretends like it is a current or recent picture. Problem is – he purposefully edited information out of that picture that shows how awfully outdated it is to prove my "wealth":

As shown by Rays to the court:        Actual picture:




Please look in the left upper corner of the full picture, which Rayz intentionally cut off to make it appear that this is a current photo of me. The clock on the wall shows it was taken at a New Year's party at 11:57:33pm on December 31, **2004**. That's over 14 years ago! Yes, at that time I was indeed doing better than now. I didn't have my disability yet, and I had a profitable business. Still, even then, I purposefully posed for this picture with my daughter in a show-off, cartoonish manner. I was poking fun at myself.

7. As an even more blatant example of how Rayz plays shell games with words and tries to dupe the court, here is an excerpt from his filing where he accuses me of not telling the truth about the original guarantee for the loan agreement:

> *In his Affidavit, Yuri Lyubarsky asserts that the Debtors signed the Personal Guarantee, when "a representative [arrived] at [their] home in New Jersey with the documents" and that **"the representative visiting my home on that day was Eric Rayz, the lawyer for Vertonix."** ECF Doc. 47-1, pp. 1-2. This statement is false.*
>     (Note: this is from footnote on page 2 at the bottom, I added **bold and underline**)

This is a purposeful, outright lie by Rayz, who intentionally skipped over a part of a sentence I wrote and purposefully turned my entire statement 180 degrees. What I actually wrote was:

> ***I am not 100% certain, but I believe*** *the representative visiting my home on that day was Eric Rayz, the lawyer for Vertonix.*
>     (Note: this is from paragraph 6 of my affidavit, I added ***bold and underline font***)

I wrote in my affidavit that was <u>doubly</u> unsure by saying "*I am not 100% certain, but I believe*…". However, Rayz only took the part I was unsure about, quoted it in his filing <u>as if I said it without any qualifiers</u>, and then accused me of lying.

If I didn't notice this, I am sure the judge, when reading Rayz' lie above, would not bother to check my original affidavit to see what I wrote – and reach the decision that I am a liar. This is because Rayz is a lawyer, and an "officer of the court", and he is not supposed to do things like this. He is misleading the court so I would be incorrectly branded a liar. When in fact, it is Rayz who is purposefully lying to the court.

This is the same gamesmanship that earned Rayz and Vertonix many of their past victories against me in Pennsylvania – except that back then I was not in the court, and my lawyers didn't have enough information or knowledge of prior facts and documents to show where Rayz was lying.

8. To figure out the above lie by Rayz, I had to do the type of work I have no competence in doing – analyzing documents filed by Rayz, looking for little "Easter eggs" in them, comparing them to my lawyers' filings... I never knew how to do this, and do not know this today. I actually trusted lawyers, even lawyers for the other side, to "play fair", because I thought that since they were lawyers, they are supposed to be honest professionals, and it would be improper for them to cheat me. I wish I knew this was a false expectation when my wife and I were signing the "Personal Guarantee" in 2005, which was prepared by the other side's lawyers, or the $119,000 settlement agreement in 2006 which could be undone if I was late, and result in a $184,000 debt which could simply be recorded against me by "confession of judgment". I would have never agreed to any of this if I understood what was going on.

9. Cutting words out of a sentence to turn it around, cropping the date out of a picture to pretend like it is recent – these are the usual things Rayz does, where in his mind anything goes to achieve the objective, his duty as an "officer of the court" forgotten.

10. I was never an owner of Reemstor Commers, Inc. ("Reemstor") nor its officer or member. Neither, of course, was my wife. Rayz knows that very well, I am sure he has access to other loan documents (which I do not have) that show the real owners of Reemstor on the registration papers. The language on the 2005 loan agreement produced by Rayz that says my wife and I were "members" of Reemstor is plainly false. It was put in the documents by whoever drafted them, not by me. I have lost my copy of this agreement long ago and was unable to get it from the New Jersey court when I tried, because they said all records from the case were no longer available.

11. This is also the reason I did not remember exactly how much Vertonix was suing me for in New Jersey and gave a figure of "approximately $185,000" which was my best recollection, but now I see it was actually $156,450 on the original paperwork. I remember a figure of $185,000 being discussed when settlement was being negotiated after the lawsuit was already ongoing, and I think my mistake stems from there. Again, Rayz states that $185,000 was "false" even though I wrote "approximately".

