UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION
www.flsb.uscourts.gov

In re:

YURI LYUBARSKY and             Case No: 18-16659-LMI
OLGA LYUBARSKY                  Chapter 7

    Debtors.
_____/

# DEBTORS' REPLY TO VERTONIX LTD'S SUPPLEMENT TO ITS RESPONSE TO DEBTORS' OBJECTION TO THE CLAIM OF VERTONIX LTD

Debtors, Yuri Lyubarsky and Olga Lyubarsky, by and through undersigned counsel, hereby file this reply (the "Reply") to Vertonix's Supplement [ECF No. 82]. Debtors incorporate references and definitions from all prior filings relating to Debtors' objection to Vertonix's claim.

In the Supplement, Vertonix argues that Debtors lost standing to object to Vertonix's claim because the estate has no possibility of surplus following the entry of the Settlement Order, and accordingly Debtors have no pecuniary interest in the determination of the amount of Vertonix's claim.

For avoidance of ambiguity, Debtors unequivocally agree that they have never had, nor do they now have, any pecuniary interest in the distribution from the [no surplus] estate. In recognition of this, Debtors have withdrawn their objection to Guardian's claim (ECF Nos. 46 and 87).

In this Reply, Debtors will clarify their prior and current pecuniary interest and standing, particularly their current pecuniary interest and standing *as movants in the related and intertwined Sanctions Motion*, to seek a determination of the proper amount of Vertonix's claim.

**Preliminary Statement**

1. Brief summary of relevant events and orders in Pennsylvania proceedings:

    - 02/24/11: PA court enters judgment for $184,264.19 ("PA Order 1");

    - 07/20/12: PA court orders conditional sanctions at $100/day ("PA Order 2");

    - 04/29/13: Vertonix is paid $175,000 from the sale of Debtors' NJ home;

    - 07/07/16: PA court enters an order reassessing damages ("PA Order 3"), which:

        i. revises the amount owed under PA Order 1 to $141,102.71; and

        ii. denies the entirety of $100/day sanctions under PA Order 2.

2. Brief summary of relevant events and filings in these bankruptcy proceedings:

    - 05/31/18: Debtors file their Chapter 7 Bankruptcy Petition.

    - 06/14/18: Debtors file schedules listing Disability Benefits as exempt;

    - 06/14/18: Debtors file Motion to Avoid Lien against Disability Benefits.

    - 06/21/18: Rayz attempts to obtain a $250,000 payment from Debtors[1];

    - 07/10/18: Vertonix files POC for $400,000 secured by Disability Benefits;

    - 12/03/18: Debtors file their Objection alleging, *inter alia*, that Vertonix improperly withheld the $175,000 payment and PA Order 3 from the POC;

    - 01/02/19: Vertonix files its Response, verified by Rayz. This time the $175,000 payment and PA Order 3 are acknowledged, but the $400,000 amount is justified, *inter alia*, by $100/day sanctions under PA Order 2. Rayz hides the fact that these sanctions were already denied by PA Order 3 and withholds a

---

[1] This is the most basic and benign description of what happened, provided here intentionally in a watered-down form so that it would not contradict Rayz' self-serving description of these events. As Debtors argue in more detail in their Motion for Sanctions, what actually happened was a blackmail threat by Rayz against Debtors, one of whom had a mental health disability, that violated the automatic stay and various other laws in an outrageous manner.

document proving it from an otherwise very thorough 279-page filing.

- 03/04/19: Debtors file their Motion for Sanctions against Vertonix and Rayz for fraud on the Court (relating to POC and subsequent filings) and violation of the automatic stay (relating to the $250,000 extortionate demand on 06/21/18);
- 03/11/19: Court enters Settlement Order which, *inter alia,* (a) grants Debtors' Motion to Avoid Lien and (b) rules that their Disability Benefits are exempt.

### Sanctions Motion

3. The Sanctions Motion filed by Debtors on March 4, 2019 has two prongs:

- Fraud on the Court committed by Vertonix and Rayz by filing (and verifying under oath) the POC for a knowingly bogus amount of $400,000 and then defending it in an improper and fraudulent fashion; and
- Violation of the automatic stay by Vertonix and Rayz in making an outrageous extortionate $250,000 demand on Debtors after they filed for bankruptcy.

4. For reasons more fully explained below, each of these prongs supports Debtors' pecuniary interest and standing, *as movants in the Sanctions Motion*, rather than simply debtors in bankruptcy proceedings, to seek a determination of the proper amount of Vertonix's claim.

### Pecuniary Interest and Standing Arising from the Fraud on the Court Prong

5. While Vertonix is silent on the point, it is undisputed that *prior to the Settlement Order*, which granted Debtors' Motion to Avoid Lien, Debtors had a direct dollar-for-dollar pecuniary interest in lowering the amount of Vertonix's claim and standing to file and maintain their Objection. This is because Vertonix claimed the *entire* amount of its $400,000 claim was secured by an interest in the Debtors' otherwise exempt Disability Benefits.

6. Accordingly, any reduction from the $400,000 amount of Vertonix's claim would

be a direct dollar-for-dollar benefit to Debtors if their Motion to Avoid Lien were to be denied.

