**UNITED STATES BANKRTUPCY COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**

| | |
|---|---|
| In re: | Chapter 7 |
| LYUBARSKY, et al. | Case No. 18-16659-LMI |
| Debtor(s) | |

**MOTION FOR RELIEF FROM AUTOMATIC STAY**
**TO SEEK CLARIFICATION OF AN ORDER OF JULY 7, 2016**
**FROM THE COURT OF COMMON PLEAS OF PHILADELPHIA COUNTY**

Date: <u>April 12, 2019</u>

Respectfully submitted,
**KALIKHMAN & RAYZ, LLC**

/s/
Arkady "Eric" Rayz
Attorney(s) for Creditor(s)
1051 County Line Road, Suite "A"
Huntingdon Valley, PA 19006
Telephone: (215) 364-5030
Facsimile: (215) 364-5029
E-mail: erayz@kalraylaw.com

i

## <u>TABLE OF CONTENTS</u>

A.    Factual Background ..................................................................................................1

    1.    Proceedings in Pennsylvania state courts ............................................................1

    2.    Bankruptcy Proceedings in Florida.......................................................................5

B.    Argument ..................................................................................................................7

    1.    Vertonix and its counsel have standing to seek relief from automatic stay............7

    2.    Good cause exists to grant relief from automatic stay ............................................8

C.    The Court should stay proceedings pending Judge Carpenter's clarification...................10

D.    Conclusion ...............................................................................................................11

## MOTION

Yuri and Olga Lyubarsky (collectively, "Debtors") seek to sanction Vertonix Limited ("Creditor" or "Vertonix") and its counsel for alleged wrongful inclusion of daily discovery sanctions in the total amount of their debt, as identified by Creditor in its Proof of Claim.[1] More specifically, Debtors assert that the Hon. Linda Carpenter of the Court of Common Pleas of Philadelphia Court denied such sanctions almost three years ago and, therefore, they could not accrue thereafter.[2] Simply put, this argument permeates Debtors' Motion for Sanctions.

In light of the above, Vertonix asks the Court for relief from automatic stay to seek clarification of Judge Carpenter's Order of July 7, 2016. This clarification would unequivocally narrow down the parties' dispute by disposing of numerous factual and legal issues, effectively paring down the evidentiary hearing before the Court. It will also streamline the proceedings by focusing discovery. Finally, allowing such clarification would avoid the incongruous scenario of Vertonix and its counsel being sanctioned by this Court based on an incorrect interpretation of Judge Carpenter's ruling.[3]

### A.    Factual Background

#### 1.    Proceedings in Pennsylvania state courts

After confessing judgment against Debtors in 2011 in the Court of Common Pleas of Philadelphia County, captioned and docketed as <u>Vertonix Limited v. Lyubarsky, et al.</u>, February

---

[1] <u>See</u> ECF Doc. 81.

[2] <u>See</u> ECF Doc. 81, p. 20; <u>see</u> <u>also</u> ECF Doc. 54-1, p. 161. The Order at issue is dated July 6, 2016, but was not docketed until July 7, 2016.

[3] In filing this Motion, Vertonix and its counsel sought to comply, to the best of their abilities, with the standards articulated in Local Rule 4001-1(B), even though they are not seeking enforcement of a security interest.

Term 2011, Docket No. 3388, Vertonix proceeded with post-judgment discovery. When Debtors failed to respond, Vertonix filed a Motion to Compel, which was granted by the Hon. Idee C. Fox on December 19, 2011. When Debtors did not comply with that Order, Vertonix filed a Motion for Sanctions, which was granted by Judge Fox following a hearing on April 12, 2012. When Debtors still did not comply, Vertonix filed a second Motion for Sanctions, which was granted by Judge Fox following another hearing on July 20, 2012.[4]

