**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**
www.flsb.uscourts.gov

In re:

    YURI LYUBARSKY and                               Case No: 18-16659-LMI
    OLGA LYUBARSKY                                 Chapter 7

        Debtors.

_____/

## DEBTORS' SUPPLEMENTAL BRIEF IN SUPPORT OF MOTION FOR SANCTIONS

Debtors, Yuri Lyubarsky and Olga Lyubarsky ("Debtors"), through undersigned counsel, hereby file this Supplemental Brief supplementing their Motion for Sanctions [Docket items #74, #81, #90]. This Supplemental Brief is filed pursuant to the Court's instructions at the hearing on April 3, 2019 and as set out in Paragraph 2 the Order Specially Setting Evidentiary Hearing [Docket item #97]. The purpose of this Supplemental Brief is (a) to provide clarification regarding statutes under which Debtors seek relief, and (b) to provide legal authority and argument on questions of law expected to be at issue during the upcoming evidentiary hearing.

An additional purpose of this Supplemental Brief is to supplement the Motion for Sanctions with information on further perjury perpetrated by Respondents in filings related to the present Motion for Sanctions itself. Attached as Exhibit B is Debtors' Second Supplement to the Motion for Sanctions describing these additional violations. Rather than file a separate motion for sanctions in regard to violations described in Exhibit B, Debtors respectfully request that the Court incorporate a review of these facts in the evidentiary hearing on the present Motion for Sanctions.

Terms defined and used in prior pleadings relating to the Motion for Sanctions are hereby adopted, and further supplemented with the following additional defined terms:

- "Respondents" – Vertonix and Rayz;

- "POC Response" - Vertonix's Response to Objection to Claim [ECF #54];

- "MFS Response" – Vertonix's/Rayz' Response to Motion for Sanctions [ECF #86];

- "Rayz POC Declaration" - Rayz' declaration attached as Ex. 3 to POC Response;

- "Rayz MFS Declaration" - Rayz' declaration attached as Ex. 1 to MFS Response;

- "Nerdinsky Declaration" – declaration attached as Ex. A to Motion for Sanctions;

- "Alle-Murphy Declaration" – declaration of Linda Alle-Murphy included on pages 4-5 of Supplement to Motion for Sanctions [ECF #90];

- "Kats Declarations" – declarations of Marina Kats attached to Motion for Sanctions and on pages 2-3 of Supplement to Motion for Sanctions [ECF #90].

## I.     RULES, STATUTES AND CASE LAW PROVIDING RELIEF

Debtors seek relief (including attorneys fees and punitive damages) under Sections 362(k)(1) and 105(a) of the Bankruptcy Code and Fed.R.Bankr.P. Rules 3001[1], 9011 and 28 U.S.C. § 1927 against creditor Vertonix and/or its counsel Rayz. Below is a brief summary of grounds for relief under each of the above statutes.

### A.     Sanctions for Violating Rule 3001

Rule 3001 governs the filing of proofs of claim by creditors. The full text of section (c) of Rule 3001, attached hereto as Exhibit A, is incorporated herein by reference as if set forth in full.

Rule 3001(c)(1) requires a creditor to file with the POC a copy of the writing on which the claim is based. In the present case, Respondents filed outdated judgments from 2011 (for

---

[1] Rule 3001 and 28 U.S.C. § 1927 were not included in the list of rules and statutes under which relief was sought in the Motion for Sanctions. They are hereby added by Debtors as additional statutes under which relief is sought.

$184,264.19) and from 2012 (for $100 per day henceforth) but withheld from their 88-page POC a much more contemporaneous 2016 judgment (for a substantially amount of $141,102.71) which reassessed damages under both prior judgments and included a credit for an intervening $175,000 payment by Debtors. After Debtors objected, Respondents revealed in their subsequent POC Response that their POC was *actually* based on the withheld 2016 judgment and amounts accruing thereafter. Respondents agreed that all pre-2016 amounts were already included in the withheld 2016 judgment. As such the writing on which Respondents' claim was based, namely the 2016 judgment, was not included in the POC, in violation of Rule 3001(c)(1).

Rule 3001(c)(2)(A) requires creditors in individual debtor cases who seek to recover "interest, fees, expenses, or other charges" to include "an itemized statement of the interest, fees, expenses, or charges shall be filed with the proof of claim" with the POC. No such itemized statement was filed by Respondents with their POC.

If a creditor fails to comply with these requirements, under Rule 3001(c)(2)(D), "the court may, after notice and hearing, take either or both of the following actions: (i) preclude the holder from presenting the omitted information, in any form, as evidence in any contested matter or adversary proceeding in the case, unless the court determines that the failure was substantially justified or is harmless; or (ii) award other appropriate relief, including reasonable expenses and attorney's fees caused by the failure."

In this case, the omission of information from the POC by Respondents was clearly neither substantially justified nor harmless. Respondents withheld the 2016 judgment reassessing damages at a far lower amount than the $184,264.19 and the $100/day judgments included with the POC which had already been merged into the amount reassessed in 2016, and failed to include a breakdown of their purported $400,000 claim even though the vast majority of which consisted of

interest, legal fees and [purportedly] sanctions. As Debtors uncovered after significant effort and research, at most $17,500.15 of the $400,000 claimed by Respondents was the original principal.

As Debtors argue in the Motion for Sanctions and intend to demonstrate during the upcoming trial, these "omissions" were not accidental, but rather an intentional part of a pattern of disregard for rules and law, gamesmanship of the bankruptcy process, and outright fraud and criminal misconduct that permeates Respondents' actions in these bankruptcy proceedings.

Debtors seek the following relief under Rule 3001(c)(2)(D):

- an order by this Court precluding Respondents from relying on, seeking "clarification" of, or relying on such "clarification" of, any documents not filed with their POC pursuant to Rule 3001(c)(2)(D)(i) which applies to "any contested matter or adversary proceeding in the case";

- an order pursuant to Rule 3001(c)(2)(D)(ii) awarding reasonable legal fees and costs incurred by Debtors and their counsel as a result of the omission, including all legal fees and costs in POC Objection and Motion for Sanctions proceedings; and

- an order pursuant to Rule 3001(c)(2)(D)(ii) awarding Debtors damages and sanctions if the Court determines that Respondents willfully violated Rule 3001.

The Trustee has filed her own objection to Vertonix's POC under Rule 3001 [ECF #98]. It is respectfully submitted that, in addition to the arguments made by the Trustee, by withholding the 2016 judgment and providing no itemized statement of their claim, Respondents abandoned their right to claim any legal fees and interest included in the 2016 judgment and accruing afterwards. The "principal and interest" component of the 2016 judgment was at most $34,251.44.