12. During the past decade I lost both my houses, one in New Jersey and one in Florida, and many other assets because I was unable to pay for them. Both houses lost were "upside down" heavily, and I was unable to pay their mortgages for years while the foreclosures were being completed. If I had any money to speak of at the time of these foreclosures, I would have tried to keep at least one of my homes.

13. The pictures of the house in Florida in Vertonix's pleadings and declarations were made after it was foreclosed. It is clear when you see all pictures without furniture.

14. It is true that I liked flashy items in the past, and I leased several expensive cars when I had more money. This was 10-15 years ago. The only "flashy" thing I have left now is my 6-year old Tesla that is worth little more than the loan on it.

15. I wear mock brand-name watches I bought in China many years ago for a few hundred dollars. This was included in my paperwork when I filed for bankruptcy. These watches look pretty real from ten feet away, but if I take the watch off my wrist and show it, people who know watches can see right away it is fake.

16. After my "341" meeting in July, the Trustee told me and my wife to go home right away, where an appraiser was already waiting by the door to examine my apartment. This was a surprise inspection, I had no idea something like this would (or could) happen, and neither did my lawyer. So hopefully it is clear I had no chance to prepare or hide anything. Everything I owned was in the apartment. If I had something to hide, the appraiser would find it. I went straight home from the "341" meeting and the appraiser was there waiting for me. He looked through every single item in my apartment with a fine-tooth comb. He asked me to open all closets, cabinets and drawers. He found nothing valuable, nothing at all. No cash, no jewelry, no expensive watches, none of the "wealth" which Rayz keeps imagining. He saw several cognac bottles which he appraised at $10 each. Some of them had iced tea in them instead of cognac, which I showed to him. He saw a few watches made in China, examined them and took a picture of them – I can show them to the judge when I am in court, if necessary. They are old and worthless knockoffs.

17. It is impossible to prove a negative. I cannot prove that I do not have great assets. I cannot prove that I do not have active money-making companies. I cannot prove I do not own expensive watches, cash or whatever else Rayz pretends I could have. If I had anything worth mentioning, it would have been in my apartment. In the end the appraiser, who was specifically sent by the Trustee to surprise me (presumably at Rayz' suggestion) came up with a similar figure for all my assets as what I put on my petition. The only thing he valued slightly higher than I did was the Tesla car. I am paying tens of thousands of dollars more money to the Trustee than all my assets were appraised for – so that at least some of my disability money would finally be paid to me.

18. I have lost control of all my business assets a long time ago. I am not a shareholder in any active or open businesses at this time and have not been for years. All companies in which I have ever been involved have gone "belly up" years ago. They have been closed or are defunct. Any money I had in any businesses I ever owned has long been spent or lost. If any companies are still not de-registered, this is a mistake that may be only because, due to my incompetence, I did not follow through with all the proper agencies to close them many years ago when they went defunct. If this was not so, Vertonix would have seized all these businesses I supposedly owned a long time ago. But the reality is – they don't exist, I don't have any businesses, plain and simple.

19. Today, fifteen years since then, I the only true thing about that picture that still applies to me today, is that I occasionally give myself a luxury to smoke an inexpensive cigar. It calms me down and makes it easier for me to deal with my panic disorder. I do it maybe once a week. The appraiser saw the cigar box in my apartment with several cigars in it and did not think the box or the cigars were worth anything.

20. The picture at the beach was taken a decade ago on a $1,000 per person Celebrity cruise. I wish I still looked so young…

21. Rayz makes it seem like all these pictures show my current wealth. It is a purposeful lie.

22. I have tried to defend myself in courts, but it was a futile effort against Rayz, who was far more knowledgeable about how to use the system to his advantage. I tried to hire lawyers several times to try to push back, each time paid a few thousand dollars "retainer", but then could not afford to continue paying them in the longer term. For example, in the spring of 2016 I think I paid my lawyers in Pennsylvania $5,000 to help me fight against Vertonix because Rayz was trying to cut off my disability income, but I could not afford to pay them any more after that. I don't think my lawyers ever spent the kind of time and effort that Rayz was willing to devote.

23. When I wrote that I could not afford "to hire a trial attorney to fight the Vertonix case head on" (I added the underlines), what I meant was that I could not afford to hire a lawyer who could fight the case to the end and prove that I owed Vertonix much less than Rayz claimed. The amortization schedule I included shows the correct amount, $34,000 and change. To this day I have no idea how Rayz calculated $156,000 in his New Jersey lawsuit. There has to be a lot of late fees and penalties to turn $34,000 into $156,000. Unable to fight on, I settled for $119,000 out of desperation, not because I truly owed anywhere near this amount. Little did I know that after I would pay $33,000 on the $119,000 settlement, Rayz would turn my debt into $184,000 yet again by "confession" – a term I still do not understand.