7. The $400,000 amount stated in the POC had the potential to deprive Debtors of the entirety of the value of their Disability Benefits. Both before and during these bankruptcy proceedings Vertonix and Rayz made it no secret that this was their ultimate goal.

8. Debtors argue in their Sanctions Motion that Vertonix and Rayz perpetrated fraud on the court by (a) improperly filing the POC for a bogus $400,000 amount and then (b) defending it in a fraudulent fashion. The fraud on the court consisted of withholding key documents from the POC and subsequent filings and making knowingly false and misleading statements to the Court.

9. A determination of the proper amount of the POC is clearly a necessary prerequisite to a determination of (a) whether the POC was improperly inflated, (b) whether fraud on the court was committed in filing and defending it, and (c) what the appropriate monetary [and other] sanction should be for such violations.

10. Accordingly, Debtors have a clear pecuniary interest (as movants in the Sanctions Motion) and therefore standing in having the proper amount of Vertonix's claim determined.

**Pecuniary Interest and Standing Arising from the Violation of the Automatic Stay Prong**

11. While the violation of the automatic stay and blackmail threats alleged by Debtors in the Sanctions Motion are egregious in any circumstances, the gravity of these violations would be further exacerbated if the $250,000 amount which Rayz and Vertonix sought from Debtors on June 21, 2018 was *above* the amount Debtors actually owed Vertonix.

12. For example, if the court determines that the proper amount of Vertonix's claim in June 2018 was approximately $160,000 under the express language of PA Order 3 (as Debtors allege), then the $250,000 that Rayz tried to obtain from Debtors on June 21, 2018 included an approximately $90,000 premium on top of what was actually owed.

13. As stated in the Sanctions Motion, the $250,000 payment was being demanded under the blackmail threat of reporting Debtors to the US Attorney and the Trustee.

14. In this context, a premium being demanded by Rayz in exchange for not following through on his blackmail threat would have potentially extreme ramifications to the interpretation of Rayz' conduct, which will weigh heavily on the amount of potential sanctions.

15. Accordingly, Debtors have a clear pecuniary interest (as movants in the Sanctions Motion) and therefore standing to seek a determination of the proper POC amount as a prerequisite to the review of the automatic stay violation and extortion prong of the Sanctions Motion.

**An Extraordinary Case**

16. The events in the present bankruptcy proceedings are an extraordinary case. On June 21, 2018, Rayz and Vertonix ignored the sanctity of the automatic stay in an egregious attempt to force Debtors to make a very significant payment despite the pending bankruptcy proceedings.

17. One of debtors' most important rights is the right to be free from collection attempts by creditors after the bankruptcy petition has been filed. The automatic stay was designed to allow debtors to carry less of a burden from mounting debt by barring creditors from attempting to collect a debt while the bankruptcy petition is being processed in the court system.

18. Here, the creditor and its counsel violated the automatic stay in a deliberate attempt to circumvent the bankruptcy code. By their actions, thwarting the chief purpose of Debtors' bankruptcy filing, Rayz and Vertonix created a mounting pressure and extracted an extreme psychological toll from the Debtors. This effect was greatly compounded by Rayz' outrageous threats and the mental health disability of Mr. Lyubarsky of which Rayz was fully aware.

19. The primary function of the automatic stay in these proceedings was to remove the weight of collection efforts by *this creditor and its counsel* to allow Debtors some breathing room

while the Trustee examined Debtors' petition, income, debt, and assets. Debtors were intentionally deprived of the relief they were entitled to under the bankruptcy code.

20. The unique (or nearly unique) distinction of this case is that the $250,000 demand on Debtors was willfully made in an outrageous blackmail/extortionate fashion by an extremely competent attorney-at-law who was fully familiar with both bankruptcy rules relating to automatic stay and laws prohibiting blackmail and extortion.

21. The excessive proof of claim filed and challenged by Debtors here is part of a pattern of overly aggressive creditor tactics that the bankruptcy process was designed to reign in.

22. In their Sanctions Motion and at the upcoming evidentiary hearing on it, Debtors are asking the Court to award very significant sanctions that would properly punish Rayz and his client (to the extent the Court determines Vertonix to be co-culpable) for this outrageous violation and to deter others from ever committing the same misconduct.

23. The proper amount of the POC is a key part of the constellation of facts which (a) provide important context to the violation of the automatic stay and (b) have direct relevance to Debtors' allegations of fraud on the court.

WHEREFORE, Debtors respectfully request the Court rule on Debtors' fully briefed Objection to Vertonix's Claim on the basis of existing pleadings filed by Debtors and Vertonix, or, in the alternative, schedule an evidentiary hearing on the Objection immediately prior to and/or as part of the evidentiary hearing on the Sanctions Motion.

Dated: <u>April 1, 2019</u>

/s/ Leonid Nerdinsky
Leonid Nerdinsky, Esq.
Nerdinsky Law Group, P.A.
3800 S Ocean Drive, Suite 242
Hollywood, FL 33019
Tel: 954-237-6307

Fax: 954-416-6188
LNerdinsky@nerdinskylaw.com
Florida Bar No. 638781

## **CERTIFICATE OF SERVICE**

I, Leonid Nerdinsky, CERTIFY that a true and correct copy of the foregoing was served via Notice of Electronic Filing (CM/ECF) on April 1, 2019, upon all registered users in this case.