These Orders imposed progressively-severe sanctions to compel Debtors' compliance with their obligations to respond to Vertonix's post-judgment discovery. Thus, the Order from July 20, 2012 imposed monetary sanctions against Debtors, "commencing August 19, 2012 . . . [of] $100.00 per day until they comply fully with th[e] Court's [earlier] Orders."[5]  To date, Debtors have never complied with the Orders of December 15, 2011, April 12, 2012, or July 20, 2012. They also have never sought an appeal or reconsideration of the Order of July 20, 2012.[6]

On May 3, 2016, Vertonix filed a Motion to Reassess Damages.[7]  This filing acknowledged and explicitly credited $175,000.00 that Vertonix received earlier from the sale of Debtors' New Jersey home.[8]  This Motion also sought imposition of sanctions against Debtors, in accordance with Judge Fox's Order of July 20, 2012.[9]  On June 23, 2016, through counsel, Debtors filed a Petition to Strike the judgment. On July 1, 2016, Debtors, also through counsel, filed their

---

[4] See ECF Doc. 54, pp. 10-12, ¶¶31-49.

[5] ECF Doc. 54-1, p. 141; see also id., pp. 137, 139.

[6] See ECF Doc. 86, p. 27, ¶¶12-13.

[7] See ECF Doc. 81, pp. 48-67

[8] See ECF Doc. 81, p. 54.

[9] See id., pp. 23, 31.

opposition to Vertonix's Motion to Reassess Damages.  On July 7, 2016, Judge Carpenter re-assessed damages against Debtors at $141,102.71, as of May 3, 2016.[10]  No appeal or reconsideration was ever filed from the reassessment ruling.[11]

On September 21, 2016, the parties appeared before Judge Carpenter for oral argument regarding Debtors' Petition to Strike.  At the hearing, Debtors were represented by Richard S. Seidel, Esquire from the Law Offices of Kats, Jamison & Associates.  Mr. Seidel vociferously argued before Judge Carpenter that the judgment should be stricken in its entirety, because its entry lead to the improper imposition of discovery sanctions against Debtors that were incorporated by Judge Carpenter in the amount of the reassessed judgment.[12]  After Judge Carpenter allowed the parties to further supplement their filings, on September 30, 2016 (i.e., more than two months after Judge Carpenter re-assessed the amount of the judgment), Mr. Seidel and his co-counsel – Marina Kats, Esquire – submitted a memorandum, where Debtors, *inter alia*, sought the following relief:

> **WHEREFORE**, Defendants respectfully request this Honorable Court to grant their Petition and Strike the Confessed Judgment of February 24, 2011. Further, they request that this Honorable Court Order that all related sanctions and Orders during execution proceedings be rendered Moot;  Order any attachments and garnishments related to the stricken judgment be lifted and stricken;  direct Counsel for Plaintiffs to notify any and all entities within twenty (20) days of

ECF Doc. 86, p. 55.

On November 8, 2016, Judge Carpenter denied Debtors' Petition to Strike the judgment, explaining her rationale as follows:

---

[10] See ECF Doc. 54-1, p. 161.

[11] See ECF Doc. 54-1, pp. 24-25, ¶¶80-87; see also ECF Doc. 54-1, pp. 161, 163.

[12] See ECF Doc. 86, p. 30, ¶42.

> [Debtors] ha[ve] failed to prove that there was a fatal defect. All
> documents indicate that [Debtors] signed a confession of judgment
> in which they agreed to waive all arguments with regard to due
> process, service and their constitutional rights. Further, at the
> hearing of this matter, **[Debtors] made clear that their real
> argument was about the amount of the judgment**. However,
> **[Debtors] have failed to file any appeal of the prior court orders,
> or other documents with the Court to contest the sanctions
> imposed, which appear to represent the bulk of the judgment
> that remains unpaid**.[13]

On December 1, 2016, Debtors filed a Notice of Appeal from that Order to the Pennsylvania Superior Court, an intermediate appellate court in Pennsylvania with direct jurisdiction over the matter.[14] Seven months after re-assessing the judgment, in a formal opinion authored in February of 2017, Judge Carpenter further explained what happened at oral argument in September of 2017 with respect to Debtors' Petition to Strike:

> In the instant matter, Lyubarsky has failed to prove that there was a
> fatal defect in the record and, as such, this Court properly denied the
> request to strike the judgment. **At the hearing in this matter,
> Lyubarsky made clear that actual service was not in issue and
> that the real challenge was to the amount of the judgment, in
> light of payments made and the monetary sanctions that have
> accrued**; however, such arguments do not address any facial defect
> in the record. While **Lyubarsky attempted to argue that a defect
> existed in the documents thereby causing the aforementioned
> accrual of sanctions**, such argument remained unsupported by the
> record and was disingenuously made in light of the Affidavit of
> Service of the Judgment by Confession entered upon the record in
> 2011.[15]

Judge Carpenter further noted that, while Debtors were attempting to challenge the amount of the judgment, they "failed to file any appeal of the prior court Orders and ha[ve] failed to submit any

---

[13] ECF Doc. 54-1, p. 169, n. 1. (emphasis supplied).

[14] See ECF Doc. 54-1, p. 15, ¶56.

[15] ECF Doc. 54-1, pp. 179-180 (emphasis supplied).

other motions with the court **to contest the sanctions imposed, which appear to represent the bulk of the unpaid portion of the judgment**."[16]

The Pennsylvania Superior Court then issued a briefing schedule that required Debtors to file a formal memorandum.[17]   On July 5, 2017, Ms. Kats and Mr. Seidel submitted such a memorandum on Debtors' behalf, where they described Judge Fox's decision to impose sanctions and Judge Carpenter's reassessment of the judgment as follows:

> regarding the Guardian disability and life insurance policies. Since July 20, 2012, the Lyubarskys have been incurring sanctions at the rate of $100.00 per day for their non-compliance with the two trial court discovery Orders from 2011 and 2012. Although the Lyubarskys satisfied part of the judgment amount by $175,000.00 in proceeds from a lien pursuant to the judgment and sale of their home in New Jersey, damages were reassessed by the Trial Court in the amount of $141, 102.71 on July 6, 2016, representing the sanctions and interest.  On July 7, 2016, the Court denied the claim for exemption for all four of the Lyubarsky's

ECF Doc. 86, p. 70.   Ultimately, the Pennsylvania Superior Court affirmed and later denied Debtors' request for reconsideration.[18]

### b.    Bankruptcy Proceedings in Florida

On May 31, 2018, Debtors filed for Chapter 7 bankruptcy relief.  On or about July 10,

---

[16] Id., p. 180, n.1.  (Emphasis supplied).

[17] See ECF Doc. 86, p. 32 ¶48.

[18] See ECF Docs. 54-1, pp. 201-214, 216-217.

2018, Vertonix filed its Proof of Claim *pro se* with the Court.[19]  In the Proof of Claim, Vertonix asserted a claim against the Debtors for $400,000.00, as a result of a judgment entered in Pennsylvania.  Because Debtors have never complied with Judge Fox's Order of July 20, 2012, this amount incorporated the daily discovery sanctions being imposed against Debtors (per Judge Fox's Order) from May 3, 2016 – the effective date of Judge Carpenter's determination of the reassessed amount.[20]  On December 3, 2018, Debtors filed an Objection to the Proof of Claim ("Objection"), where they sought to dismiss, disallow, or reduce the Proof of Claim, because it is "grossly exaggerated, false, and based on a submission of cherry-picked information while withholding more relevant data."[21]

On January 2, 2019, Vertonix responded to the Objection.[22]  In responding, Vertonix explained that the amount of the debt identified in the Proof of Claim incorporated the daily monetary sanctions imposed against Debtors by Judge Fox for the period from May 3, 2016 through July 10, 2018.[23]  Two months later, on March 4, 2019, Debtors filed a Motion for Sanctions against Vertonix and its counsel, asserting, *inter alia*, that: (1) Judge Carpenter did not incorporate sanctions in reassessing the judgment in her Order of July 7, 2016; and (2) Judge Carpenter denied imposition of further sanctions against Debtors.  On this basis, Debtors maintain that, by inappropriately seeking payment of daily discovery sanctions for the period after May 3, 2016,

---

[19] See ECF Doc. 54-1, pp. 2-4.