**B.      Sanctions <u>Must</u> be Awarded for Violating Section 362(k)(1)**

The automatic stay is designed to give debtors "a breathing spell from collection efforts," *In re Printup*, 264 B.R. 169, 173 (Bankr. E.D. Tenn. 2001), and although it does not prohibit all communications from a creditor to a debtor, a stay violation is made out by actions that are coercive or harassing in nature. In this case it is undisputed that on June 21, 2018 Respondents demanded that Debtors make a $250,000 payment by June 25, 2018. It is also undisputed that at the same time as they made this demand, Respondents also stated that Debtors were committing criminal misconduct and threatened to report it to the U.S. Attorney and the Trustee assigned to their case.

Although it is disputed whether the threat was extortionate by nature of being expressly tied to the demand for payment, clearly, there was no purpose to be served by this demand and the accompanying allegations other than to threaten, harass and intimidate the Debtors to coerce them into paying the $250,000. See, *Weary, Jr. v. Stephanie Poteat*, No. 15-5159 (6th Cir. 2015)[2]; *Varela v. Ocasio (In re Ocasio)*, 272 B.R. 815, 820 (B.A.P. 1st Cir. 2002) (Creditor violated automatic stay by threatening to collect $425 debt: "I'm going to give you one day for you to come up with the money; otherwise I know where I can get it from. I'm going to get it from your face.").

Violations of the automatic stay are prosecuted by motion under § 362. A willful violation of the automatic stay requires only that the creditor knew of the stay and acted intentionally in violation of the stay. *TranSouth Financial Corp. v. Sharon (In re Sharon)*, 234 B.R. 676, 687 (B.A.P. 6th Cir. 1999). "[P]roof of a specific intent to violate the stay" is not required, but instead only "an intentional violation by a party aware of the bankruptcy filing." *Id.* Creditors have an affirmative duty to cease collection efforts. "[C]ourts are unanimous in their conclusion that a good

---

[2] Unpublished decision at: https://law.justia.com/cases/federal/appellate-courts/ca6/15-5159/15-5159-2015-09-30.html or http://www.ca6.uscourts.gov/opinions.pdf/15a0662n-06.pdf

faith mistake of the law, a legitimate dispute as to legal rights or even good faith reliance on an attorney's advice do not relieve a willful violator from the consequences of his act." *In re Timbs,* 178 B.R. 989, 997 (Bankr. E.D. Tenn. 1994) (citation omitted). In this case, it is undisputed that Respondents, knowing a bankruptcy petition had been filed, made a demand for payment, nonetheless.

Once as here, a debtor proves an intentional violation of the stay, § 362(k) requires that they recover actual damages, including costs and attorney's fees. "An individual seeking damages under § 362(k) must prove, by a preponderance of the evidence, that damages were 'proximately caused by and reasonably incurred as a result of the violation of the automatic stay.'" *In re Baer*, No. 11-8062, 2012 WL 2368698, at *10 (B.A.P. 6th Cir. June 22, 2012) (quoting *Grine v. Chambers (In re Grine)*, 439 B.R. 461, 471 (Bankr. N.D. Ohio 2010) (citing *Archer v. Macomb County Bank*, 853 F.2d 497 (6th Cir. 1988))).

Section 362(k) also allows for an award of punitive damages "in appropriate circumstances." "Although courts are required to award actual damages to an injured [debtor] for violations of the automatic stay, the imposition of punitive damages is left to the court's discretion." *Tyson v. Hunt (In re Tyson)*, 450 B.R. 754, 766 (Bankr. W.D. Tenn. 2011) (citation omitted). Factors courts consider are "'the nature of the creditor's conduct, the creditor's ability to pay the damages and the creditor's motives, and any provocation by the debtor.'" *Hunt v. United States (In re Tyson)*, 450 B.R. 754, 766 (Bankr. W.D. Tenn. 2011) (quoting *Emberton v. Lobb (In re Emberton)*, 263 B.R. 817 (Bankr. W.D. Ky. 2001)).

Here, Respondents not only made the inappropriate $250,000 demand, alleged criminal violations by Debtors and threatened to report them to the U.S. Attorney and the Trustee, but they also did all this knowing that Mr. Lyubarsky suffered from severe panic disorder, a psychiatric

condition that was the cause of his disability. Accordingly, punitive damages are clearly justified.

Once a court finds that appropriate circumstances exist for an award of punitive damages, the next issue is the proper amount. The Supreme Court has looked at "(1) the degree of reprehensibility of the defendant's conduct; (2) the disparity between the actual or potential harm suffered by the plaintiff and the punitive damages award; and (3) the difference between the punitive damages awarded by the jury and the civil penalties authorized or imposed in comparable cases" in determining the amount of punitive damages. *State Farm v. Chambers*, 538 U.S. at 418. The Court called the first factor "perhaps the most important indicium of the reasonableness of a punitive damages award." *BMW of North America, Inc. v. Gore*, 517 U.S. 559, 574 (1996).

Following the Supreme Court's test in this case:

(1) "The degree of reprehensibility of the defendant's conduct" – the most important indicium. Respondents' conduct here is clearly extremely reprehensible. The violation of the automatic stay was committed in the most egregious manner imaginable on June 21, 2018. When Debtors' counsel wrote to Rayz that his conduct was inappropriate, Rayz immediately responded that "neither myself nor my client really care" about it.

(2) "The disparity between the actual or potential harm suffered by the plaintiff and the punitive damages award." Here, the potential *financial* harm from the automatic stay violation alone was $250,000, the amount Debtors were supposed to pay pursuant to Respondents' improper demand. Additionally, the financial harm from the purportedly secured claim was an additional $400,000. Additionally, the *actual* harm was the extreme anxiety and emotional turmoil brought upon Debtors by Respondents' demand, the exacerbation of Mr.

Lyubarsky's psychiatric condition, and the tremendous effort Debtors and their counsel expended on uncovering and deciphering the withheld documents and prosecuting the POC Objection and the Motion for Sanctions.

(3) <u>"The difference between the punitive damages awarded by the jury and the civil penalties authorized or imposed in comparable cases."</u> In similar cases punitive damages were awarded for automatic stay violations alone as a multiple of the potential or actual harm. In an analogous[3] bankruptcy case, the Bankruptcy Court imposed a $250,000 punitive damage award against a creditor, Nationstar Mortgage ("Nationstar") for, among other failings, filing an erroneous transfer of claim in a debtors' bankruptcy proceeding. See *In re Mocella*, 552 B.R. 706, No. 10-42287 (Bankr. N.D. Ohio 2016). This case highlights that creditors in bankruptcy proceedings must not only cease certain activities (i.e. sending "demand letters") but must also have controls in place to verify the information and documents submitted to the Bankruptcy Courts in connection with bankruptcy proceedings. Despite Nationstar's allegation that it did not act with "nefarious and malevolent" intent, the Bankruptcy Court found that intent was immaterial to a finding of a willful violation of the automatic stay. The Court determined that the Debtors incurred actual damages in the amount of $17,750.00, as well as punitive damages in the amount of $250,000.

---

[3] The court described the creditor's conduct using words like:
- utter lack of adequate review;
- patently unreasonable;
- wanton;
- recklessly indifferent; and
- wholly unreasonable.