24. I did not know, nor did my lawyers ever say, that the Pennsylvania courts had no jurisdiction over my disability policies. This information was first suggested by a Pennsylvania bankruptcy trustee, Gary Seitz, who heard about my case, and thought it was so outrageous what was happening to me, that he agreed to help me "pro bono" (that is, without payment). He said that while the Pennsylvania courts had the right to determine how much I owed Vertonix (because that "jurisdiction" was written in the settlement contract), they should have never, ever, had the right to touch my disability policies because these policies were neither issued nor paid in Pennsylvania, because I never lived in Pennsylvania, and therefore collecting against them was simply not a Pennsylvania matter. Because I live in Florida, only there, under Florida law, was it permissible to try to "collect" against them.

25. I think Rayz, being so super competent, knew this when he got the Pennsylvania judgment "domesticated" in Florida, but he also knew that a Florida court would never let him touch my disability policies, and he went to the wrong court. He did this knowing that as weak of a fighter as I was, it would be even more difficult for me to fight in Pennsylvania, and I would never figure out that Pennsylvania was the wrong place to have the fight about the disability policies (nor would be able to get lawyers who would understand that). Over the years, I had little understanding about what was happening in the Pennsylvania courts and why, and my lawyers there could only push back so hard with the little money I could afford to pay them.

26. I was stunned to see, for the first time just last month, that Vertonix's "motion to reassess damages" in May of 2016 stated that **I owed only $34,251.44** in "principal balance and accrued interest as of April 30, 2013", and that this amount **already included $16,751.29 in legal fees**. This means that my original loan balance at the time was just $17,500.15! The remaining $259,651.42 of the $276,402.71 that Vertonix was trying to get was all legal fees, costs and "sanctions" which Rayz claimed I owed to Vertonix.

27. I am saddened that my lawyers in Pennsylvania only contested the sanctions – which Rayz tried to claim to be a whopping $135,300. I wish my lawyers also made the argument that it was not reasonable for Vertonix to get the additional $123,601.95 in legal fees to collect my $17,500.15 principal balance. Thank God the judge at least denied the sanctions! I am sure he would have done the same to legal fees if my lawyer asked for that.

28. Even with these legal fees, in 2016 all I was ordered to pay Vertonix was $142,102.71 plus 6% interest. In 2017 when I saw Rayz in Florida, he told me to forget any numbers I had in my head, because he could make my debt as large as he wanted. After everything I saw him achieve, I believed him. After that, I could only see all Rayz' demands above the $142,102.71 amount (plus 6% interest) as pure blackmail and extortion against me and my wife.

29. I am stunned that after the $135,300 was denied in Pennsylvania, Rayz is trying to pretend that the $100/day is still ongoing **after** it was already denied, and is trying to add $96,800 to my debt. I also know that to do this, Rayz hid the document showing the $135,300 he tried to claim in 2016 (and was denied) were the same sanctions.

30. This is the same pattern as he did with mis-quoting me, and with showing only the part of the picture that supposedly shows me as "wealthy" without showing the picture was taken 15 years ago.

31. Rayz' claim to fame is to purposefully withhold the most important part of something, pretend that the other part is the entire picture, and use that other part to bamboozle others into a flawed decision.

32. And now he is also trying to add $168,075 in legal fees – legal fees he supposedly spent in efforts to collect a debt in the false amount, i.e. above the $142,102.71 amount awarded to him in Pennsylvania, and far above the $17,500.15 in "principal and interest" that I owed as of 2016.

33. By May 2018, I had no more power to fight this anymore, nor money to pay anyone to do it for me. This is why I filed for bankruptcy, hoping to finally be done with all my debts and be left alone. My lawyer said that Rayz would not be able to keep attack me after the bankruptcy because of something called the "automatic stay", a law which prohibits creditors from making demands and harassing debtors after they file for bankruptcy.

34. Knowing this, during the first part of June 2018, I was finally able to get a good nights' sleep several times, for the first time in nearly a decade, without waking in the middle of almost every night in cold sweat, heart racing, certain beyond doubt that I am about to die.