[20] ECF Doc. 54-1, p. 161 (ordering that "[t]he Prothonotary is to amend the judgment . . . to reflect that, **as of May 3, 2016**, the amount of the judgment is $141,102.71. . . .")(emphasis supplied).

[21] See ECF Doc. 47.

[22] See ECF Doc. 54.

[23] See id., p. 53, ¶¶210-212.

Vertonix and its counsel: (1) sought to extort Debtors; and (2) "committed fraud on this Court."[24]

**B.    Argument**

Under 11 U.S.C. §362(d)(1), "[o]n request of a party in interest and after a notice and a hearing, the court shall grant relief from the stay . . . such as terminating, annulling, modifying, or conditioning such stay . . . for cause."  The term "cause" for modification of automatic stay, is an intentionally broad and flexible concept that permits bankruptcy court, as a court of equity, to respond to inherently fact-sensitive situations.  See In re: Texas State Optical, Inc., 188 B.R. 552 (E.D.Tex. Bkrtcy. 1995).  When determining whether automatic stay should be lifted or modified, a bankruptcy court should weigh the following: (1) whether issues in litigation involve only state law, (2) whether modifying stay will promote judicial economy, (3) whether bankruptcy case will be disrupted if stay is not lifted, and (4) whether estate can be protected if stay is lifted.  See In re: Robinson, 169 B.R. 356 (E.D.Va. 1994).

Here, Plaintiff is seeking relief from stay to obtain a clarification of Judge Carpenter's Order of July 7, 2016, which – under the circumstance – is necessary for a fair resolution of the dispute at issue.

**1.    Vertonix and its counsel have standing to seek relief from automatic stay**

Vertonix and its counsel are "a party of interest" to seek leave from the automatic stay to request clarification of Judge Carpenter's Order.  First, by challenging appropriateness of the accrued discovery sanctions in their Motion for Sanctions, Debtors are effectively attempting to diminish the value of Vertonix's claim to the proceeds of the bankruptcy estate.  Thus, Vertonix has a clear, financial interest in this matter.  See In re New American Food Concepts, Inc., 70 B.R.

---

[24] ECF Doc. 81, p. 20.

7

254 (N.D.Ohio Bkrtcy. 1987)(explaining that the court should grant leave from automatic stay to protect clearly identifiable creditor interest).

Second, in these bankruptcy proceedings, Debtors are seeking sanctions against Vertonix and its counsel.  In this fashion, their collective financial interests are affected as well.  See, e.g., Adair v. Sherman, 230 F.3d 890, 894 n.3 (7th Cir. 2000)(explaining that "[p]arties in interest include not only the debtor, but anyone who has a legally protected interest that could be affected by a bankruptcy proceeding. . . ."); Nintendo Co. Ltd. v. Patten, 71 F.3d 353, 356 (10th Cir. 1995)(holding that the bankruptcy term "party in interest" "is generally understood to include all persons whose pecuniary interests are directly affected by the bankruptcy proceedings. . . .")(internal quotations omitted); In re: Comcoach Corp., 698 F.2d 571 (2nd Cir. 1983)(explaining that a "real party in interest" permitted to seek relief from automatic stay is one who has legal rights that are being affected).

In similar circumstances, the Tenth Circuit in In re: Lavenhar, 808 F.3d 794 (10th Cir. 2015), approved granting leave for a creditor to challenge in state court the validity of the domestic support obligation set out in that court's divorce decree (that the creditor asserted was obtained through collusion or fraud).  In the present case, Vertonix and its counsel are not even seeking to challenge Judge Carpenter's ruling.  Instead, they will merely seek clarification of the state court decision, so that there is no dispute as what Judge Carpenter's order meant.