The court was further perturbed that the creditor "never apologized or even acknowledged" that filing the bogus claim-transfer notice harmed the debtor. 552 B.R. 706 at 732-3.

In another example, the Third Circuit directed the Bankruptcy Court to award damages in the amount of $88,480 for violating an automatic stay and discharge injunction. Debtor was awarded $1,740 in lost wages, $2,500 in attorney's fees, $10,000 for plaintiff's emotional distress, and $30,000 in punitive damages.

It is respectfully submitted that an award for the violation of the automatic stay should be a multiple of the $250,000 directly intended harm from the inappropriate and extortionate demand; whereas fraud on the court should be punished with a sanction that takes into account the $400,000 amount of the claim in reference to which the fraud was perpetrated.

### C.  Sanctions May be Awarded Under Section 105 of the Bankruptcy Code

The filing of a false proof of claim in a bankruptcy case is a crime under 18 U.S.C. § 152(4). Although a crime, Congress did not create any private right of action for violation of § 152(4). *E.g., Clayton v. Raleigh Federal Savings Bank*, No. 96-1696, 1997 U.S. App. LEXIS 3503 (4th Cir. Feb. 27, 1997) ("We agree with the magistrate judge that neither statute cited in the amended complaint [including 18 U.S.C. § 152(4)] gives rise to a private cause of action."); see also *Heavrin v. Boeing Capital Corp.*, 246 F. Supp.2d 728, 731 (W.D. Ky 2003) (same), aff'd, 384 F.3d 199 (6th Cir. 2004).

Although the federal criminal statute prohibiting the falsifying of a proof of claim does not provide a party with a civil right of action, a bankruptcy court is empowered by 11 U.S.C. § 105(a) to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." The statute specifically allows a bankruptcy court to take "any action . . . necessary or appropriate . . . to prevent an abuse of process." *Id.*; see also *Marrama v. Citizens Bank of Mass*. 549 U.S. 365, 375 (2007) (noting that bankruptcy courts have "broad authority" under § 105(a)). As stated by the Court of Appeals for the First Circuit in *Bessette v. Avco Fin.*

*Servs.*, 230 F.3d 439, 444-45 (1 Cir. 2000), "§ 105 does not itself create a private right of action, but a court may invoke § 105(a) 'if the equitable remedy utilized is demonstrably necessary to preserve a right elsewhere provided in the Code,' so long as the court acts consistent with the Code and does not alter the Code's distribution or other substantive rights."

When a creditor files a false or fraudulent proof of claim, that filing contravenes the purpose of a specific bankruptcy statute and rule. Namely, under 11 U.S.C. § 501, a creditor is allowed to file a proof of claim, and under § 502(a), the mere filing of a proof of claim means that it is deemed allowed. Under Fed. R. Bankr. P. 3001(f), a proof of claim filed in accordance with the Bankruptcy Rules constitutes prima facie evidence of the validity and amount of the claim. When a creditor files a false or fraudulent proof of claim, which is deemed allowed by § 502(a), and entitled to prima facie presumption of validity and amount by Rule 3001(f), the creditor is abusing the bankruptcy process. E.g*., Campbell v. Countrywide Home Loans, Inc*., 545 F.3d 348, 356 n.1 (5th Cir. 2008) (noting that a bankruptcy court may use § 105 to impose sanctions on parties that abuse the procedural mechanism related to the filing of a proof of claim); B-*Real, LLC v. Chaussee (In re Chaussee)*, 399 B.R. 225, 241 (B.A.P. 9th Cir. 2008) ("[I]f a purported creditor abuses the claims process, we are confident that § 105(a) provides an effective mechanism for addressing that misconduct."); *Rojas v. Citi Corp Trust Bank FSB (In re Rojas)*, No. 09-7003, 2009 Bankr. LEXIS 2220 at *27 (Bankr. S.D. Tex. Aug 12, 2009) (holding that § 105(a) may be used in support of § 502 and Rule 3001 to hold a creditor in contempt for filing a false proof of claim); *In re Varona*, 388 B.R. 705, 717 (Bankr. E.D. Va. 2008) ("[Section] 105 may be used to sanction the filing of a proof of claim violative of the Bankruptcy Code . . . . The filing of a false or fraudulent claim would unquestionably constitute an abuse of the claims process as well as an attempted fraud upon the court.").

Here, Vertonix and its counsel filed a false and fraudulent claim that unquestionably constitutes an abuse of the claims process as well as an attempted fraud upon the court. Respondents not only refused to withdraw or amend the claim when confronted with the falsity and deficiencies of the claim but chose to embark on a path of vexatious litigation seeking to recover the claim, nonetheless. The case law under 11 U.S.C. § 105(a) recognizes a cause of action in favor of the debtor for contempt under when a creditor seeks to abuse the provisions of the Bankruptcy Code – namely §§ 501 and 502 and Rule 3001 – by filing a false or fraudulent proof of claim. Holding the Respondents in contempt under § 105 is an appropriate remedy to prevent an abuse of the proof of claim process and to safeguard the integrity of the proof of claim process.

It is of note in this case the fraud perpetrated by Respondents in filing and prosecuting their claim rests not only, and not even as much in *filing* documents improperly, but in *withholding* documents and information from their filings, and in obfuscating the meaning of documents already filed. The withholding of the 2016 judgment from the proof of claim, and the withholding of the information pertaining to $135,300 sanctions are alleged by Debtors to have been intentional, and part of Respondents' modus operandi in this and prior litigation.

As Debtors intend to prove at trial through witness testimony, further fraud was repeatedly perpetrated by Respondents by filing sworn declarations containing false statements of fact. The pattern of obfuscation continued throughout this case. The penalty for filing a false statement on a claim transfer is up to $500,000 under 18 U.S.C. §§ 152 & 3571. This is a factor the court may consider in awarding punitive damages. See *In Re Mocella,* 552 B.R. 706, 733 (Bankr.Ct. N.D. OH 2016).

Intentional violation of the automatic stay is also punishable under the court's civil contempt powers. The authority under 11 U.S.C. §105 is broad enough to allow the bankruptcy

court to use the civil contempt power to police court orders including enforcing the automatic stay. *Jore Engineering Inc. v. IRS*, 92 F.3d 1539 (11th Cir. 1996). Even though the parties dispute whether threats were made in a "quid pro quo" fashion in relation to Debtors' compliance with the $250,000 demand by the 4-day deadline, the facts here are undisputed that the Respondents knew of the bankruptcy filing and therefore knowingly and willfully violated the automatic stay by demanding a $250,000 payment to "settle" its claim after the petition was filed. Indeed, the first e-mail communication from Rayz to Nerdinsky requesting a meeting was sent at 9:31 a.m. on June 15, 2018, the morning after Debtors filed their schedules (which were filed on June 14, 2018). Not only was the $250,000 demand made knowingly and willfully, it was a direct and immediate reaction by Respondents to Debtors' bankruptcy filing.