35. **This short period of calm did not last. Three weeks after I filed for bankruptcy, Eric Rayz flew to Florida, met with my lawyer, and demanded that I pay him $250,000 immediately, and made blackmail threats against me if I did not comply.**

36. The day he did this, Thursday, June 21, 2018, left an indelible scar on me and my wife, and will be ingrained in my memory forever. This day drew a bright red line in my belief that the law can protect me, or that the law worked at all. I saw clearly that Rayz did not care about the law, and my panic attacks resumed with unprecedented intensity. I woke up in the middle of almost every night, certain beyond doubt that I was dying and nothing could help. I was running around the room looking for help, my wife was running together with me holding glass of water with pills trying to help… – but nothing helped.

37. I was dying every day… I would never wish this feeling to my worst enemy. And even after taking the maximum dosage of pills with the highest permitted frequency, this condition would disappear for an hour, but I knew with certainty that this relief was only temporary, and I was constantly waiting for the next strike every day, and it is a nightmare. No money in the world can cover this devastating damage this did to me. All this is thanks to the great talent of Eric Rayz, which combined with his disregard for the law and honesty wreaked havoc with my life.

38. While I was honest in my bankruptcy petition, I also knew how crafty Eric Rayz could be, and how he had gotten away with lies before, obtaining court decisions nobody (including my lawyers in Pennsylvania) consider borderline appropriate. Therefore, his threats caused me great pain and anxiety, which have continued for the past 8.5 months. I saw that my adversary did not care about the law. I saw he was getting away with anything he would try. When my lawyer wrote to Rayz that the threat was inappropriate, Rayz responded laughingly that he "did not care."

39. I was afraid my lawyer, the bankruptcy law and the "automatic stay" would give me no protection from Rayz. My lawyer had said before the "automatic stay" would stop Rayz from making demands – but Rayz did it anyway, and nothing happened to him.

40. I am so happy that the Trustee, after she did her research, saw that there was little to get from me, and we have finally agreed to settle so I can finally put all this behind me. All I have left financially were my disability policies, and I even agreed to part with some of that money, just to get everything resolved once and for all.

41. My agreement with the Trustee was signed in early February, and the past three weeks have been the first time in over a decade when I have not had regular panic attacks. I actually got several full nights' sleep without waking up several times in the middle of the night with fast heartbeat and shortness of breath.

42. I am certain that part of the $168,075 which Rayz is trying to get in legal fees includes the time he spent making the $250,000 demand during the "automatic stay" and for blackmailing me, and his time, at $400+ per hour, for flying to Florida in 2017 to tell me he didn't care about the amount the court wrote in the judgment, because he could get the judgment to be whatever he wanted.

43. I never made any offers to Vertonix in 2018, nor authorized my Pennsylvania attorney to do so.

44. I know that I must demonstrate "actual damages" in order to be awarded sanctions. My wife are not seeking a compensation for expenses. The damage done by Rayz' actions is 99.99% psychological, not monetary. However, to the extent expenses must be demonstrated, due to the exacerbation of my medical condition after Rayz tried to blackmail me into paying $250,000, my wife had to drive me to the hospital several times during the past 8 months. Being in the car often soothes my symptoms, and by the time we were getting to the hospital, the medication I took back home would start "kicking in" and relaxing me, and I would ask my wife to turn the car around and go home. I estimate that during the past 8 months this "ritual" took place at least 12-14 times, or about every two weeks. Each time I estimate the cost of gasoline expended to be $2. Before the blackmail threat, such trips only took place once every few months. Accordingly, I estimate that my wife and I sustained about $20 in actual damages due to the 10 or so extra trips we had to take to/from the hospital due Mr. Rayz' misconduct.

45. I also request "punitive" damages for the blackmail (and the "violation of the automatic stay") I experienced, in an amount calculated by the court while keeping in mind that Rayz tried to extort $250,000 from me while violating the automatic stay.

46. My life during bankruptcy became miserable since I received the threats and payment demands from Rayz. I was trying to get some calm when I filed for bankruptcy, but instead got the exact

opposite. I now understand Rayz broke the law when he demanded $250,000 from me, and maybe even committed a crime when he made his threats. I hope he is properly punished for doing this. I am not sure how this can be done, but I am told the judge can "sanction" even lawyers for violating bankruptcy rules such as "automatic stay". I know this is rare, but hopefully in this case proper justice can be done.

I hereby affirm and declare that the foregoing is true to the best of my knowledge and belief.

Yuri Lyubarsky
March 4, 2019