### 2.    Good cause exists to grant relief from automatic stay

Although Section 362(d)(1) only requires "cause" to obtain relief from the automatic stay, there is "good cause" to grant it in the present case.  As an initial matter, a relief from the stay sought in this Motion is in the interests of judicial economy.  Indeed, Judge Carpenter's Order of July 7, 2016 is the lynchpin of Debtors' arguments – whereas Debtors assert that Judge Carpenter

denied sanctions and that, following her decision on reassessment, Vertonix was no longer entitled to daily sanctions, Vertonix explicitly maintains otherwise.[25]  Therefore, its clarification will result in a partial or a complete resolution of multiple issues raised in Debtors' Motion for Sanctions. Judge Carpenter continues to serve on the Court of Common Pleas of Philadelphia County[26] and is certainly the best person to explain her ruling.  Thus, her clarification would efficiently simplify this matter.[27]  It would also allow the parties to avoid unnecessary and costly discovery.  The Court and the parties will be able to concentrate on the remaining issues and contentions (if any).  In other words, the requested relief from automatic stay will lead to an expeditious and economical determination of the dispute at hand.[28]

Moreover, granting relief to seek a clarification of Judge Carpenter's decision would not prejudice the interests of other interested parties or disrupt the bankruptcy proceedings.  To the contrary, it will minimize the additional costs and fees associated with the Chapter 7 Trustee and its counsel's involvement in this matter.  In other words, the relief sought in this Motion would protect the proceeds of the estate for all creditors.

Notably, in an e-mail of April 12, 2019, counsel for Debtors articulated that Debtors will object to the relief sought in this Motion.  However, they cannot credibly argue that they will be prejudiced if the Court grants leave as requested.  First, they have already been granted a

---

[25] See, e.g., ECF Doc. 81, pp. 3, 6-10.

[26] See http://www.philacourts.us/directory/cp/, last visited on April 12, 2019.

[27] For instance, if Judge Carpenter rejects Debtors' interpretation of her ruling, Debtors' claim that Vertonix and its counsel "committed fraud on this Court" by seeking payment of discovery sanctions accrued after May 3, 2016 would fall by the wayside in its entirety.

[28] Most notably, to the extent that Debtors maintain that Judge Carpenter overruled Judge Fox's earlier decision imposing sanction, her ability to do so is unequivocally an issue of Pennsylvania state law that is better addressed in Pennsylvania.  See ECF Doc. 86, pp. 18-19.

discharge.[29]  Second, Debtors have spent the past three years litigating the underlying lawsuit in Pennsylvania state courts, where they were represented by a team of Pennsylvania attorneys.[30] Now, they are being represented by a bankruptcy counsel from Philadelphia, Pennsylvania, where clarification will be sought.[31]  Moreover, in the event Judge Carpenter agrees with Debtors' interpretation of her ruling, it will further bolster Debtors' argument for sanctions.  On the other hand, Vertonix and its counsel will be severely prejudiced if they are sanctioned by this Court based on an incorrect interpretation of Judge Carpenter's ruling.

Ultimately, the only conceivable reason for Debtors and their counsel not to seek Judge Carpenter's clarification is that they are cognizant that Judge Carpenter would reject their warped interpretation of her rulings.  This is evident in an e-mail of April 2, 2019, from Debtors' bankruptcy counsel – Leonid Nerdinsky, Esquire – who characterized Judge Carpenter's decisions after July 7, 2016 as "perhaps erroneous."[32]  In the same correspondence, Mr. Nerdinsky attempted to explain that Debtors' Pennsylvania counsel were "apparently mistaken" in their arguments and written acknowledgments that Debtors' sanctions were accruing after May 3, 2016.  If anything, however, the fact that Debtors' own Pennsylvania counsel were "apparently mistaken" in interpreting Judge Carpenter's decision is alone sufficient for all interested parties to find out exactly what was meant by Judge Carpenter before this Court imposes sanctions.

C.    **The Court should stay proceedings pending Judge Carpenter's clarification**

As articulated above, the Order of July 7, 2016 is essential to Debtors' arguments for

---

[29] See ECF Doc. 89.

[30] See ECF Doc. 86, pp. 26-34.

[31] See ECF Doc. 91.