The purposes of civil contempt sanctions "are to (1) compensate the claimant for losses and expenses it incurred because of the contemptuous conduct and (2) coerce the contemnor into complying with the court order or injunction." *Sizzler Family Steakhouses v. Western Sizzlin Steakhouses Inc.*, 793 F.2d 1529, 1534 (11th Cir. 1986). Remedies available upon a finding of civil contempt include an award of actual damages and attorney's fees and expenses. *In re Ware*, 2003 W. L. 1960454 (Bankr. M.D.N.C. 2003), 239 B.R. at 623*; In re Cox*, 214 B.R. 635 (Bankr. N.D. Ala. 1997); *Carrico*, 206 B.R. at 4217; (*Better Homes of Virginia*), 52 B.R. at 431. In addition, so long as the purpose is to coerce compliance with an order of the court, a bankruptcy court may impose a fine conditioned on the observance of a future course of conduct, such as compliance with the order in question. Although bankruptcy law is loath to award attorney's fees absent some basis in statute or contract, an exception arises where fee-shifting is used as an equitable remedy to further the interest of justice and rectify certain aggravated conduct amounting to abusive or bad-faith litigation practices such as willful disobedience of a court order. See *In re Nangle*, 281

B.R. 654, 659 (8th Cir. 2002).

### D.  Sanctions May Be Awarded under Rule 9011

Bankruptcy courts are vested with the inherent and statutory authority to sanction litigants for acting in bad faith and engaging in otherwise unreasonable or inappropriate conduct. Rule 9011 authorizes a bankruptcy court to impose sanctions upon attorneys, law firms or parties for the filing and prosecution of pleadings and other papers that are found to be frivolous under Rule 9011(b). Here, no 9011 safe harbor notice was sent to Respondents prior to the filing of the Motion for Sanctions. However, the court may utilize its own powers in cases such as this where the signed pleadings and other papers have not been withdrawn in the face of challenge and the offending party continues to compound the violations by repeatedly filing more offending documents.

In any event, since there was no way to undo most of the harm alleged in the Motion for Sanctions (such as harm from Respondents' *withholding* of documents which took Debtors seven months to uncover; or the harm from false factual declarations made by Rayz in his affidavits), the Rule 9011 safe harbor procedure would be an exercise in futility in the context of this case. The sanctionable conduct included the Respondents intentionally filing an improper proof of claim, the largest claim in amount in these bankruptcy proceedings which was also allegedly fully secured, without attaching the one specific document upon which the claim was based or providing any itemization of the claim's composition despite the vast bulk of the claim not being the principal amount of the debt (all of which would have flagged the improper nature of the claim, or at least permitted Debtors and others to properly analyze the composition of its amount and effectively address the perceived improprieties), all in violation of multiple applicable rules. There is no meaningful 9011 safe harbor notice that Debtors could issue after they discovered the improper withholding (rather than filing) of key documents that were required to be attached to a written

submission, such discovery following extensive research by Debtors' counsel and multiple filings by both sides. It was a harm that took a lot of effort to uncover, and could not be easily undone by, for example, withdrawing the claim. All Debtors could ask at that late stage, when all omissions were finally uncovered, was to preclude subsequent attachment and use of the withheld documents, and monetary sanctions for the prior withholding.

The filing of a proof of claim is clearly subject to review under Rule 9011. See *In re Cassell*, 254 B.R. 687 (6th Cir. BAP 2000) ("Proofs of claim must meet the standards of [Rule 9011]"); *In re Berghoff*, 2006 WL 1716299 (Bankr.N.D.Ohio 2006) (Court issued show cause order for mortgage lender who inadvertently continued to file proofs of claim that included pre-petition attorney fees, despite prior Court opinion in otherwise unrelated case that such attorney fees were not allowable; mortgage lender found to violate Rule 9011 by asserting claim not warranted by existing law). See also *In re Abramson*, 313 B.R. 195, 198 (Bankr.W.D.Pa.2004) (Rule 9011 applies to claims filed in bankruptcy); *In re Dansereau*, 274 B.R. 686, 687 (Bankr. W.D.Tex.2002) ("Rule 9011 applies to proofs of claim filed in bankruptcy cases").

By presenting to the court (whether by signing, filing, submitting, or later advocating) a petition, pleading, written motion, or other paper, an attorney or unrepresented party is certifying that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances, —

(1) it is not being presented for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation;

(2) the claims, defenses, and other legal contentions therein are warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law;

(3) the allegations and other factual contentions have evidentiary support or, if specifically, so identified, are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery; and

(4) the denials of factual contentions are warranted on the evidence or, if specifically, so identified, are reasonably based on a lack of information or belief.

The facts set out below surrounding the insufficiency of Respondents' proof of claim, the Respondents' filings in opposition to the Debtors' object to the proof of claim, the Respondents' failure to take any steps to obtain leave to amend their claim, all evince an intentional non-compliance with long-established bankruptcy procedures for filing proofs of claim. This bankruptcy court is the front lines of this bankruptcy litigation and is clearly best positioned to decide the Rule 9011 violation in question. *In re Cascade Energy & Metals Corp.*, 87 F.3d 1146 (10th Cir.1996)(quoting *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 403-04, 110 S. Ct. 2447, 110 L. Ed. 2d 359 (1990)).

### E.    Sanctions May be Awarded Under 28 U.S.C. 1927

The bankruptcy court also has authority to sanction counsel for Vertonix pursuant to 28 U.S.C. § 1927, which permits a court to order an attorney to "satisfy personally the excess costs, expenses, and attorneys' fees incurred" where the attorney "so multiplies the proceedings in any case unreasonably and vexatiously…." *In re Bavelis*, 743 Fed. Appx. 670 (6th Cir. 2018). Based on the conduct Rayz in, among other things, concealing the superseding 2016 Court of Common Pleas order that set the claim amount, and, first, improperly using outdated 2011-2012 judgments to support the amount of the proof of claim; and then using the 2016 order as a crux to support the grossly inflated claim while withholding information about the $135,300 sanctions that were denied by the 2016 order, his conduct "'objectively fell far short of [his duty of candor to the

court]" and his actions constituted unreasonable and vexatious litigation tactics under § 1927. *In re Bavelis*, 743 Fed. Appx. at 673-674.

Courts have pointed to a four-part test to determine whether sanctions ae appropriate. The test assesses whether an attorney has "(1) multiplied proceedings; (2) in an unreasonable and vexatious manner; (3) thereby increasing the cost of the proceedings; and (4) doing so in bad faith or by intentional misconduct." *In re Prosser*, 777 F.3d 154 (3d Cir. 2015). The determination of bad faith can be made implicitly and may be indicated by "findings that the claims advanced were meritless, that counsel knew or should have known this, and that the motive for filing the suit was for an improper purpose such as harassment." In this case the "suit" is the proof of claim filed by Respondents and their response to the objection to the claim.