[32] A true and correct copy of this document is marked and attached hereto as Exhibit "1."

sanctions.  Therefore, before the parties engage in any discovery and briefing, it makes practical sense to have Judge Carpenter clarify her decision, so that there is no dispute whether: (1) she sanctioned Debtors; and (2) her decision stopped accrual of sanctions.  Although the Court of Common Pleas of Philadelphia County is diligent is resolving pending matters, it is difficult to determine (with any degree of precision) how long it will take to obtain a clarification from Judge Carpenter.  Therefore, if the Court grants relief as set out in this Motion, the sanctions proceedings should be stayed pending a decision from the Court of Common Pleas of Philadelphia County. Indeed, requiring parties to engage in discovery and to proceed with an evidentiary hearing on all issues, while the proceedings are pending in Philadelphia would be contrary to the very purpose of seeking a clarification from Judge Carpenter.[33]

In this regard, Vertonix and its counsel propose that, within ten (10) days of the Court's granting relief from automatic stay, they file a Motion for Clarification.  Debtors will then have twenty (20) days to respond to this filing (in accordance with the applicable Pennsylvania procedural rules).  Further, while the matter is pending in Philadelphia, Vertonix and its counsel will keep the Court and all interested parties appraised of the status of its Motion for Clarification every sixty (60) days by way of correspondence or formal filing with the Court.

**D.    Conclusion**

In light of the foregoing, Vertonix and its counsel respectfully petition that the Court grant relief as requested.

**(SIGNATURE ON THE NEXT PAGE)**

---

[33] Out of abundance of caution, in accordance with the Court's directive, Vertonix is submitting a scheduling order for the Court's review, for the evidentiary hearing to be scheduled for September of 2019.  There is no guarantee, however, that Judge Carpenter will issue her decision by that time.

Date: <u>April 12, 2019</u>                    Respectfully submitted,
                                         **KALIKHMAN & RAYZ, LLC**


                                         /s/
                                         _____
                                         Arkady "Eric" Rayz
                                         Attorney(s) for Creditor(s)
                                         1051 County Line Road, Suite "A"
                                         Huntingdon Valley, PA 19006
                                         Telephone: (215) 364-5030
                                         Facsimile: (215) 364-5029
                                         E-mail: erayz@kalraylaw.com

# EXHIBIT 1

| | |
|---|---|
| **From:** | Leonid Nerdinsky |
| **To:** | Eric Rayz |
| **Cc:** | Felipe Plechac-Diaz |
| **Subject:** | lyubarsky |
| **Date:** | Tuesday, April 2, 2019 5:56:14 PM |

Mr. Rayz,

I have reviewed your Response to my clients' Motion for Sanctions and your supporting declaration attached thereto. I am still perplexed as to your and your client's position on whether the $141,102.71 amount includes any sanctions, and if so, how much. I would like to ask you to clarify this in preparation for tomorrow's hearing, since this is obviously a key question, and I have not been able to find any clear explanation of this in either the Response, or your Declaration attached thereto, or any of your prior filings.

I see that on May 3, 2016 in the PA proceedings you filed a Motion to Reassess Damages ("MRD") that included $135,300 in sanctions, and I see that this exact amount was subtracted by the PA court on July 7, 2016 when awarding your client $141,102.71. The amount awarded matches *exactly* the sum of *only* the principal, interest and legal fees you claimed in your MRD, but not sanctions.

The [apparently mistaken] statements in pleadings of Debtors' PA counsel made after July 7, 2016 obviously do not change the court's ruling on July 7, 2016. Neither do the court's subsequent (and perhaps erroneous) characterizations of what the judgment amount "appears" to include.

In your Response, you seem to state that $141,102.71 included sanctions ("...Judge Carpenter imposed sanctions against them in reassessing the judgment...", see page 17 of your Response). However, this is an indirect averment where you refer to Debtors' PA counsel's words rather than state your position. In Paragraph 30 of your Declaration (attached to the Response) you also say that "The Motion to Reassess Damages also sought imposition of sanctions against Debtors". However, when you describe the ruling on the MRD in Paragraph 38, all you say is that "Judge Carpenter ... reassessed damages against [Debtors] at $141,102.71" but notably fail to state whether the $141,102.71 included any sanctions, and if so, how much.