## II.    ARGUMENT

This case is an extreme example of misconduct of a creditor and especially creditor's counsel where, first, in a space of several weeks of June-July 2018, multiple egregious violations of bankruptcy rules and law were committed by Rayz and Vertonix, and then, multiple further violations were committed in a continued attempt to promote, justify and cover up the prior violations. This pattern continued even into the present Motion for Sanctions proceedings, with new false statements made by Rayz in the MFS Declaration on April 1, 2019 to establish what he and his client apparently believed were relevant facts, justifying the continued frivolous promotion of an obviously false legal argument in an effort to defend prior misconduct[4].

### 1.    <u>Violation of the Automatic Stay.</u>

---

[4] Namely, the frivolous argument that Respondents can make demands on Debtors during the automatic stay as long as these demands are "consistent" with their pre-bankruptcy demands (MFS Response, Page 6, Lines 10-11).

The facts relating to the meeting on June 21, 2018 that are sufficient to establish a clear violation of the automatic stay are now well documented and agreed by both Rayz and Nerdinsky. While there is a distinct (and bitterly disputed) difference between Rayz and Nerdinsky regarding "blackmail" details which make the violation even more egregious (which facts remain the subject of the forthcoming evidentiary hearing), following the filing of the MFS Response and the MFS Declaration by Respondents on April 1, 2019, it is no longer disputed that Rayz made a $250,000 <u>demand</u> on Debtors (see important footnote[5] regarding Rayz and Vertonix's notoriously changing their factual narrative on this subject). Rayz also admits that he made statements about alleged criminal violations committed by Debtors, although he claims these statements were "separate" from the demand. Finally, there is a small discrepancy regarding whether Rayz imposed the June 25, 2018 deadline or whether Nerdinsky requested it. On everything else, the parties agree.

Specifically, both Rayz and Nerdinsky presently agree on the following principal facts:

---

[5] It is of note that Nerdinsky and Debtors have always consistently described the $250,000 attempt as a "demand" in all their filings and communications (POC Objection, Motion for Sanctions, declarations attached to both, and June 2018 communications from Nerdinsky to Rayz and the Trustee). By contrast, Respondents initially carefully avoided using the word "demand" to describe what took place on June 21, 2018, before finally admitting it on April 1, 2019, in the following shifting *factual* narrative:

- First, in his June 26, 2018 e-mail to Nerdinsky, Rayz stated that he "*communicated my client's willingness to accept $250,000, provided the matter would be finalized by Monday, June 25, 2018*". It is hard to conjure up a more contorted description of what was actually a $250,000 demand.
- Then, in the POC Objection and POC Declaration filed on January 2, 2019, while describing all pre-bankruptcy attempts to obtain payment from Debtors as "demands" or "counter-demands", Rayz and Vertonix again carefully avoided the use of the word "demand" to describe what happened on June 21, 2018, instead stating that Rayz told Nerdinsky that "*Vertonix would accept a lump sum payment of $250,000.*" (POC Declaration, #139 and POC Response, #110).
- This finally changed following the filing of the Motion for Sanctions by Debtors containing Nerdinsky's contemporaneous notes taken right after the meeting. While still using evasive language such as "resolve the claims for $250,000" and trying to justify their demand as a "counter-offer," Respondents finally admitted that they actually *demanded* $250,000 from Debtors ("*there was nothing inappropriate about this **demand**.*", MFS Response, Page 6, Line 7 and "*I also explained to Mr. Nerdinsky the basis for Vertonix's **demand**.*", MFS Declaration, #89, emphasis added in both instances).

- a $250,000 demand was made by Rayz/Vertonix on Debtors on June 21, 2018;

- a deadline of June 25, 2018 was imposed on Debtors;

- the demand was made without the participation of the Trustee or notice to her;

- statements were made by Rayz about alleged criminal behavior of Debtors.

These facts unequivocally establish a violation of the automatic stay. See, *Weary, Jr. v. Stephanie Poteat*, No. 15-5159 (6th Cir. 2015).

The principal difference between Rayz' and Nerdinsky's versions of events is related to whether the $250,000 demand on Debtors was made in a blackmail / extortionate fashion, or "simply" as a $250,000 demand. In this, the shifting *factual* narrative by Rayz is again telling:

- Both Rayz and Nerdinsky agree that Rayz told Nerdinsky that Debtors' bankruptcy petition was fraudulent and criminal;

- In his e-mail to Nerdinsky on June 26, 2018, Rayz wrote that he "expressed my client's sincere belief that Mr. and Mrs. Lyubarsky have engaged in criminal misconduct" (Motion for Sanctions, Exhibit A3);

- In the POC Declaration, Rayz provided a more benign description of events, stating that he "expressly communicated to Mr. Nerdinsky Vertonix's position that Debtors' bankruptcy filing contained material omissions concerning their assets" (POC Declaration, #80) but did not threaten to release this information;

- In the MFS Declaration, Rayz nonsensically states that he only "disclosed this information in good faith, to allow Mr. Nerdinsky an opportunity to amend Debtors' filings" (MFS Declaration, #84) and that no threat was being made;

- In other words, according to Rayz' latest version of events, the two completely unrelated purposes of his visit to Nerdinsky on June 21, 2018 were (a) to make

a $250,000 demand with a 4-day deadline and (b) to help a fellow practitioner "in good faith" to amend his clients' schedules.

- It is preposterous to claim that even though both (a) and (b) were made in the same conversation during the same purposefully-set meeting, there was no correlation between these two topics. The version of events of June 21, 2018 that is suggested by Vertonix and supported by Rayz' declaration strains credulity and is an insult to the intelligence of any reader or fact-finder.

- While Rayz states that he showed Nerdinsky copies of records obtained and compiled with substantial effort over many years of prior discovery and a stunningly detailed "Corporate Chart" showing no less than 41(!) businesses and business associates related to Debtors, each with its/his/her business/home address (MFS Response, Exhibit 2), all this information was easily obtainable and "compiled from publicly-accessible websites" (MFS Declaration, #86);

- By contrast, Nerdinsky and all Debtors' filings from the POC Objection to this pleading consistently state that Rayz expressly threatened to release evidence he compiled on Debtors over the course of many prior years to the U.S. Attorney and instigate criminal prosecution of Debtors for bankruptcy fraud if the $250,000 demand was not met by the following Monday. This description is supported by Nerdinsky's contemporaneous notes taken on June 21, 2018 immediately after the meeting and e-mails to Rayz and Trustee on June 26, 2018. (Nerdinsky Declaration, #9-10; Motion for Sanctions, Ex. A2 and A3).

It is also agreed between the relevant parties that there were pre-bankruptcy settlement discussions (see both Rayz Declarations, declarations of Marina Kats attached to ECF 74/81 and

ECF 90 and declaration of Linda Alle-Murphy attached to ECF 90[6]).

As mentioned previously, in light of the agreed facts, it is clear that a violation of the automatic stay was committed. See, *Weary, Jr. v. Stephanie Poteat*, No. 15-5159 (6th Cir. 2015).