None of the subsequent paragraphs of your Declaration addresses the question directly either. You seem to rely heavily on Debtors' PA counsel's [apparently mistaken] belief that the $141,102.71 included sanctions, and the court's statements on the subject.

I am particularly perplexed by your claim of $98,600 in sanctions owed in your January 2, 2019 filing in this court. You do not provide a calculation, but it appears that $98,600 represents $100 times the number of days from May 3, 2016 until the date of your filing in Florida. If your position is that the $100/day sanctions have always been "accruing" and "due and owing" since August 2012, why are you only claiming $98,600, which are the sanctions for the period from May 3, 2016 onward? If this is because you believe $135,300 in sanctions prior to May 3, 2016 were already included in $141,102.71, this is of course understandable, but then it takes me back to the question of whether this is indeed your position.

Accordingly, please clarify your position on the following two very simple questions:

1. Does $141,102.71 include any sanctions, and if so, how much?
2. Does your current $400,000 POC include pre-MRD sanctions and if so, how much?

I would appreciate a direct answer to these two simple questions, which are basic factual clarifications to addressing what appears to be an ambiguity as to the amount of pre-MRD sanctions in your pleadings and declarations, before tomorrow's hearing so the court can be adequately informed. Despite reviewing all of your filings in the POC/Objection and the Motion for Sanctions proceedings, I have been unable to get clarity on the above.

Additionally, so that it does not become a contested issue, I see that you are spending a lot of time trying to establish that there were pre-bankruptcy settlement discussions. Please note that my clients do *not* dispute that there were exploratory settlement discussions involving their counsel and you in or around April 2018. As stated in the Motion for Sanctions, my clients believe that this is irrelevant to the issue of your demand on June 21, 2018, and disagree with your description of events. However, since you clearly believe that the pre-bankruptcy negotiations somehow justified what you did on June 21, 2018, please feel free to make that argument, and you will face no opposition from me or Debtors on whether pre-bankruptcy negotiations took place.

On exactly what took place, there is a notable discrepancy regarding whether (a) there was an exploration of settlement through Steven Maniloff, as Marina Kats already confirmed in her declaration, and through Linda-Alle Murphy, which Ms. Murphy will confirm shortly by an additional declaration that will sharply contradict your version of facts, or (b) actual settlement offers to your client. However, this discrepancy is immaterial. While my clients did not authorize any fixed-amount monetary offers, and their PA counsel did not make any such offers to you, the PA counsel's exploration of possible settlement prior to the bankruptcy filing is not disputed. I see no material difference that (a) or (b) would have on the interpretation of your actions on June 21, 2018.

Coming back to the two questions above, please provide a response as soon as possible clarifying your position.

Leonid Nerdinsky, Esq.
Nerdinsky Law Group, P.A.
Hallmark of Hollywood Offices
3800 South Ocean Drive, Suite 242
Hollywood Beach, FL 33019
Tel.: 954-237-6307
Fax: 954-416-6188
E-mail: lnerdinsky@nerdinskylaw.com
Website: www.nerdinskylaw.com

The information contained in this transmission may contain privileged and confidential information. It is intended only for the use of the person(s) named above. If you are not the intended recipient, you are hereby notified that any review, dissemination, distribution or duplication of this communication is strictly prohibited. If you are not the intended recipient, please contact the sender by reply email and destroy all copies of the original message. To reply to our email administrator directly, please send an email to lnerdinsky@nerdinskylaw.com.

Tax Advice Disclosure: To ensure compliance with requirements imposed by the IRS under Circular 230, we inform you that any U.S. federal tax advice contained in this communication (including any attachments), unless otherwise specifically stated, was not intended or written to be used, and cannot be used, for the purpose of (1) avoiding penalties under the Internal Revenue Code or (2) promoting, marketing or recommending to another party any matters addressed herein.