The pre-bankruptcy negotiations have no bearing on whether the automatic stay was breached. Indeed, the assertion by Rayz that his $250,000 demand was "consistent" with his pre-bankruptcy demand of $200,000 cuts to the heart of the failure by Respondents to understand what "stay" means. Rayz and Vertonix apparently miss the simple and obvious fact that meaning of the positive-sounding word "consistent" used by them is utterly antonymous to the meaning of the word "stay" in "automatic stay", which requires creditors to stop, or *stay*, their pre-bankruptcy actions against Debtors, particularly including all collection efforts and demands. See, *Weary, Jr. v. Stephanie Poteat*, No. 15-5159 (6th Cir. 2015).

## 2. <u>Sanctions Warranted Due to Fraud on the Court.</u>

As set forth above, the filing of a knowingly false POC is a crime under 18 U.S.C. § 152(4). The following facts are presently undisputed:

- The $184,264.19 judgment was entered in February 2011;

- The $100/day sanctions judgment was entered in July 2012;

- A $175,000 payment was made in April 2013;

---

[6] Rayz' description of his phone call with Linda Alle-Murphy, former Pennsylvania counsel for Debtors, is in stark contrast to the description provided by Ms. Alle-Murphy. Exhibit B attached hereto describes this further perjury and fraud on the court perpetrated by Rayz in providing a false description of that phone call which is diametrically opposite to that of Ms. Alle-Murphy's. In his second declaration to this court (ECF 86, Ex. 1), in trying to bolster his argument that prior offers justified his June 21, 2018 demand, Rayz falsely stated that the call from Ms. Alle-Murphy contained an offer of $80,000 which Rayz rejected, when in fact no such offer (or any offer whatsoever) was communicated by Ms. Alle-Murphy or rejected by Rayz, and in fact it was Mr. Rayz that communicated a demand to Ms. Alle-Murphy which she rejected. Rayz also falsely claims that he received advance information from Ms. Alle-Murphy about Debtors' upcoming bankruptcy petition, when in fact no such information was provided, nor could have been provided.

- Argument relating to the $100/day sanctions were submitted in May-June 2016;

- Vertonix requested $135,300 in sanctions as part of its Reassessment Motion;

- Damages under both prior judgments (2011 and 2012) were reassessed at $141,102.71 in July 2016 as part of a new judgment[7];

- The $141,102.71 was equal exactly to what Vertonix requested, less $135,300;

- In 2016-2017 Debtors' counsel and the PA court referred to $100/day sanctions being part of the reassessed judgment amount and continuing to accrue;

- Vertonix filed a POC claiming to be owed $400,000 in June 2018;

- The POC:

  o included a copy of the 2011 judgment for $184,264.19;

  o included a copy of the 2012 sanctions order for $100/day;

  o did not provide any calculation or breakdown of the $400,000 debt;

  o did not mention the 2013 payment for $175,000.00;

  o did not include a copy of the 2016 order for $141,102.71;

  o alleged that the $400,000 was secured by Guardian Benefits;

  o was signed under penalty of perjury by Eric Rayz on behalf of Vertonix;

- Debtors objected to the POC in December 2018, arguing that Vertonix withheld the $175,000 payment and the $141,102.71 order which superseded the two prior judgments and reassessed damages under them;

- Vertonix responded to the POC Objection in January 2019, acknowledging the

---

[7] While Respondents accept that sanctions under the 2012 order were included in the 2016 order, they inexplicably refuse to concede that the amount of these sanctions was zero. Respondents have refused to answer Debtors' question seeking clarification of Respondents' position as to the amount of sanctions included in the 2016 order.

omitted $175,000 payment and $141,102.71 order, but argued that the $400,000 claim was supported by $96,800 in further sanctions and $168,075 in legal fees;

- Vertonix's POC Response omitted:

  o mention that Vertonix had requested $135,300 in sanctions in 2016;

  o a copy of the Reassessment Motion containing said $135,300 request;

  o an explanation that $135,300 was excised from the 2016 order amount;

- Debtors' Motion for Sanctions filed in March 2019 argues that Respondents:

  o progressively withheld highly pertinent information from the POC and subsequent filings defending the POC;

  o had no basis for $100/day sanctions following the denial of $135,300;

  o made knowingly false statements in the POC Declaration.

- Vertonix's MFS Response:

  o argues that sanctions were included in the $141,102.71;

  o provides no explanation as to the amount of such sanctions ($135,300);

  o makes further false statements in the MFS Declaration.

The above process was a gamesmanship of the court process by Respondents, a game of "hide the ball" with Debtors until they finally identified the $135,300 amount buried in the Reassessment Motion, repeated perjury, and a multi-faceted fraud on the court. Sanctions are clearly warranted. *Campbell v. Countrywide Home Loans, Inc*., 545 F.3d 348, 356 n.1 (5th Cir. 2008) (noting that a bankruptcy court may use § 105 to impose sanctions on parties that abuse the procedural mechanism related to the filing of a proof of claim); *B-Real, LLC v. Chaussee (In re Chaussee),* 399 B.R. 225, 241 (B.A.P. 9th Cir. 2008) ("[I]f a purported creditor abuses the claims process, we are confident that § 105(a) provides an effective mechanism for addressing that

misconduct."); *Rojas v. Citi Corp Trust Bank FSB (In re Rojas)*, No. 09-7003, 2009 Bankr. LEXIS 2220 at *27 (Bankr. S.D. Tex. Aug 12, 2009) (holding that § 105(a) may be used in support of § 502 and Rule 3001 to hold a creditor in contempt for filing a false proof of claim); *In re Varona*, 388 B.R. 705, 717 (Bankr. E.D. Va. 2008) ("[Section] 105 may be used to sanction the filing of a proof of claim violative of the Bankruptcy Code . . . . The filing of a false or fraudulent claim would unquestionably constitute an abuse of the claims process as well as an attempted fraud upon the court."). It is clear that the POC did not comply with Rules 3001(c)(2)(A) and 3001(c)(2)(B) in that it did not include either the latest (2016) judgment and amount, nor an itemization of the amounts purportedly owed in addition to the principal amount. This is particularly alarming since almost the entire amount claimed by Vertonix consisted of interest, legal fees, sanctions and other charges. It is additionally alarming that the $400,000 amount claimed by Vertonix as secured is nearly penny-for-penny equal to the total amount of assets held by Guardian, plus future accruals.

Debtors argue, and intend to prove at trial, that the POC *purposefully* withheld the relevant documents and the itemization to allow Respondents to "play it by ear" depending on how the case develops, to first see what position Debtors would take and only then to provide an itemization that would best suit Respondents' needs – which is exactly what they did in January 2019 in the POC Response, again withholding a document containing the $135,300 sanction demand of which they thought Debtors were unaware (and of which at the time Debtors were, indeed, unaware).

These omissions and gamesmanship are especially egregious violations since the $400,000 amount of the POC was initially not a cents-on-the-dollar debt, but was claimed by Respondents to be secured by Debtors' otherwise exempt disability benefits. It is further troubling and "coincidental" that, as Debtors recently determined, $400,000 was virtually the exact number of

Debtors' total disability and life insurance benefits escrowed and accruing under the policies[8].

Continuing the pattern that started with a violation of Rule 3001, Respondents withheld necessary information from the subsequent POC Response defending the POC and seeking to justify an unreasonably high amount of the claim, in an attempt to obtain full recovery from Debtors' assets amounting to hundreds of thousands of dollars[9]. It was only the substantial effort undertaken by Debtors and their counsel, consisting of lengthy research into PA proceedings, filing the POC Objection, obtaining the operative May 3, 2016 Motion to Reassess Damages which contained the $135,300 request, and then filing the subsequent Motion for Sanctions, that resulted in the final disclosure of all relevant documents and the acknowledgement by Respondents of the full scope of pleadings, payments, facts and rulings that bear on the amount of their claim.

This was an exercise of Debtors repeatedly peeling the onion, with further obfuscations and withholding of documents by Respondents after each successive layer was brought to light.

Debtors should not have had to do that. Rule 3001(c)(2)(A) requiring the filing of the writing on which a claim is based, and Rule 3001(c)(2)(B) requiring a breakdown of the claim, exist for that exact purpose. The clearly intentional, methodically slow release of relevant information by Respondents, while loading their pleadings with irrelevant, extraneous and derogatory information about Debtors, accompanied by false factual statements by Rayz in his declarations attached to the POC Response and the MFS Response, and the final acknowledgement

---

[8] Debtors accrued disability benefits held by Guardian on May 31, 2018 were $171,820. Additional disability benefits accruing prior to Mr. Lyubarsky turning 65 on August 5, 2020 were expected to be $7,800 x 26 months = $202,800. The estimated value of the life insurance policy, also claimed as security for the $400,000 claim, was $25,000. See Schedule A/B which shows all these amounts. Therefore, the total amount claimed by Respondents as security for their $400,000 claim was $171,820 + $202,800 + $25,000 = $399,620. It is highly coincidental that Vertonix claimed to be owed the exact amount (off by $380) that Debtors claimed they held in exempt Guardian Policies.

[9] While Debtors' POC Objection was dismissed on April 3, 2019 for lack of standing following their settlement with the Trustee, it is undisputed Debtors had standing prior to the settlement due to the "secured" status of the claim.

of clearly relevant facts in several stages only after Debtors made the successive necessary allegations and filings and it became clear that it would be impossible to hide the ball, are sanctionable under the multiple rules cited in the previous portion of this Supplement. *In re Bavelis*, 743 Fed. Appx. at 673-674.

A bankruptcy court may impose sanctions pursuant to its inherent authority, 28 U.S.C. § 1927, and under Federal Rule of Bankruptcy Procedure 11 if a party acted in bad faith by pursuing a claim that was plainly barred by existing precedent and there was no reasonable chance of success in changing the law -- because a court is permitted to exercise its inherent power to impose sanctions when it finds that a party litigated a case in bad faith. *Barnes v. Dalton*, 158 F.3d 1212, 1214 (11th Cir. 1998).

For all the foregoing reasons and the reasons set out in the opening and responding papers of Debtors, the Debtors request that this Court award damages and impose sanctions it deems appropriate against Vertonix and Mr. Rayz for the enumerated violations of the automatic stay and the fraud perpetrated on this Court. Debtors suggest the following damages and sanctions:

1. in connection with any dispute concerning the Vertonix proof of claim, preclusion of any evidence other than what was originally attached to the Vertonix proof of claim;

2. dismissal or denial of the Vertonix claim in full, or its restriction to $17,500.51, which was the original principal and interest amount prior to the entry of the 2016 judgment;

3. an award in reimbursement of all Debtors' attorney's fees and costs associated with the claim objection and this proceeding;

4. an award in the amount of Debtors' actual damages, including an award for emotional distress resulting from the violation of the automatic stay and fraud on the court;

5. punitive damages in a multiple of the intended and actual damages found by the Court

to be the intended and direct result of the conduct of the Respondents;

6. any other and further relief the court deems appropriate in the circumstances.

Dated <u>April 30, 2019</u>

<u>/s/ Leonid Nerdinsky</u>
Leonid Nerdinsky, Esq.
Nerdinsky Law Group
3800 S Ocean Drive, Suite 242
Hollywood, FL 33019
Tel: 954-237-6307
lnerdinsky@nerdinskylaw.com


Local Counsel

<u>/s/ Gary Seitz</u>
Gary Seitz
Gellert Scali Busenkell & Brown, LLC
1628 John F. Kennedy Boulevard, Suite 1901
Philadelphia, Pennsylvania 19103
Tel: 215-238-0011
gseitz@gsblaw.com


Lead Counsel

I CERTIFY that a true and correct copy of the foregoing was served via Notice of Electronic Filing (CM/ECF) on April 30, 2019, upon all registered users in this case.

<u>/s/ Leonid Nerdinsky</u>
Leonid Nerdinsky, Esq.
Nerdinsky Law Group
3800 S Ocean Drive, Suite 242
Hollywood, FL 33019
Tel: 954-237-6307
lnerdinsky@nerdinskylaw.com

## EXHIBIT A

**Rule 3001. Proof of Claim**

[…]

   (c)  Supporting Information.

      (1) Claim Based on a Writing. Except for a claim governed by paragraph (3) of this subdivision, when a claim, or an interest in property of the debtor securing the claim, is based on a writing, a copy of the writing shall be filed with the proof of claim. If the writing has been lost or destroyed, a statement of the circumstances of the loss or destruction shall be filed with the claim.

      (2) Additional Requirements in an Individual Debtor Case; Sanctions for Failure to Comply. In a case in which the debtor is an individual:

         (A) If, in addition to its principal amount, a claim includes interest, fees, expenses, or other charges incurred before the petition was filed, an itemized statement of the interest, fees, expenses, or charges shall be filed with the proof of claim.

         (B) If a security interest is claimed in the debtor's property, a statement of the amount necessary to cure any default as of the date of the petition shall be filed with the proof of claim.

         (C) If a security interest is claimed in property that is the debtor's principal residence, the attachment prescribed by the appropriate Official Form shall be filed with the proof of claim. If an escrow account has been established in connection with the claim, an escrow account statement prepared as of the date the petition was filed and in a form consistent with applicable nonbankruptcy law shall be filed with the attachment to the proof of claim.

         (D) If the holder of a claim fails to provide any information required by this subdivision (c), the court may, after notice and hearing, take either or both of the following actions:

            (i)    preclude the holder from presenting the omitted information, in any form, as evidence in any contested matter or adversary proceeding in the case, unless the court determines that the failure was substantially justified or is harmless; or

            (ii)   award other appropriate relief, including reasonable expenses and attorney's fees caused by the failure.

[…]

**EXHIBIT B**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**
www.flsb.uscourts.gov

In re:

YURI LYUBARSKY and                    Case No: 18-16659-LMI
OLGA LYUBARSKY                         Chapter 7

     Debtors.

_____/

**DEBTORS' SECOND SUPPLEMENT IN SUPPORT OF MOTION FOR SANCTIONS**
**RELATING TO ADDITIONAL PERJURY AND FRAUD ON THE COURT**
**BY COUNSEL FOR CREDITOR VERTONIX, ARKADY "ERIC" RAYZ**

Debtors, Yuri Lyubarsky and Olga Lyubarsky ("Debtors"), through undersigned counsel, hereby supplement their Motion for Sanctions [#74, #81, #90] with descriptions of further fraud on the court by Rayz and Vertonix and perjury by Rayz committed on April 1, 2019.

Terms defined in prior pleadings relating to the Motion for Sanctions are hereby adopted.

The additional demonstrably false statements are contained in pleadings and declarations contained in the Response to the Motion for Sanctions [ECF #86] ("MFS Response").

**Materially false statements made by Rayz in his additional April 1, 2019 declaration**

On January 2, 2019, Vertonix filed its Response in Opposition to Debtors' Objection to Claim (ECF 54, "POC Response"). At the time of the POC Response, Debtors had clear standing to object to Vertonix's claim due to it being allegedly secured by disability benefits being held by Guardian. Had there been no settlement with the Trustee, as of January 2, 2019, Vertonix potentially stood to make dollar-for-dollar recovery on the full amount of its "secured" claim.

The POC Response established a narrative that Rayz' and Vertonix's actions on June 21,

2018 were permissible since the $250,000 demand was merely a "counter-offer" to a prior $80,000 offer allegedly communicated to Rayz by Debtors' Pennsylvania counsel in April 2018. While the previous $80,000 offer is irrelevant from the legal standpoint, what is important is that Rayz and Vertonix clearly did believe, and apparently still do believe, that it **was** relevant.

Further attempting to establish said narrative, the MFS Response [ECF #86] contained as Exhibit 1 the MFS Declaration by Rayz describing a telephone call between him and Linda Alle-Murphy on April 5, 2018. Rayz stated under oath that on April 5, 2018:

- Ms. Alle-Murphy communicated an $80,000 settlement offer (para. 61);

- Rayz allegedly rejected said offer (para. 64); and

- Rayz allegedly did not make any counter-offers or demands (para. 65).

Rayz further states in the MFS Declaration that he had another telephone conversation with Ms. Alle-Murphy at some point after April 27, 2018 during which he was purportedly informed by Ms. Alle-Murphy that Debtors were considering bankruptcy (para. 75).

Leaving aside the complete implausibility of Debtors' counsel suddenly (and unethically) choosing to share with Rayz, counsel for the extremely aggressive creditor Vertonix, the obviously privileged and highly sensitive information about Debtors' bankruptcy plans (and therefore giving Respondents a heads-up to try to accelerate their collection effort and maybe get to the money held by Guardian before Debtors file for bankruptcy), the descriptions of both phone calls by Rayz are materially false in ways that cannot be attributed to a memory lapse or confusion.

As Ms. Alle-Murphy describes in her declaration attached to the Supplement to the Motion for Sanctions [ECF #90, pages 4-5], Ms. Alle-Murphy is a former attorney for Debtors who no longer represents them and has moved on from her former job at the law office that used to represent Debtors (ibid. 3). While Ms. Alle-Murphy does not dispute there was an exploration of

settlement grounds (ibid. 4) and in fact confirms them with a mention of an additional conference call in February 2018 (ibid. 6), she states that, contrary to Rayz' false assertions, the following was actually discussed during calls in February-April 2018:

- The February 2018 call was only an exploration of possible settlement and included no offers (ibid. 6);

- The nature of the April 2018 calls was Ms. Alle-Murphy's request for an amount to settle the case, followed by what she describes as an egregiously high demand by Rayz which Ms. Alle-Murphy rejected on behalf of Debtors (ibid. 4-5);

- Ms. Alle-Murphy communicated no monetary offers to Rayz (ibid. 7); and

- Ms. Alle-Murphy made no disclosures of Debtors' bankruptcy plans (ibid. 8-9);

While it is common ground that the basic purpose of the communications in the pre-petition period of 2018 was to explore settlement, **in all other aspects the description provided by Ms. Alle-Murphy is diametrically opposite to that provided by Rayz**.

This is particularly important since Rayz, instead of simply describing the events as they happened, once again perverted their description to fit the legal argument he wanted to present, with utter disregard for the truth. This is consistent with his prior behavior described previously in the Motion for Sanctions.

It adds to Ms. Alle-Murphy's credibility that she no longer represents Debtors or even works for the law firm that represented Debtors in 2018, while Rayz still represents Vertonix.

Ms. Alle-Murphy is the second attorney directly contradicting sworn statements made by Rayz, to which each of the two declarants was a direct witness. The declaration of Ms. Alle-Murphy is further supported by the Supplemental Declaration of Marina Katz, Esq., another attorney for Debtors, and by Debtors themselves. All these parties state unequivocally that no

monetary offers were made or authorized in 2018, contrary to Rayz' assertions.

While in reality the exact nature of pre-bankruptcy discussions is legally irrelevant, at the time Rayz filed his declaration, he clearly believed it **was** relevant, and in fact would absolve him from the liability for the violation of the automatic stay on June 21, 2018. Accordingly, the falsities alleged by Rayz in his declaration and the pleadings of the MFS Response are intentional, perjurious, and fraud on the court, perpetrated in an attempt to further the story, **believed useful by Rayz**, of the $80,000 offer being made by Debtors' counsel.

The above falsities are all part of Rayz' and Vertonix's effort to peddle an alternate version of subsequent events of June 21, 2018, evident from the MFS Response and prior filings by Vertonix, where Rayz claims that he only "expressly communicated to Mr. Nerdinsky Vertonix's position that Debtors' bankruptcy filing contained material omissions concerning their assets" (ECF #86, Ex. 1, para. 80) but did not actually threaten to release this information to anyone. Rayz incredibly states that he did all this "in good faith, to allow Mr. Nerdinsky an opportunity to amend Debtors' filings" (ibid. 84) and that no threat was in fact being made.

The above, additional false statements made by Rayz in his April 1, 2019 declaration and their use in the MFS Response further compound the prior violations committed by Respondents and have bearing on the sanctions that should be imposed under the Motion for Sanctions.

Dated April 30, 2019

/s/ Leonid Nerdinsky
Leonid Nerdinsky, Esq.
Nerdinsky Law Group
3800 S Ocean Drive, Suite 242
Hollywood, FL 33019
Tel: 954-237-6307
lnerdinsky@nerdinskylaw.com


Local Counsel

/s/ Gary Seitz
Gary Seitz
Gellert Scali Busenkell & Brown, LLC
1628 John F. Kennedy Boulevard, Suite 1901
Philadelphia, Pennsylvania 19103
Tel: 215-238-0011
gseitz@gsblaw.com

Lead Counsel